IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| CRISTOBAL LOPEZ LOPEZ and GILBERTO FLORES LOZANO, *on behalf of themselves and all other similarly situated persons* | ) ) ) | |
| Plaintiffs | ) ) | CASE NO: 5:22-cv-491 |
| v. | ) ) | |
| BOYKIN FARMS, INC., RHODES FARMING, LLC, WILLIE C. BOYKIN, III, MATTHEW Z. RHODES, TONY C. LEE, d/b/a LEE AND SONS FARMS, CAMERON LEE, d/b/a LEE AND SONS FARMS, and CLINT LEE, d/b/a LEE AND SONS FARMS, | ) ) ) ) ) ) ) ) ) | COMPLAINT |
| Defendants. | ) | |

PRELIMINARY STATEMENT

1. Plaintiffs Cristobal Lopez Lopez and Gilberto Flores Lozano, migrant farmworkers, bring this action on behalf of themselves and all other similarly situated employees against the farms and individuals who employed them in North Carolina. Plaintiffs and their co-workers worked pursuant to temporary foreign worker visas, called H-2A visas. They were not timely reimbursed for the costs of their visas and travel to North Carolina, were not paid at the promised H-2A wage rate, had their passports and Social Security cards confiscated, were not paid for all hours worked, and were illegally charged for their meals in North Carolina, in violation of federal and state wage and hour laws and their employment contracts. Plaintiffs Lopez Lopez and Flores Lozano were not paid for the time they spent driving their co-workers, nor for the time spent checking the vehicles for safety, nor were they paid overtime.

2. Plaintiffs bring claims against Defendants for unpaid wages, including individual and collective action claims for minimum wages required by the Fair Labor Standards Act (FLSA),

1

29 U.S.C. § 201, *et seq.*, and individual and class action claims for promised wages under the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. § 95-25.1, *et seq.*

3. Plaintiffs also bring class action claims for breach of their H-2A contracts.

4. Plaintiffs seek back wages, liquidated, and punitive damages, contract damages, declaratory and injunctive relief, pre- and post-judgment interest, costs of the action, attorneys' fees, and other appropriate relief to make themselves whole for damages suffered due to the Defendants' violations of law.

<u>JURISDICTION</u>

5. This Court has jurisdiction over this matter pursuant to:

    a. 28 U.S.C. § 1331 (Federal Question);

    b. 28 U.S.C. § 1337 (Interstate Commerce);

    c. 29 U.S.C. § 216(b) (FLSA); and

    d. 28 U.S.C. § 1367 (Supplemental Jurisdiction).

6. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because, at all times relevant to this Complaint, regular and substantial business activities of all Defendants occurred in Johnston, Nash and surrounding counties in North Carolina, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims were committed within the jurisdiction of the Eastern District of North Carolina.

## PARTIES

Named Plaintiffs

9. Plaintiff Cristobal Lopez Lopez is a citizen of Mexico who was admitted to the U.S. on a temporary basis with a visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) (the "H-2A Program") to perform agricultural labor for Defendants in 2019, 2020 and 2021.

10. Plaintiff Gilberto Flores Lozano is a citizen of Mexico who was admitted to the U.S. on a temporary basis with a visa pursuant to the H-2A Program to perform agricultural labor for Defendants in 2019, 2020 and 2021.

11. The Plaintiffs and most, if not all, of the members of the putative collective and class actions fluently speak and/or read languages other than English.

12. At all times relevant to this Complaint, Plaintiffs and members of the classes they seek to represent were employed by Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4). At all times relevant to this Complaint, Plaintiffs and the members of the collective action they seek to represent were employed by Defendants within the meaning of 29 U.S.C. § 203(g).

<u>Defendants</u>

13. Defendant Boykin Farms, Inc. is a corporation organized under the laws of the state of North Carolina in 1997. Willie C. Boykin III, 1015 Crockers Nub Rd., Middlesex, NC 27577 is its registered agent for service of process.

14. Defendant Rhodes Farming, LLC is a limited liability corporation organized under the laws of the state of North Carolina in 2015. Matthew Rhodes, 49 White Oak Rd., Four Oaks, NC 27524-9754 is its registered agent for service of process.

15. Defendant Willie C. Boykin III ("Boykin") is a natural person and President of Boykin Farms, Inc.

16. Upon information and belief, at all times relevant to this action, Defendant Boykin exercised, and/or will exercise, the authority to direct, control, and/or supervise the work of the named Plaintiffs and members of the proposed collective and class actions.

17. Defendant Matthew Z. Rhodes ("Rhodes") is a natural person and Managing Member of Rhodes Farming, LLC.

18. Upon information and belief, at all times relevant to this action, Defendant Rhodes exercised, and/or will exercise, the authority to direct, control, and/or supervise the work of the named Plaintiffs and members of the proposed collective and class actions.

19. Defendant Tony C. Lee is a natural person and farmer doing business as Lee and Sons Farms. Lee and Sons Farms is located at 961 White Oak Rd., Four Oaks, NC 27524.

20. Upon information and belief, at all times relevant to this action, Defendant Tony Lee exercised, and/or will exercise, the authority to direct, control, and/or supervise the work of the named Plaintiffs and members of the proposed collective and class actions.

21. Defendant Cameron Lee is a natural person and farmer doing business as Lee and Sons Farms.

4

22. Upon information and belief, at all times relevant to this action, Defendant Cameron Lee exercised, and/or will exercise, the authority to direct, control, and/or supervise the work of the named Plaintiffs and members of the proposed collective and class actions.

23. Defendant Clint Lee is a natural person and farmer doing business as Lee and Sons Farms.

24. Upon information and belief, at all times relevant to this action, Defendant Clint Lee exercised, and/or will exercise, the authority to direct, control, and/or supervise the work of the named Plaintiffs and members of the proposed collective and class actions.

25. Defendant Tony Lee and his sons, Defendants Clint Lee and Cameron Lee (collectively "Lee and Sons") operate their farming operation together under the name Lee and Sons Farms. Prior to his death in 2020, another one of Tony Lee's sons was also involved in the operation of Lee and Sons.

26. At all times relevant to this Complaint, Defendant Boykin Farms was and is an employer of H-2A workers, including the Plaintiffs and the members of the collective and class actions they intend to represent, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

27. At all times relevant to this Complaint, Defendant Boykin Farms was an enterprise "engaged in commerce or in the production of goods for commerce" within the scope and meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

28. Upon information and belief, during each calendar year falling in the four-year period immediately preceding the date on which this action was filed, Defendant Boykin Farms had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that were separately stated.

29. During each calendar year falling in the four-year time period immediately preceding the date on which this action was filed, one or more employees of Boykin Farms, including the Plaintiffs, handled goods or equipment that had moved in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

30. At all times relevant to this Complaint, Rhodes Farming was an employer of H-2A workers, including the Plaintiffs and the members of the collective actions they intend to represent, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

31. At all times relevant to this Complaint, Defendant Rhodes Farming was an enterprise "engaged in commerce or in the production of goods for commerce" within the scope and meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

32. Upon information and belief, during each calendar year falling in the four-year period immediately preceding the date on which this action was filed, Defendant Rhodes Farming had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that were separately stated.

33. During each calendar year falling in the four-year time period immediately preceding the date on which this action was filed, one or more employees of Rhodes Farming, including the Plaintiffs, handled goods or equipment that had moved in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

34. At all times relevant to this Complaint, Defendant Lee and Sons were employers of H-2A workers, including the Plaintiffs and the members of the collective actions they intend to represent, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

6

35. At all times relevant to this Complaint, Defendants Lee and Sons were and/or are engaged in the production of goods for interstate commerce or was and/or is part of an enterprise engaged in the production of goods for interstate commerce within the scope and meaning of the FLSA.

36. Upon information and belief, during each calendar year falling in the four-year period immediately preceding the date on which this action was filed, Defendants Lee and Sons had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that were separately stated.

37. During each calendar year falling in the four-year period immediately preceding the date on which this action was filed, one or more employees of Lee and Sons, including the Plaintiffs, handled goods or equipment that had moved in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

38. At all times relevant to this Complaint, Defendants were fixed-site employers, joint and individual employers of Plaintiffs and members of the collective and class actions within the meaning of the H-2A regulations. 20 C.F.R. § 655.103(b).

39. At all times relevant to this Complaint, Defendants were joint and individual employers of Plaintiffs and putative members of the collective actions within the meaning of 29 U.S.C. §§ 203(d) and (g) and 20 C.F.R. §§ 655.103(b), 655.1300(c), and 29 C.F.R. § 791.2, and of Plaintiffs and putative members of the class action within the meaning of N.C. Gen. Stat. §§ 95-25.2(3).

40. Defendant Tony Lee's daughter, Savannah, is married to Matthew Rhodes.

41. Defendant Boykin is the uncle of Defendant Rhodes.

7

The H-2A Program

42. The H-2A visa program allows agricultural employers in the United States to import foreign workers to perform agricultural labor of a temporary nature if the U.S. Department of Labor ("USDOL") certifies that (1) there are insufficient available workers within the United States to perform the job; and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. Foreign workers admitted under this program are commonly known as "H-2A workers."

43. The H-2A regulations set the minimum benefits, wages, and working conditions that the employer must offer to avoid an adverse effect upon U.S. workers. 20 C.F.R. §§ 655.0(a)(2), 655.122, 655.135.

44. In order to receive certification to employ H-2A workers, an agricultural employer must first submit a clearance order, also known as a job order, Form ETA-790/790A), to the local State Workforce Agency (the North Carolina Division of Employment Security) to be used for recruiting U.S. workers.

45. The job order must contain all the material terms and conditions of employment being offered by that agricultural employer and must comply with applicable regulations for the recruitment of both U.S. and H-2A workers. 20 C.F.R. § 655.121(a)(3).

46. The next step is for an agricultural employer to submit an Application for Temporary Employment Certification (ETA 9142A) to USDOL's National Processing Center. Once USDOL certifies the employer's application, they are authorized to employ H-2A workers.

47. Employers seeking to employ H-2A workers must agree to abide by all the requirements contained in the H-2A regulations, 20 CFR Part 655, Subpart B.

48. One such requirement is that H-2A employers must pay H-2A workers at least the Adverse Effect Wage Rate ("AEWR"), a minimum hourly rate for work performed, for all hours worked. If the worker is paid on a piece rate basis and the piece rate earnings at the end of the pay period are less than what the worker should have been paid at the AEWR for all hours worked, the workers' pay must be supplemented to bring them up to the AEWR.

49. The AEWR for North Carolina in 2019 was $12.25 per hour, effective January 9, 2019. The AEWR for North Carolina in 2020 was $12.67, effective January 2, 2020. The AEWR for North Carolina in 2021 was $13.15, effective February 23, 2021.

50. The H-2A regulations also require employers to disclose in the job offer all deductions that the employer will make from their paychecks unless they are required by law. Such deductions may not result in a profit to the employer or any affiliated person and may not be primarily for the benefit or convenience of the employer.

51. Undisclosed or unauthorized deductions or kickbacks made directly or indirectly to the employer may not reduce an H-2A worker's pay below the AEWR.

52. In addition, an H-2A employer must offer and provide each worker with three meals per day or provide the workers with free and convenient cooking facilities.

53. H-2A employers are not allowed to charge for meals if the charge is not disclosed to the workers as part of the job offer.

54. When an H-2A employer discloses that it will provide meals, they may not charge more than a maximum allowable charge that is set by regulation.

55. Employers must provide their H-2A employees with a written work contract containing all of the job offer requirements in 20 C.F.R. 655.122, including those requirements discussed in paragraphs 48-55. If the employer fails to provide a written contract, the required terms of the

9

job order and application for temporary employment certification become the terms of a contract between the employer and H-2A worker.

Defendants' H-2A Contracts

56. Defendants Boykin, Tony Lee and Rhodes applied for and received temporary labor certification for 72 H-2A workers to work in North Carolina for Boykin Farms, Rhodes Farming and Lee & Sons Farms as joint employers from March 30, 2019 to November 11, 2019 in a variety of crops and greenhouse work. ("March 2019 Contract"). The employer certification portion of the March 2019 job order was signed by Boykin, Tony Lee, and Rhodes.

57. The March 2019 contract included the following terms:

    a. Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals;

    b. Employer will pay $12.25 per hour for hourly work;

    c. Employer will pay $0.75 per bucket of cucumbers, $0.90 per bucket of banana peppers and $0.50 per bucket of sweet potatoes but will provide make-up pay if the piece rate pay results in average hourly earnings below $12.25;

    d. If the worker completes the work contract or is terminated without cause, and the worker has no immediate H-2A employment, the employer will provide or pay for the worker's reasonable costs of return transportation and subsistence from the place of employment to the place from which the worker departed to work for the employer; and

    e. Employer will comply with all applicable Federal, State and local laws and regulations, including the prohibition on confiscating workers' passports, visas, or other immigration documents.

10

58. Defendants Boykin, Tony Lee and Rhodes applied for and received temporary labor certification for 93 H-2A workers to work in North Carolina for Boykin Farms, Rhodes Farming, and Lee & Sons Farms as joint employers from April 25, 2020, to November 20, 2020 (April 2020 Contract) in a variety of crops and greenhouse work. Upon information and belief, the employer certification portion of the April 2020 job order was signed by Boykin, Tony Lee and Rhodes.

59. The April 2020 Contract included the following terms:

   a. Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals;

   b. Employer will pay $12.67 per hour for hourly work;

   c. Employer will pay $0.75 per bucket of cucumbers, $0.90 per bucket of banana peppers and $0.50 per bucket of sweet potatoes but will provide make-up pay if the piece rate pay results in average hourly earnings below $12.67;

   d. Employer will reimburse workers for reasonable costs incurred by the worker for transportation costs from the place from which the worker has come to work for the employer to the employer's place of employment in the amount of the most economical and reasonable common carrier transportation charge for the distances involved at the end of the first work week;

   e. Employer will reimburse workers for subsistence costs incurred during the workers' travel from the place from which the worker has come to work for the employer to the employer's place of employment in the amount of at least $12.26 per day and up to $55 per day if a worker has receipts, when the worker completes 50% of the work contract or sooner;

11

f. If the worker completes the work contract or is terminated without cause, and the worker has no immediate H-2A employment, the employer will provide or pay for the worker's reasonable costs of return transportation and subsistence from the place of employment to the place from which the worker departed to work for the employer; and

g. Employer will comply with all applicable Federal, State and local laws and regulations, including the prohibition on confiscating workers' passports, visas, or other immigration documents.

60. Defendants Boykin, Tony Lee and Rhodes applied for and received temporary labor certification for 88 H-2A workers to work in North Carolina for Boykin Farms, Rhodes Farming, and Lee & Sons Farms as joint employers April 26, 2021 to November 27, 2021 (April 2021 Contract) in a variety of crops and to do greenhouse work. Upon information and belief, the employer certification portion of the job order was signed by Defendants Rhodes, Tony Lee and Boykin.

61. The April 2021 Contract contained the following terms:

a. Employer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals;

b. Employer will pay $12.67 per hour for hourly work or the AEWR in effect at the time the work is performed, whichever is highest;

c. Employer will pay $0.75 per bucket of cucumbers, $0.90 per bucket of banana peppers and $0.50 per bucket of sweet potatoes but will provide make-up pay if the piece rate pay results in average hourly earnings below the required AEWR;

12

d.  Employer will reimburse workers for reasonable costs incurred by the worker for transportation costs from the place from which the worker has come to work for the employer to the employer's place of employment in the amount of the most economical and reasonable common carrier transportation charge for the distances involved at the end of the first work week;

e.  Employer will reimburse workers for subsistence costs incurred during the workers' travel from the place from which the worker has come to work for the employer to the employer's place of employment in the amount of at least $12.68 per day and up to $55 per day if a worker has receipts, when the worker completes 50% of the work contract or sooner;

f.  If the worker completes the work contract or is terminated without cause, and the worker has no immediate H-2A employment, the employer will provide or pay for the worker's reasonable costs of return transportation and subsistence from the place of employment to the place from which the worker departed to work for the employer; and

g.  Employer will comply with all applicable Federal, State and local laws and regulations, including the prohibition on confiscating workers' passports, visas, or other immigration documents.

62. Defendants Boykin and Rhodes applied for and received temporary labor certification for 27 H-2A workers to work in North Carolina for Boykin Farms and Rhodes Farming as joint employers from April 26, 2022 to November 26, 2022 in a variety of crops and promised to pay the AEWR of $14.16 per hour. Upon information and belief, the employer certification portion was signed by Defendants Boykin and Rhodes.

13

63. Defendant Tony Lee applied for and received temporary labor certification for 31 H-2A workers to work for Lee & Sons Farms in North Carolina from May 27, 2022 to November 26, 2022 in a variety of crops and to do greenhouse work and promised to pay the AEWR of $14.16 per hour.

64. Defendants engaged Andrew Jackson as their visa processing agent for the 2019, 2020, 2021 and 2022 applications for temporary H-2A employment.

Defendants Bring Plaintiffs to NC to Work on H-2A Visas

65. Defendants, by and through their agent(s) in Mexico, recruited Plaintiff Lopez Lopez, Plaintiff Flores Lozano, and others to work for them in North Carolina during the 2019 through 2022 agricultural seasons on H-2A visas.

66. Relying on Defendants' promises to them, Plaintiffs Lopez Lopez and Flores Lozano obtained loans in their hometowns to pay for the costs associated with obtaining their visas and traveling to North Carolina.

67. Defendants provided Plaintiffs and, upon information and belief, their co-workers, a copy of the clearance order each season, which constituted a contract between them.

68. Defendants' agent instructed workers, including Plaintiffs Lopez Lopez and Flores Lozano, how to apply for and get an H-2A visa, when to depart from their hometowns to travel to Monterrey, Mexico, to obtain the visa, when to report to the U.S. Consulate for the visa interview, how to conduct themselves in the interview, and when and how to depart for the job in North Carolina.

69. At the direction of the Defendants' agents in Mexico, Plaintiffs Lopez Lopez and Flores Lozano each traveled at their own expense from their villages to the U.S. Consulate in Monterrey, where they waited for their visas to be issued.

14

70. Plaintiffs paid the costs of their H-2A visas.

71. In 2019 and 2021, Plaintiffs Lopez Lopez and Flores Lozano each paid for the costs of lodging for several nights in the hotel in Monterrey near the Consulate designated by the Defendants.

72. Plaintiffs Lopez Lopez and Flores Lozano traveled with other employees of Defendants from Monterrey, Mexico, to the border in buses arranged by Defendants.

73. Defendants then transported Plaintiffs Lopez Lopez and Flores Lozano and their similarly situated co-workers from the border to North Carolina. At the border crossing, Plaintiffs and their co-workers paid a $6 fee.

74. Plaintiffs and their co-workers paid for their own meals during their travel from Monterrey to North Carolina. During some years, Defendants did not reimburse Plaintiffs and their co-workers for their expenses at all. In other years, they did not fully reimburse them.

75. Defendants never reimbursed Plaintiffs and their co-workers for any of their expenses during the first workweek. Because of this failure to reimburse, Plaintiffs' earnings in that first workweek were below the minimum wage and below the promised AEWR. Upon information and belief, the earnings of their similarly situated co-workers were also below the minimum wage and below the promised AEWR in their first workweeks.

<u>Plaintiffs' Work and Compensation</u>

76. The named Plaintiffs and their similarly situated coworkers whom they seek to represent had an express, constructive, or implied agreement that Defendants would pay them wages at the rate required by any applicable federal and/or state law when those wages were due for each hour or part of an hour that the named Plaintiffs and proposed class members performed compensable work under the FLSA and/or the NCWHA for Defendants.

77. At times, Defendants paid Plaintiffs and their similarly-situated co-workers a piece rate and did not supplement wages when what they earned on a piece-rate basis was less than the AEWR.

78. Defendants did not pay Plaintiffs and their similarly-situated co-workers for the time spent traveling from field to field during the work day.

79. Because of Defendants' payment of a piece rate and their non-payment of wages for the time spent traveling from field to field, Defendants did not pay Plaintiffs and their similarly-situated co-workers the minimum wage or the AEWR.

<u>Obligatory Meal Plan</u>

80. Although each of Defendants' H-2A job orders said they would provide a kitchen to their employees for preparing their own meals, Defendants did not permit Plaintiffs or their co-workers to enter or use the labor camp kitchens, in violation of the North Carolina Migrant Housing Act. N.C. Gen. Stat. §95-225(g).

81. Defendants occasionally provided transportation for Plaintiffs and their co-workers to a supermarket, but this was inconsistent and sometimes there was not enough time to buy groceries.

16

82. Plaintiffs and their co-workers had no access to a refrigerator or anywhere to store their groceries.

83. Defendants charged Plaintiffs and their co-workers for a meal plan. The meal plan included just two meals per day, Monday through Saturday, and did not include breakfast other than coffee and slices of bread. The meal plan did not include any meals on Sunday.

84. The lunches and dinners that Defendants sold to Plaintiffs and their co-workers as part of the meal plan were insufficient in quantity. For example, one regular meal that was provided consisted only of two hotdogs.

85. The meals sold by Defendants were also unsanitary and/or unappetizing. At times, workers arrived at the labor camp after a long day of work to find their dinners left out for them, cold and covered in flies.

86. Defendants charged the workers varying amounts for the meals, from $75 to $160 a week. Defendants' practice was to bring Plaintiffs and their co-workers to town to cash their pay checks, and then immediately demand that the workers turn over the payment for the meal plan for that week.

87. Defendants did not disclose this charge or deduction for meals in the 2019, 2020, 2021, or 2022 H-2A job orders.

88. Upon information and belief, Defendants sold the meals to the Plaintiffs and their co-workers at a profit.

89. Defendants did not provide any food on Sundays and Defendants kept the labor camp kitchen locked on Sundays.

17

90. Defendant Lee also sold Plaintiffs and their co-workers snack items such as chips, juice, and sodas at inflated prices. Because the workers were not provided meals or access to a kitchen on Sundays, they had no choice but to purchase these items.

91. Employees who purchased more snack items from Defendant Tony Lee were rewarded by him with more work.

Plaintiffs' Work as Drivers

92. At varying times in 2019, 2020, and 2021, Defendants assigned both Plaintiffs Lopez Lopez and Flores Lozano to work as drivers, driving their co-workers from the migrant housing to the field, driving between fields, and returning the workers back to the camp where they were staying as well as other camps at the end of the day.

93. Plaintiffs were not compensated by Defendants for the time they worked driving their co-workers to, from or between work locations.

94. The time Plaintiffs spent driving to, from and between fields was primarily for Defendants' benefit.

95. At Defendants' instruction, Plaintiffs also drove their co-workers to the store so that they could make purchases and cash their paychecks, waited for them to finish, then drove them back to the migrant housing. The trips to the store took place on a weekly basis.

96. Plaintiffs were not performing work on a farm when they drove their co-workers to or from the store.

97. Plaintiffs work driving to and from the store was not work performed by a farmer.

98. Plaintiffs were not compensated for the time he spent driving to or from stores or waiting at the stores.

99. The time Plaintiffs spent taking their co-workers to the store was primarily for the Defendants' benefit.

100.    During workweeks in which Plaintiffs drove their co-workers to the store and/or to cash their paychecks and Plaintiffs worked more than forty hours, they were not paid at the overtime wage rate for hours worked over forty.

Return Travel Meals

101.    Defendants did not pay for the meals of Plaintiffs or their similarly-situated co-workers during their return travel from North Carolina to Mexico.

FLSA COLLECTIVE ACTION ALLEGATIONS

102.    Named Plaintiffs Lopez Lopez and Flores Lozano seek to bring their claims under the FLSA pursuant to the collective action procedures specified in 29 U.S.C. § 216(b) on behalf of themselves individually and all other similarly situated employees of Defendants who, in any pay period falling within the three chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, held H-2A visas, were not reimbursed for all of their H-2A related expenses (travel, visa, hotel, meals, and/or border crossing costs) during their first workweek which resulted in average hourly pay below $7.25 per hour, and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b) ("FLSA Reimbursement Collective Action").

103.    Plaintiffs also bring claims on behalf of themselves and those similarly-situated employees of Defendants who held H-2A visas and who were not compensated at the minimum wage rate during some workweeks because they were paid a piece rate, were not paid for travel time between fields, and/or were required to kick back part of their wages for illegal meal charges

19

("FLSA Underpayment Collective Action"). They seek unpaid minimum wages and liquidated damages.

104. Plaintiffs and the members of the collective actions are similarly situated. Plaintiffs and the collective action members were all non-supervisory H-2A employees who worked for Defendants performing farm work in North Carolina and were each paid wages less than those required by 29 U.S.C. § 206 during some workweeks that they were employed by one or more Defendants pursuant to common policies implemented by Defendants.

105. Defendants willfully failed to pay Plaintiffs Lopez Lopez and Flores Lozano and the putative members of the collective actions the minimum wages owed to them by failing to reimburse them in the first workweek for expenses which were incurred for the benefit and convenience of the Defendants, by paying them a piece rate that was not high enough to compensate them at the required minimum wage rate, by failing to pay them for travel time between fields, and/or by requiring them to kick back payments for an obligatory meal plan that brought their wages below the minimum wage.

<u>NCWHA CLASS ALLEGATIONS</u>

106. Plaintiffs seek to represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure consisting of all H-2A employees who were, are, or shall be jointly or severally employed by one or more of the Defendants in any pay period falling within two years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered, and who did not receive all of their wages when they were due at the promised wage rate disclosed to them pursuant to N.C. Gen. Stat. § 95-25.13(1)-(2) because Defendants failed to reimburse them for their transportation, visa,

20

lodging, and/or border crossing expenses during the first week in which they performed labor for Defendants ("NCWHA Reimbursement Class").

107.    Plaintiffs also seek to represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure consisting of all H-2A employees who were, are, or shall be jointly or severally employed by one or more of the Defendants in any pay period falling within two years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgement is entered and who did not receive all of their wages when they were due at the promised wage rate disclosed to them pursuant to N.C. Gen. Stat. § 95-25.13(1)-(2) ("Promised Wage Class").

108.    The promised wage violations occurred when Defendants compensated the Plaintiffs and members of the class they seek to represent on a piece rate basis that resulted in an average hourly wage lower than the promised wage.

109.    The promised wage violations also occurred when Defendants failed to compensate Plaintiffs and members of the class they seek to represent for compensable time spent traveling between work locations during the work day.

110.    The promised wage violations also occurred when Defendants required Plaintiffs and members of the class they seek to represent to kick back money from their paychecks each week for an illegal meal plan.

111.    Plaintiffs' NCWHA class allegations are based on applicable AEWR rates of pay and not minimum wage or overtime, and the NCWHA claims are separate and distinct from any FLSA minimum wage and overtime claims.

112.    The classes are so numerous and so geographically dispersed as to make joinder impractical. Defendants received H-2A temporary labor certifications from the U.S.

Department of Labor for approximately 264 openings from 2020 to 2022. Therefore, the NCWHA classes could include as many as 264 individuals. The classes are entirely composed of temporary foreign workers whose permanent residence is outside the United States, mostly in Mexico. Most if not all of the members of these classes are not fluent in English and are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the members of these classes make the maintenance of separate actions by each member of these classes infeasible.

113. The questions of law and fact which are common to members of the NCWHA Reimbursement Class include, among others: (a) whether Defendants disclosed to Plaintiffs and the members of the class pursuant to N.C. Gen. Stat. §§ 95-25.13(1)-(2) and 13 N.C.A.C. § 12.0803 that they would pay wages at the adverse effect wage rate for the work they performed; and (b) whether Defendants reimbursed Plaintiffs and members of the NCWHA Reimbursement Class for their transportation, visa, meals, hotel and border crossing costs during the first work week.

114. The questions of law and fact which are common to members of the Promised Wage Class include, among others: (a) whether Defendants disclosed to Plaintiffs and the members of the class pursuant to N.C. Gen. Stat. §§ 95-25.13(1)-(2) and 13 N.C.A.C. § 12.0803 that they would pay wages at the adverse effect wage rate for the work they performed; b) whether Defendants failed to pay Plaintiffs and members of the Promised Wage Class for all hours worked, including travel time between work locations; c) whether Defendants' practice of paying a piece rate for some types of work resulted in payment below the promised wage; d) whether the payments Defendants required Plaintiffs and members of the Promised Wage Class to make for a meal plan constituted illegal kickbacks; e) whether the charge for meals

22

exceeded the allowable rate for meals; and f) whether the cost of the meals exceeded the actual cost of the food provided and the reasonable cost.

115. The claims of Plaintiffs are typical of the claims of the putative members of the various classes, and those typical, common claims predominate over any questions affecting only individual class members.

116. Plaintiffs have the same interests as other members of the classes and will vigorously prosecute these interests on behalf of the classes.

117. Plaintiffs will fairly and adequately represent the interests of the classes.

118. The undersigned counsel Carol Brooke, Clermont Ripley, and Jonathan Wall are experienced litigators who have been named counsel for several class actions involving similar claims to those being raised in this action. Plaintiffs' counsel are prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the classes.

119. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the classes, substantially diminish the interest of members of the classes in individually controlling the prosecution of separate actions;

(b) Many members of the classes are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c) Upon information and belief, there is no pending litigation against Defendants for their alleged failure to pay wages to their employees as required by the NCWHA;

(d) It is desirable that the claims be heard in this forum because all defendants reside in this district and the cause of action arose in this district;

(e) A class action can be managed without undue difficulty because Defendants regularly committed the violations complained of herein, and were required to maintain detailed records concerning each member of the classes above.

<u>CONTRACT CLASS ALLEGATIONS</u>

120. Plaintiffs seek to represent two classes pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for breach of contract claims.

121. The first contract class consists of all individuals who worked for Defendants pursuant to the April 2020 Contract ("2020 Contract Class"), whose contracts were breached by Defendants when Defendants did not reimburse them for their visa, transportation, meals, lodging and related expenses in their first workweek, confiscated their passports and/or Social Security cards, charged them for a meal plan, did not pay them at the contract wage rate, and did not pay for their meals during their return trip to Mexico.

122. The second class consists of all individuals who worked for Defendants pursuant to the April 2021 Contract ("2021 Contract Class"), whose contracts were breached by Defendants when Defendants did not reimburse them for their visa, transportation, meals, lodging and related expenses in their first workweek, confiscated their passports and/or Social Security cards, charged them for a meal plan, did not pay them at the contract wage rate, and did not pay for their meals during their return trip to Mexico.

123. The classes are so numerous and so geographically dispersed as to make joinder impractical. The 2020 Contract Class could include as many as 93 individuals. The 2021 Contract Class could include as many as 88 individuals.

24

124.   Both contract classes are primarily, if not entirely, composed of temporary foreign workers whose permanent residence is in Mexico.  Most if not all of the members of these classes are not fluent in English and are unfamiliar with the American judicial system.  The relatively small size of the individual claims and the indigence of the members of these classes make the maintenance of separate actions by each member of these classes infeasible.

125.   The questions of law and fact which are common to members of each of the Contract Classes include, among others: (a) whether Defendants and the members of the Contract Class entered into a contract; (b) what the terms of the contract were, and (c) and whether Defendants breached the terms of that contract.

126.   The claims of Plaintiffs are typical of the claims of the putative members of the various classes and result from common policies, and those typical, common claims predominate over any questions affecting only individual class members.

127.   Plaintiffs have the same interests as other members of the classes and will vigorously prosecute these interests on behalf of the classes.

128.   Plaintiffs will fairly and adequately represent the interests of the classes.

129.   The undersigned counsel Carol Brooke, Clermont Ripley, and Jonathan Wall are experienced litigators who have been named counsel for several class actions involving similar claims to those being raised in this action. Plaintiffs' counsel are prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the members of the classes.

130.   A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

(a) The common issues of law and fact, as well as the relatively small size of the individual claims of each member of the classes, substantially diminish the interest of members of the classes in individually controlling the prosecution of separate actions;

(b) Many members of the classes are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

(c) Upon information and belief, there is no pending litigation against Defendants for their alleged failure to pay wages to their employees as required by the NCWHA;

(d) It is desirable that the claims be heard in this forum because all defendants reside in this district and the cause of action arose in this district;

(e) A class action can be managed without undue difficulty because Defendants regularly committed the violations complained of herein, and were required to maintain detailed records concerning each member of the classes above.

<u>FIRST CLAIM FOR RELIEF</u>
(FAIR LABOR STANDARDS ACT: MINIMUM WAGE)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

131.    Plaintiffs bring this claim for Defendants' violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq,* on behalf of themselves and all others similarly situated.

132.    Plaintiffs have consented in writing to bring this FLSA action and have filed their written consents as attachments to this Complaint.

133.    Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs and the members of the collective actions described in Paragraphs 102 and 103 at least the product of the federal minimum wage of $7.25 and the total number of hours of labor performed in each workweek during which they were employed.

26

134.   Defendants willfully failed to fully reimburse Plaintiffs Lopez Lopez and Flores Lozano and members of the FLSA Reimbursement Collective Action during their first week of employment for expenses incurred primarily for the benefit of Defendants, including their in-bound subsistence costs, lodging expenses near the U.S. Consulate, visa fees and visa-related processing fees, issuance of Form I-94, and the full cost of travel from the place of recruitment to the jobsite, in violation of the FLSA.

135.   When these expenses are calculated as deductions from their first week's pay, as required by law, they cause the first-week wages of Plaintiffs Lopez Lopez and Flores Lozano and the members of the FLSA Reimbursement Collective Action to be less than the FLSA minimum wage.

136.   Defendants also failed to compensate Plaintiffs Lopez Lopez, Flores Lozano, and members of the FLSA Underpayment Collective Action at the minimum wage rate for all hours worked when Defendants paid Plaintiffs Lopez Lopez and Flores Lozano, and members of the FLSA Underpayment Collective Action at a piece rate, failed to pay them for travel time between fields, and required them to kick back part of their wages for illegal meal charges, resulting in wages that amounted to less than the minimum wage rate for each hour worked, in violation of the FLSA.

137.   Defendants knew that they were required to pay Plaintiffs Lopez Lopez, Flores Lozano, and Flores Lozano, and members of the collective actions at least the Federal minimum wage for each hour worked during a workweek or showed reckless disregard as to whether their conduct was prohibited by the FLSA and its accompanying regulations. As such, Defendants' failure to pay Plaintiffs and members of the collective actions the minimum wage was willful within the meaning of 29 U.S.C. § 255.

27

138.     As a consequence of Defendants' willful violation of their rights under the FLSA, Plaintiffs seek unpaid minimum wages, plus an equal amount in liquidated damages, and costs and attorneys' fees, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the members of the collective actions.

<u>SECOND CLAIM FOR RELIEF</u>
(NORTH CAROLINA WAGE AND HOUR ACT – CLASS CLAIMS)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

139.     Defendants failed to pay Plaintiffs Lopez Lopez and Flores Lozano and the putative members of the NCWHA Reimbursement Class defined in paragraph 106 at least the promised wage for each hour or part of an hour that Plaintiffs worked for Defendants for each workweek, in violation of N.C. Gen. Stat. § 95-25.6.

140.     Defendants failed to reimburse Plaintiffs during their first week of employment for expenses incurred primarily for the benefit of Defendants, including inbound subsistence costs, lodging expenses near the U.S. Consulate, visa fees and visa-related processing fees, issuance of Form I-94, and the full cost of travel from the place of recruitment to the jobsite. Defendants' failure to fully reimburse Plaintiffs during the first workweek caused their first week's earnings to be less than the promised wage.

141.     Defendants also failed to compensate Plaintiffs and the putative members of the NCWHA Promised Wage class defined in paragraph 107 the promised wage for all hours worked by paying them a piece rate, failing to pay them for travel time between fields, and requiring them to kick back part of their wages for illegal meal charges, which brought their wages below the promised AEWR rate.

142.     As a result of these actions, Defendants are in violation of Plaintiff Lopez Lopez, Flores Lozano, and the putative members of the Rule 23 classes' rights under N.C. Gen. Stat.

28

§§ 95-26.6. Plaintiffs have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants under N.C. Gen. Stat. §§ 95-25.22(a) and 95-25.22(a)(1).

THIRD CLAIM FOR RELIEF
(NORTH CAROLINA COMMON LAW OF CONTRACT - CLASS CLAIM)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

143. Defendants entered into contracts with Plaintiffs and their coworkers in 2020 and 2021, the terms of which were the required terms of the corresponding job orders and applications for temporary employment certification. 20 C.F.R. §§ 655.121, 655, 122, and 655.135.

144. In 2020, Defendants offered employment on the terms and conditions set out in the April 2020 Contract and Plaintiffs and their co-workers accepted Defendants' offer.

145. In 2021, Defendants offered employment on the terms and conditions set out in the April 2021 Contract and Plaintiffs and their co-workers accepted Defendants' offer.

146. Defendants breached each of their employment contracts with Plaintiffs and the members of the 2020 and 2021 Contract Classes defined in paragraphs 121 and 122 by failing to pay for or reimburse them for costs related to their travel to North Carolina, confiscating their passports and Social Security cards, not paying them at the contract wage rate, failing to provide access to kitchen facilities, requiring them to kick back money for an undisclosed meal plan, and not paying for their meals during their return travel to Mexico.

147. Defendants' breach of their employment contracts with Plaintiffs and the members of the Contract Classes caused substantial injuries.

148. Defendants are liable to Plaintiffs and the members of the Contract Classes for damages that arose naturally and according to the usual course of things from the Defendants' breach,

29

as provided by federal common law and/or North Carolina common law, and prejudgment interest.

## FOURTH CLAIM FOR RELIEF
### (FAIR LABOR STANDARDS ACT – INDIVIDUAL CLAIMS)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

149.    Plaintiffs Lopez Lopez and Flores Lozano bring individual claims for Defendants' violations of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

150.    Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least the product of the federal minimum wage of $7.25 and the total number of hours of labor performed in each workweek during which they were employed as drivers.

151.    Defendants also violated the overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay Plaintiffs at the required overtime wage rate for hours worked over forty in workweeks in which Plaintiffs performed non-agricultural driving work.

152.    Defendants knew that they were required to pay Plaintiffs at least the federal minimum wage  for each hour worked during a workweek and the overtime wage rate for hours worked over forty in workweeks in which Plaintiffs performed non-agricultural work, or showed reckless disregard as to whether their conduct was prohibited by the FLSA and its accompanying regulations. As such, Defendants' failure to pay Plaintiffs was willful within the meaning of 29 U.S.C. § 255.

153.	As a consequence of Defendants' willful violation of their rights under the FLSA, Plaintiffs seek unpaid minimum and overtime wages, plus an equal amount in liquidated damages, and costs and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

## FIFTH CLAIM FOR RELIEF
## (NORTH CAROLINA WAGE AND HOUR ACT- INDIVIDUAL CLAIMS)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

154.	Plaintiffs Lopez Lopez and Flores Lozano additionally bring individual claims for unpaid wages for the time they spent driving their co-workers, for which they were not compensated at the AEWR, which was the wage promised to them.

155.	As a result of these actions, Defendants are in violation of Plaintiff Lopez Lopez and Flores Lozano's rights under N.C. Gen. Stat. §§ 95-26.6. Plaintiffs have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants under N.C. Gen. Stat. §§ 95-25.22(a) and 95-25.22(a)(1).

## CLAIM FOR DECLARATORY RELIEF

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

156.	The named Plaintiffs and putative members of the FLSA collective actions that Plaintiffs seek to represent are in dispute as to their respective rights, privileges, obligations, and liabilities under the NCWHA and the FLSA, and require declaratory relief as to what those respective rights, privileges, obligations, and liabilities are.

## JURY DEMAND

157.	Plaintiffs demand a trial by jury on all issues so triable.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an order:

1. Finding that this Court has jurisdiction over Plaintiffs' claims;

2. Granting a jury trial on all issues so triable;

3. Pursuant to Rule 23(b)(3), Fed. R. Civ. P., certifying named Plaintiffs Cristobal Lopez Lopez and Gilberto Flores Lozano as representatives of the NCWHA Reimbursement Class and NCWHA Promised Wage Class with respect to the Second Claim for Relief;

4. Pursuant to Rule 23(b)(3), Fed. R. Civ. P., certifying named Plaintiffs Cristobal Lopez Lopez and Gilberto Flores Lozano as representatives of each of the Contract Classes with respect to the Third Claim for Relief;

5. Pursuant to 29 U.S.C. §216(b), certifying named Plaintiffs Cristobal Lopez Lopez and Gilberto Flores Lozano as representatives of the FLSA Reimbursement Collective Action and FLSA Underpayment Collective Action with respect to the First Claim for Relief;

6. Declaring that Defendants, by the acts and omissions described above, willfully violated Plaintiffs' rights and the rights of the members of the FLSA collective actions that they seek to represent under the minimum wage provisions of the FLSA at 29 U.S.C. §§ 206(a) as set forth in Plaintiffs' First Claim for Relief;

7. Declaring that Defendants, by the acts and omissions described above, willfully violated Plaintiffs' rights under the overtime provisions of the FLSA at 29 U.S.C. §207 as set forth in Plaintiffs' Fourth Claim for Relief;

8. Granting judgment in favor of Plaintiffs on their FLSA claims and awarding Plaintiffs monetary damages for unpaid minimum wages, plus liquidated damages in an equal amount and interest, costs, and attorneys' fees, as provided by 29 U.S.C. § 216(b);

9. Declaring that Defendants, by the acts and omission described above, violated Plaintiffs' rights and the rights of the members of the NCWHA Reimbursement and NCWHA Promised Wage Classes under the provision of the North Carolina Wage and Hour Act, as set forth in Plaintiffs' Second Claim for Relief;

10. Declaring that Defendants, by the acts and omission described above, violated Plaintiffs' rights and the rights of the members of the 2020 and 2021 Contract Classes under the common law of contracts, as set forth in Plaintiffs' Third Claim for Relief;

11. Declaring that Defendants, by the acts and omission described above, violated Plaintiffs' rights under the provision of the North Carolina Wage and Hour Act, as set forth in Plaintiffs' Fifth Claim for Relief;

12. Granting judgment in favor of Plaintiffs and the members of the NCHWA Reimbursement and NCWHA Promised Wage Classes on their NCWHA claims and awarding Plaintiffs monetary damages for unpaid promised wages, plus liquidated damages in an equal amount and interest, court costs, and attorneys' fees, as provided by N.C. Gen. Stat. § 95-25.6;

13. Granting judgment awarding Plaintiffs and the members of the 2020 and 2021 Contract Classes their actual damages for the Defendants' breach of their employment contracts;

14. Awarding Plaintiffs pre- and post-judgment interest, as allowed by law;

15. Awarding Plaintiffs their costs; and

16. Granting such injunctive, declaratory, and further relief as this Court deems just and appropriate.

33

Respectfully submitted, this the 2nd day of December, 2022.


OF COUNSEL:
North Carolina Justice Center                              /s/ Clermont Ripley
P.O. Box 28068                                             Clermont Ripley
Raleigh, NC 27611                                          N.C. State Bar No. 36761
Telephone: 919-856-2154                                    clermont@ncjustice.org
Facsimile: 919-856-2175

                                                           /s/ Carol L. Brooke
                                                           Carol L. Brooke
                                                           N.C. State Bar No. 29126
                                                           carol@ncjustice.org


OF COUNSEL:
HIGGINS BENJAMIN, PLLC                                     /s/ Jonathan Wall____
301 N. Elm St., Suite 800                                  Jonathan Wall
Greensboro, NC  27401                                      (N.C. State Bar No. 22839)
(336) 273-1600
fax: (336) 274-4650
jwall@greensborolaw.com

## CONSENT TO SUE

I, _____, hereby consent to be a party

under 29 U.S.C. §216(b) to the lawsuit to assert my right to the minimum wage required by the

Fair Labor Standards Act.

_____
Signature

_____
Date

## CONSENTIMIENTO PARA DEMANDAR

Yo, _Gilberto Flores Lozano_, por lo presente estoy de

acuerdo en ser parte, como lo estipula 29 U.S.C. §216(b) para demandar con el objeto de hacer

valer mis derechos al salario mínimo como lo exige el Acta de Normas Laborales Justas.

_____
Firma

05/octubre/2022
Fecha

<u>CONSENT TO SUE</u>

I, _____, hereby consent to be a party

under 29 U.S.C. §216(b) to the lawsuit to assert my right to the minimum wage required by the

Fair Labor Standards Act.

_____
Signature

_____
Date

<u>CONSENTIMIENTO PARA DEMANDAR</u>

Yo, <u>CriSTobAL LopeZ LopeZ</u>, por lo presente estoy de

acuerdo en ser parte, como lo estipula 29 U.S.C. §216(b) para demandar con el objeto de hacer

valer mis derechos al salario mínimo como lo exige el Acta de Normas Laborales Justas.

<u>CriStobAL LopeZ LopeZ</u>
Firma

<u>04 / ocT / 2022</u>
Fecha