IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-491-BO-RN

CRISTOBAL LOPEZ LOPEZ and GILBERTO )
FLORES LOZANO, on behalf of themselves and )
all similarly situated persons, )
                                           )
            Plaintiffs,                    )
                                           )          **DEFENDANTS' RESPONSE IN**
            v.                             )          **OPPOSITION TO PLAINTIFFS'**
                                           )          **MOTION FOR PARTIAL**
BOYKIN FARMS, INC., RHODES FARMING,        )          **SUMMARY JUDGMENT**
LLC, WILLIE C. BOYKIN, III, MATTHEW Z.     )
RHODES, TONY D. LEE, d/b/a LEE AND         )          ***ORAL ARGUMENT***
SONS FARMS, TONY CAMERON LEE, d/b/a        )          ***REQUESTED***
LEE AND SONS FARMS, and CLINT LEE,         )
d/b/a LEE AND SONS FARMS,                  )
                                           )
            Defendants.                    )
_____    )

Defendants Boykin Farms, Inc., Rhodes Farming, LLC, Willie C. Boykin, III, Matthew

Z. Rhodes (collectively the "Boykin/Rhodes Defendants"), Tony C. Lee, Cameron Lee, and

Clint Lee (collectively the "Lee Defendants") (the Boykin/Rhodes Defendants and Lee

Defendants are together referred to herein as "Defendants") submit their Response in

Opposition to Plaintiffs' Motion for Partial Summary Judgment and supporting

memorandum (DE 69 and 70) as follows:

## STATEMENT OF THE CASE

Plaintiffs, H-2A workers, and their counsel filed an overreaching lawsuit with broad

allegations of wrongdoing against the Defendants, alleging three separate farming

operations were a single enterprise. Plaintiffs are now trying to have this Court hold all three

farm operations jointly and severally liable. The reality of the facts uncovered in discovery is

that, at best, there were two farm groups, (1) the Lee Defendants, and (2) Boykin/Rhodes.

There are also at least two (2) separate groups of H-2A workers. The two groups conducted

separate operations in completely different parts of Johnston County, as well as maintained control of their designated workers, including separate living arrangements, separate payrolls, and worked in separate fields. Indeed, not one worker from the Boykin/Rhodes crew is a plaintiff, nor has any joined the conditionally-certified FLSA collective. Furthermore, Plaintiffs' claims are riddled with additional factual issues, from the basis for Plaintiffs' piece-rate calculations, to issues regarding Plaintiffs' drive time calculations, to Plaintiffs seeking to distract from how they did not plead any recordkeeping claims against any Defendants to the fact that Lee and Sons Farms is not a defendant in this action. Plaintiffs' Motion, and the alleged evidentiary support offered, shows how demonstrably desperate Plaintiffs and their counsel are in alleging things without material proof and simultaneously casting a proverbially broad net to improperly include the two farming operations as joint employers, which they are not.

Moreover, the overreach includes an attempt by Plaintiffs to use non-conforming and inconsistent facts to support their narrative in their Statement of Undisputed Facts. Plaintiffs have submitted approximately 140 purportedly undisputed statements of material fact, see L.R. 56.1(a)(1), which more accurately are comprised of one-sided statements of law, argument, and allegations more proper for a Complaint. Defendants have gone to great length in their objections to show that many of them are not only disputed but are actually contradicted by the discovery. Where the facts are truly undisputed, they support Defendants' summary judgment motions, not Plaintiffs'.

As such, Plaintiffs' Motion for Partial Summary Judgment must be denied.

## STATEMENT OF FACTS

See facts stated and cited in argument section herein as well as contemporaneously filed Defendants' Objections to Plaintiffs' Statement of Material Facts, and Defendants' Statements of Material Facts and corresponding appendices.  (DE 61, 61-1, 64, 65).

<u>**ARGUMENT**</u>

In their Motion for Partial Summary Judgment, Plaintiffs move for partial summary judgment on thirteen separate issues, claiming that there are no genuine issues of material fact for each of them and summary judgment should be granted in their favor. In their Motion they label the thirteen issues as A through M. For consistency across briefing, Defendants will refer to each as "Issue A" through "Issue M."

**I.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR SUMMARY JUDGMENT IN FAVOR OF THE OPT-IN COLLECTIVE ACTION CLAIMANTS AND ON ANY ISSUE RELATED TO THEM.**

In Issues C, D, and E of their Motion for Partial Summary Judgment, Plaintiffs seek summary judgment on behalf of Plaintiffs and "the opt-in plaintiffs," a phrase that is not defined in the Motion for Partial Summary Judgment. In Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment, Plaintiffs refer to the four individuals who opted in to the FLSA collective action as Jorge Alberto Rebolloza Garcia, Orlando Eliseo Rebolloza Gutierrez, Juan Antonio Torres Rebolloza and Jose Juan Espinoza Salazar. (DE 70, p. 5).

**A.    JOSE JUAN ESPINOZA SALAZAR IS NOT A PROPER OPT-IN.**

Jose Juan Espinoza Salazar ("Mr. Salazar") is not a proper opt-in member of the collective FLSA action. Mr. Salazar does not fall within the definition of potential collective action members set by the Court in its October 25, 2023 Order conditionally certifying this action as a FLSA collective action (the "Conditional Order") (DE 32). In the Conditional Order, the Court defines the persons conditionally certified to participate in the collective action as "Persons who, at any time during the three-year time period falling within the three chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, held

H-2A visas and were not reimbursed for all of their H-2A related expenses . . . during their first workweek."

The date on which this action was filed is December 2, 2022. Because Jose Juan Espinoza Salazar, only worked at the Lees' farm from April 2019 to November 2019 – outside the three-year period covered by collective action conditional certification – he is not a proper opt-in. Plaintiffs' counsel has admitted this. (Exhibit A, Clermont Ripley October 4, 2024 email stating, "He didn't work for defendants during the time period covered by the conditional certification"). Therefore, while Defendants submit that summary judgment should be denied, if the Court determines summary judgment on Issue C, D or E is proper, Defendants respectfully submit that summary judgment in favor of Mr. Salazar or the "opt in plaintiffs" generally should be denied.

### B. THE REMAINING THREE OPT-IN CLAIMANTS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

FLSA claims are subject to a two-year statute of limitations. 29 U.S.C. § 255(a). As set forth in the Lee Defendants' Motion for Partial Summary Judgment and supporting memorandum of law (DE 62, 63) and in Defendants' Motion to Decertify Collective Action and supporting memorandum of law (DE 66, 67), Opt-in claimants Orlando Eliseo Rebolloza Gutierrez and Juan Antonio Torres Rebolloza filed their Opt-In Notices on April 8, 2024 (DE-44 and 45, Plaintiffs' SUF ¶¶ 104, 105). That is the date their claims are deemed to commence.[1] The two-year statute of limitations cutoff date for both is April 8, 2022. Rebolloza Gutierrez and Torres Rebolloza both only worked for any of the Defendants prior to April 8, 2022. (DE 65, Exhibits 1, 10, 11). Therefore, any claim by them for damages in 2020 and 2021 is barred by the statute of limitations.

---

[1] *See Lewis v. Smithfield Packing Co., Inc.*, 2010 WL 1565568, at *2 (E.D.N.C. Aug. 18, 2010). See also 29 U.S.C. § 256(b).

Opt-in claimant Jorge Alberto Rebolloza Garcia worked as an H-2A worker at the Lees' farm from April 23, 2021 to November 27, 2021 and from May 20, 2022 to November 26, 2022. (DE 65, Exhibits 1, 9). He never worked at Boykin Farms, Inc. or Rhodes Farming, LLC (collectively "Boykin / Rhodes"). (DE 61 ¶81). He was reimbursed for his inbound travel expenses with his first paycheck in 2022; his only contention is that his 2021 reimbursement was paid late. (DE 65 Exhibit 9). Mr. Garcia filed his Notice to opt in to the collective action on March 12, 2024. (DE 40). That is the date his claims are deemed to commence and so that the statute of limitations cutoff date for him is March 12, 2022. Accordingly, his 2021 claims are barred by the statute of limitations.

## II. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT THAT ALL DEFENDANTS ARE EMPLOYERS UNDER THE FLSA AND NCWHA SHOULD BE DENIED.

Plaintiffs argue in Issue A that the "Employer Defendants," defined collectively as Willie Boykin, Boykin Farms, Matthew Rhodes, Rhodes Farming, Tony Lee, Cameron Lee, are "covered by and are employers under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq." (DE 70, Page 4, 9-10[2].) In so doing, Plaintiffs seek to impute liability onto all Defendants, except Clint Lee, for alleged failures to properly reimburse the H-2A workers for travel expenses, which resulted in payment less than minimum wage, and that Defendants failed to pay an adequate piece rate, pay for time travelling between fields, and required kickback payments for illegal meal charges, resulting in payment of less than minimum wage for Plaintiffs and similarly-situated workers. (*Id.* at 9-12.)

---

[2] Unless otherwise noted, all page numbers cited in this Opposition refer to the ECF page numbering.

## A. MATTHEW RHODES AND WILLIE BOYKIN, INDIVIDUALLY, WERE NOT EMPLOYERS OF PLAINTIFFS OR OPT-IN CLAIMANTS.

While Plaintiffs allege that all Defendants collectively employed all Plaintiffs and those similarly-situated, discovery has shown that there were two separate employers, Boykin/Rhodes and the Lee Defendants, and two separate sets of employees, the Boykin/Rhodes H-2A Workers and the Lee H-2A Workers. At the time of their alleged harms, Plaintiffs (and opt-in claimants to the extent that they worked for Boykin/Rhodes) were employees of Lee, not Boykin/Rhodes. As such, Boykin/Rhodes could not have violated the FLSA or the NCWHA with respect to Plaintiffs. Liability for any such violations does not fall upon Boykin / Rhodes.

The FLSA and NCWHA require each "employer" to pay the minimum hourly wage to qualified employees. 29 U.S.C. § 206(a); N.C. Gen. Stat. § 95-25.3. "Employers include those with managerial responsibilities and substantial control of the terms and conditions of the work of employees." *Kerr*, 824 F.3d at 83 (quotations omitted). Thus, "[t]o determine whether the employer-employee relationship exists, courts apply the 'economic reality' test." *Id*. "The [r]elevant factors in analyzing the economic reality of the putative employer-employee relationship include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Surey v. LifeRestore MD USA LLC NC1 LLC*, 2024 WL 4919537, at *16 (E.D.N.C. June 24, 2024) (internal quotation marks omitted) (quoting *Kerr*, 824 F.3d at 83). Courts are to "examine all of the circumstances and relevant evidence…." *Id*. (quoting *Garcia,* 644 F. Supp. 2d at 721.

Here, Plaintiffs have failed to set forth sufficient evidence establishing, for summary judgment purposes, that Willie Boykin and Matthew Rhodes were Plaintiffs' employers. With

respect to Willie Boykin and Matthew Rhodes, Plaintiff argues Mr. Boykin and Mr. Rhodes each "also each performed essential functions of an employer" including "setting the wage rate," "discipline," "paying the workers," and "determining where their joint crew would work on any given day." (*Id.* at 13) (citing SMF ¶¶ 63, 11, 12, 15, 26(d), 65, 66, 67, 60.) Plaintiffs also contend that Mr. Rhodes was very involved in overseeing the work of the recruiter in Mexico and identifying specific workers to hire. (*Id.* at 13) (citing SMF ¶ 21.) However, as established Boykin/Rhodes' Statement of Undisputed Facts (DE 61), Mr. Boykin and Mr. Rhodes only had authority to discipline the H-2A workers in the Boykin/Rhodes crew. (DE 61, ¶¶ 55-56.) As such, Mr. Boykin and Mr. Rhodes could not be deemed to be the employers of any employees in the Lee crew.

## B. BOYKIN/RHODES WERE NOT THE EMPLOYER OF THE LEES CREW, AND THE LEE DEFENDANTS WERE NOT THE EMPLOYER OF THE BOYKIN/RHODES CREW.

Further, with respect to Boykin Farms and Rhodes Farming, Plaintiffs contend that all "Farm Defendants" were the employers of both Plaintiffs and all other H-2A workers because "[t]he applications – submitted by Defendants themselves and certified as true under oath – identified the three farms as 'joint employers.'" (*Id.* at 13) (citing SMF ¶¶ 10, 12, 15.) Plaintiffs also contend that all Farm Defendants: (1) "had the power to discipline and fire workers;" (2) "supervised and controlled employee work schedules and conditions of employment, setting work rules in the job order and determining the time the workers would start work in the mornings;" and (3) "determined the rate and method of payment by specifying an hourly wage rate and a piece rate through their H-2A applications." (*Id.* at ¶¶ 11-12, 15. 50, 53, 57, 60, 52, 66).

However, as established in its Memorandum in Support of its Motion for Summary Judgment (DE 60), it is clear that Boykin/Rhodes were not the employers of the H-2A workers that worked and lived at the Lee Defendants' labor camp:

- <u>Hiring:</u> Solicitation of the workers was via separate submission of separate lists of workers' names by Boykin/Rhodes to Del Al and Lee and Sons to Del Al (DE 61, ¶23);

- <u>Supervision and Control:</u> the workers were treated as two separate sets of employees for two distinct employers:

  - When the workers arrived the Boykin/Rhodes employees stayed at the Boykin/Rhodes Labor Camp, and the Lee employees stayed in the Lee Labor Camp (DE 61, ¶¶51, 52, 57, 65);

  - If the workers stayed in the Boykin/Rhodes Labor Camp, they worked for the Boykin/Rhodes farming operations, and if the workers stayed in the Lee Labor Camp, they worked for the Lees' farming operations (DE 61, ¶¶51-57);

  - Boykin/Rhodes H-2A Workers worked in different fields and on different schedules than the Lee and Sons H-2A Workers (DE 61, ¶¶49, 53-56);

  - Boykin/Rhodes H-2A Workers were supervised and controlled by different people than the Lee H-2A Workers (DE 61, ¶¶55-56);

  - Boykin/Rhodes H-2A Workers utilized different equipment and transportation than the Lee H-2A Workers (DE 61, ¶53);

  - Boykin/Rhodes determined the conditions of employment and paid the Boykin / Rhodes H-2A Workers (DE 61, ¶¶53, 55, 57, 66);

- <u>Payment and Employment Records</u>

  - Boykin/Rhodes did not pay the Lee H-2A Workers except for the rare periods of time in which the Lee H-2A Workers performed work for Boykin/Rhodes (DE 61, ¶68);

  - Boykin/Rhodes maintained the employment records for the Boykin/Rhodes H-2A Workers, and only for the Lee H-2A Workers when they performed work for and were paid by Boykin/Rhodes (DE 61, ¶¶66-69).

In sum, Boykin/Rhodes did not hire, supervise, control, set the conditions of employment, pay, or keep records of the Lee H-2A Workers except for the rare times on which the Lee and Sons H-2A Workers performed work for Boykin/Rhodes. Furthermore, there is no evidence in the record that Boykin/Rhodes failed to comply with the FLSA or the NCWHA on the rare times in which Boykin/Rhodes did employ Plaintiffs. Plaintiff Flores worked for Boykin/Rhodes for the weeks of August 17, 2020, August 24, 2020, August 23, 2021, and August 30, 2021 and Plaintiff Lopez only worked for Boykin/Rhodes for the weeks of August 17, 2020, August 24, 2020, and August 30, 2021. (DE 61, ¶¶76-78). None of the Plaintiffs testified that Boykin/Rhodes paid them incorrectly during these times. As such, discovery in

this case demonstrates that, when the Lee H-2A Workers were performing work for the Lees – and not for Boykin/Rhodes, Boykin/Rhodes was not the employer of those workers.

III. **BOYKIN FARMS, RHODES FARMING AND THE LEE DEFENDANTS SHOULD NOT BE HELD JOINTLY AND SEVERALLY LIABLE FOR THE ALLEGED FLSA AND NCWHA VIOLATIONS.**

Plaintiffs next contend in Issue B that the "Farm Defendants," defined by Plaintiffs as collectively Boykin Farms, Rhodes Farming, and Lee and Sons Farms, which is not a defendant, are jointly and severally liable for the alleged FLSA and NCWHA violations.

A. **SUMMARY JUDGMENT FINDING JOINT AND SEVERAL LIABILITY IS PREMATURE WHEN WHETHER LIABILITY EXISTS ON EACH OF THE ISSUES IN THE COMPLAINT HAS NOT BEEN DETERMINED.**

As an initial matter, Plaintiffs ask the Court to enter summary judgment finding the three farms jointly and severally liable when the Court has not yet found anyone liable for any violation. If the Court finds any defendants liable for any violations alleged in the Complaint, the analysis of whether Boykin Farms, Rhodes Farming and Lee and Sons Farms should then be held jointly and severally liable should be conducted on an issue-by-issue basis, not as the sweeping, premature finding Plaintiffs seek to have the Court enter here. Therefore, the request to find Boykin Farms, Rhodes Farming and Lee and Sons jointly and severally liable is premature and is a determination more appropriately handled at trial stage of this action after the Court has determined both at summary judgment and at trial if the evidence supports each violation alleged.

B. **THE UNDISPUTED MATERIAL FACTS DO NOT SHOW THAT BOYKIN FARMS, RHODES FARMING AND LEE AND SONS FARMS ARE JOINT EMPLOYERS.**

In asking the Court to find joint and several liability, Plaintiffs claims that Boykin Farms, Rhodes Farming, and Lee and Sons Farms were joint employers under the FLSA and NCWHA. With regard to joint employment under the FLSA:

Separate persons or entities that share control over an

individual worker may be deemed joint employers under the FLSA. In the Fourth Circuit, the fundamental question guiding the joint employment analysis is whether two or more persons or entities are 'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment.

*Surey*, 2024 WL 4919537, at *18. Courts should consider the following non exhaustive factors in determining joint employment:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the ability to direct, control, or supervise the worker, whether by direct or indirect means;

> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

> (3) The degree of permanency and duration of the relationship between the putative joint employers;

> (4) Whether through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id*. (citing *Hall v. DIRECTV, LLC*, 846 F.3d 757, 769-70 (4th Cir. 2017)).

Each of these factors weighs against finding a joint employment relationship between Boykin/Rhodes and Lee and Sons for all of the H-2A Workers.

Plaintiffs contend that a joint employment relationship exists between Boykin/Rhodes and the Lee Defendants because:

10

- "The three farms have an interconnected family relationship" (DE 70, at 17) (citing SMF ¶¶36, 44.)
- "For three years, Boykin Farms, Rhodes Farming, and Lee and Sons Farms applied as joint employers to the H-2A program." (DE 70, at 17) (citing SMF ¶¶10-12, 15.)
- "They did this because it was beneficial to them to share workers." (DE 70, at 17) (citing Id. ¶18.)
- "The H-2A clearance order was a contract between the Boykin, Rhodes, Lee and Sons, and Plaintiffs and their co-workers, and set their wages, the crops in which they would work, and their housing, and established other living and working conditions." (DE 70, at 17) (citing Answer, ¶67.)
- "Plaintiffs' visas listed Boykin Farms as their employer and Matthew Rhodes as contact." (DE 70, at 17) (citing DE 53-7, 53-8; Appendix 2 to SMF, Ex. 3 and 4 (Plaintiffs' passport covers).)
- "Plaintiffs and their coworkers performed work in fields owned or controlled by each of the Defendants." (DE 70, at 17) (citing Id. ¶31.)
- "When workers from the Lee crew performed work in Boykin/Rhodes fields, Rhodes Farming sometimes paid them." (DE 70, at 17-18) (citing Id. ¶120.)
- "When Boykin/Rhodes workers performed work in Lee and Sons fields, the Lee and Sons crew leader Juan Perez would give them instructions." (DE 70, at 18) (citing Id. ¶121.)
- "Lee and Sons workers performed work in Boykin/Rhodes fields and were paid by Rhodes." (DE 70, at 18) (citing Id. ¶120.)

However, as conclusively established in discovery, with the exception of the two weeks in 2020 and two weeks in 2021 when the Lees' crew worked at Boykin/Rhodes, the evidence is that Boykin/Rhodes did not directly or indirectly: (1) determine the ability to control or supervise the Lee H-2A Workers (DE 61, ¶56), (2) actually supervise or control the Lee H-2A Workers (DE 61, ¶56); (3) determine the duration of the relationship with the Lee H-2A Workers (DE 61, ¶46, 54, 56); or (4) determine, share, or allocate responsibility over functions ordinarily carried out by an employer (DE 61, ¶¶45-74). Additionally, Boykin/Rhodes and the Lee Defendants were not under common control or ownership and did not perform work on the same premises or premises controlled by the other. (DE 61, ¶¶45-74).

Plaintiffs cite to the fact that Boykin/Rhodes and Lee and Sons signed the same H-2A forms together as conclusively establishing joint employment for the entirety of the seasons. Plaintiffs' argument fails for several reasons. First, that the Boykin/Rhodes and Lee and Sons applied for H-2A workers together does not supplant the joint employment analysis the Court

performs under applicable FLSA and NCWHA case law. Rather, the Court must consider the factors from *Hall* and make a totality of the circumstances determination. Second, Mr. Rhodes, Ms. Boykin, and Tony Lee all testified that the purpose of them signing the documents together was to allow them to share workers if necessary – not so that they could combine operations as a joint employer. Indeed, the H-2A forms themselves indicate on their face that the farms were operating separately, with different fields in different location and with different labor camps. Finally, there is no evidence that the workers considered themselves employees of both farms – Plaintiffs both testified that they worked for the Lees under the supervision of one of the Lees. (DE 61, ¶¶75-77). While the Court may consider that Boykin/Rhodes and Lee and Sons signed the H-2A Forms together, that fact is not dispositive of the joint employment issue, and under the totality of the circumstances Boykin/Rhodes and Lee and Sons ran separate farms with separate operations in separate locations and were not joint employers of all the H-2A workers.

Accordingly, given these undisputed facts, under both the FLSA and the NCWHA, Boykin/Rhodes and the Lee Defendants were not joint employers of all of the H-2A workers during the entirety of the growing seasons in 2020 and 2021.

### C. BECAUSE LEE AND SONS FARMS IS NOT A DEFENDANT IN THIS ACTION, JUDGMENT CANNOT BE ENTERED AGAINST IT.

Lee and Sons Farms is not a defendant in this action and was not served with a summons, which prevents judgment from being entered against it on summary judgment. Notwithstanding, Plaintiff has included Lee and Sons Farms in its collective definition of "Farm Defendants" in this action and seeks to have the Court hold that it is jointly and severally liable for violation of the FLSA and the NCWHA and enter judgement against Lee and Sons Farms.

Although Plaintiff admittedly has named the partners in Lee and Sons Farms as

defendants in this action, the general partnership of Lee and Sons Farms is not a party to this case and have not been served with process. Notwithstanding, in Issue E, Plaintiffs ask the Court to enter summary judgment against Lee and Sons Farms, not just on liability but finding that Lee and Sons must pay damages in an amount set forth by Plaintiffs in their memorandum of law. Specifically, Plaintiffs ask that the Court enter judgment finding that:

> Lee and Sons Farms owes the named Plaintiffs and opt-in Plaintiffs FLSA damages in the amounts specified in Section V.B.1. of Plaintiff's accompanying supporting memorandum.

Partnerships are recognized legal entities. Pursuant to N.C. Gen. Stat. § 1-69.1, general partnerships "may sue and be sued under the name by which they are commonly known and called, or under which they are engaging in a business, to the same extent as any other legal entity established by law and without naming any of the individual members composing it." If Plaintiffs planned to seek a judgment against Lee and Sons Farms, they easily could have sued Lee and Sons Farms. They did not do so. Indeed, Plaintiffs' Complaint nowhere uses the word "partner" or "partnership" and there is no allegation that Tony, Clint, and/or Cameron Lee were partners in a general partnership under North Carolina law.

To ask this Court to enter judgment against Lee and Sons Farms offends the principles of due process.

> Under well-established principles of due process, a person is not subject to a judgment entered in litigation in which he has not been named as a party or been "made a party by service of process." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (citation omitted); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110-12, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). Such service of process is fundamental to the imposition of any procedural restraint on a named defendant, and enables the court to exercise personal jurisdiction over him. *Id.*; *United States v. Perez*, 752 F.3d 398, 406 (4th Cir. 2014) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484

13

> U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)). By precluding entry
> of judgment against a non-party to a case, these due process principles
> ensure that a court does not "adjudicate a personal claim or obligation
> unless [the court] has jurisdiction over the person of the defendant."
> *Zenith Radio*, 395 U.S. at 110, 89 S.Ct. 1562.

*Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 264–65 (4th Cir. 2019), *as amended*

(Aug. 7, 2019).

In *Life Techs Corp. v. Govindaraj*, the Fourth Circuit was faced with the

determination of an issue similar to the one at hand. There, the plaintiff obtained an

injunction against the defendant corporation and its officers, including the corporation's

president, who was not named as a defendant. After entry of default judgment against the

corporation, the district court awarded damages against <u>both</u> the defendant corporation and

the corporation's president personally. Upon review, the Fourth Circuit concluded "that the

district court erred in entering judgment against [the corporation's president] personally

when he was not named as a party or otherwise brought into the case by service of process."

*Life Techs. Corp.*, 931 F.3d at 262.

Here, it cannot be disputed that Plaintiffs failed to name Lee and Sons Farms as a

defendant. As for the summonses issued to Tony Lee, Cameron Lee and Clint Lee, each

gentleman is individually named on his summons with no mention of Lee and Sons Farms.

(DE 7). There was no summons issued directed to Lee and Sons Farms, which is contrary to

the requirements of Rule 4(a)(1) of the Federal Rules of Civil Procedure which specifically

states, in pertinent part:

> (1) *Contents*. A summons **<u>must</u>**:

> (A) name the court and the parties;

> (B) be directed to the defendant;

(emphasis added).

Just as there can be no dispute that Lee and Sons is not a named defendant, there can

be no dispute that there has never been a summons in this action that names Lee and Sons Farms or is directed to Lee and Sons Farms. The summonses directed to the named Lee Defendants are insufficient to make the partnership a party to this action. Accordingly, Plaintiffs cannot now argue that somehow Lee and Sons Farms was otherwise brought into this case by service of process.

Because Lee and Sons Farms has not been named as a defendant or otherwise made a party by service of process, Lee and Sons Farms is not subject to Judgment in this action. Thus, Plaintiffs' motion for summary judgment asking that judgment be entered against Lee and Sons should be denied as a matter of law.

## IV. THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR SUMMARY JUDGMENT FINDING THAT TONY AND CAMERON LEE VIOLATED THE MINIMUM WAGE PROVISIONS OF THE FLSA BY FAILING TO REIMBURSE THEM FOR TRAVEL EXPENSES DURING THEIR FIRST WEEK OF WORK.

In Issue C, Plaintiffs ask the Court to enter summary judgment that:

> Tony Lee and Cameron Lee, acting on behalf of Lee and Sons Farms, violated the minimum wage provisions of the FLSA by failing to reimburse the Plaintiffs and the opt-in Plaintiffs during their first week of work for their transportation, visa, lodging, subsistence, and border crossing costs.

Notably, Plaintiffs fail to state the years for which they ask the Court to enter summary judgment. For this reason alone, Plaintiffs' request for summary judgment on Issue C should be denied.

In their Memorandum of Law in Support of Motion for Summary Judgment, Plaintiffs refer to 2020 and 2021 as the years in which "Lee and Sons" violated the minimum wage provisions of the FLSA by failing to reimburse the Plaintiffs and the opt-in claimants for their inbound travel expenses during the first workweek. However, as set forth in the Lee Defendants' Motion for Partial Summary Judgment and supporting memorandum of law (DE 62 and 63), Plaintiffs filed their complaint on December 2, 2022; therefore, any FLSA cause

of action accruing prior to December 2, 2020, is barred by the two-year statute of limitations. 29 U.S.C. § 255(a).

The evidence shows that, in 2020, Plaintiff Flores' and Plaintiff Lopez's first work weeks both ended at the latest on April 29, 2020, with their first paycheck being on April 30, 2020. (DE 71, Plaintiffs' SUF ¶¶ 81, 84). Therefore, any claim made by Plaintiff Flores or Plaintiff Lopez for the Lee Defendants' alleged failure to pay H-2A expenses during their first work week in 2020 accrued not later than April 30, 2020-which is prior to the December 2, 2020, cutoff date. Therefore, Plaintiffs' individual FLSA claims arising in 2020 are barred by the two-year statute of limitations at 29 U.S.C. § 255(a).

Additionally, as set forth in Section I of this memorandum, summary judgment in favor of the opt-in claimants should be denied because Mr. Salazar is not a proper member of the conditional collective action, and the remaining three opt-ins' claims for failure to reimburse their travel expenses during their first week of work are similarly barred by the statute of limitations.

To the extent that the Court finds a potential willful violation of the FLSA by one or more of the Lee Defendants, the Plaintiffs and opt-in claimants can only recover damages under their FLSA reimbursement claims for the 2020 agricultural season.

## V. PLAINTIFFS' REQUEST FOR SUMMARY JUDGMENT HOLDING THAT TONY AND CAMERON LEE ACTED WILLFULLY SHOULD BE DENIED BECAUSE THAT DETERMINATION REQUIRES RESOLUTION OF ISSUES OF DISPUTED MATERIAL FACT.

In Issue D, Plaintiffs ask the Court to enter summary judgment that:

> Tony Lee and Cameron Lee acted willfully when they failed to reimburse Plaintiffs and the opt-in Plaintiffs during their first week of work for their transportation, visa, subsistence, and border crossing costs.

Again, Plaintiffs fail to state the years for which they ask the Court to enter summary judgment. However, as discussed above, in their Memorandum of Law in Support of Motion

for Summary Judgment, Plaintiffs only refer to 2020 and 2021 when discussing the alleged failure to reimburse Plaintiffs and the opt-in claimants.

Additionally, in their supporting memorandum of law, Plaintiffs cite to their SMF 72 and 73 as the undisputed facts supporting their argument that they are entitled to summary judgment on Issue D. Defendants, however, have objected to Plaintiffs' SMF 72 and 73 because both SMF mischaracterize and/or misstate the testimony cited. Specifically, Tony Lee during his 2024 deposition was "do you understand", not "did you understand". (Tony Lee Dep. 89:3-13, 15-20). Accordingly, contrary to the purported "fact" stated, the quoted testimony does not show that Tony Lee "knew of his responsibility to reimburse the H-2A workers for the expenses described in "Fact" 72 during the first work week" at the time H-2A workers were reimbursed in 2019 through 2022.

Similarly, the question asked of Cameron Lee during his 2024 deposition was "have you ever delayed giving reimbursements" and did not ask whether at the time of any purported delay Cameron Lee "knew of his responsibility". Accordingly, contrary to the purported "fact" stated, the quoted testimony does not show that Cameron Lee "knew of his responsibility to reimburse the H-2A workers for the expenses described in "Fact" 71 during the first workweek" at the time H-2A workers were reimbursed in 2019 through 2022. (Cameron Lee Dep. 154:2-10). At the very least, whether Tony Lee and Cameron Lee acted willfully is an issue of disputed of fact and one that should be decided by the jury after hearing and weighing all the facts and testimony presented at trial.

Additionally, as set forth in Section I of this memorandum, summary judgment in favor of the opt-in claimants should be denied because Mr. Salazar is not a proper opt-in claimant, and the remaining three opt-ins' claims are barred by the statute of limitations unless the Court finds a willful violation of the FLSA and then the claims are barred except as to the 2020 agricultural season.

**VI. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ASKING THE COURT TO ENTER A MONETARY JUDGMENT AGAINST LEE AND SONS FARMS SHOULD BE DENIED BECAUSE LEE AND SONS FARMS IS NOT A DEFENDANT IN THIS ACTION.**

Lee and Sons Farms is not a party to this case and cannot have a judgment entered against it in this action. Notwithstanding, in Issue E, Plaintiffs ask the Court to enter summary judgment against Lee and Sons Farms. As argued above, if Plaintiffs planned to seek to have a judgment entered against Lee and Sons Farms, Plaintiffs easily could have sued Lee and Sons Farms. They chose not to not do so. For the reasons set forth in Section III.C. above, Lee and Sons Farms is not a defendant to this action so that the Court does not have the jurisdiction to enter a judgment against it, and, as a result, Plaintiffs' motion for summary judgment asking the Court to find that Lee and Sons Farms is liable and should have a monetary judgment entered against it should be denied.

**VII. THE COURT SHOULD DENY PLAINTIFFS' REQUEST THAT SUMMARY JUDGMENT BE ENTERED AGAINST THE "EMPLOYER DEFENDANTS" FOR FAILURE TO PAY MEMBERS OF THE NCWHA PROPOSED CLASS AND SUBCLASSES THE PROMISED WAGE RATE.**

Plaintiffs request in Issue F of their Motion for Partial Summary Judgment that the Court enter summary judgment finding that the "Employer Defendants" violated the NCWHA by failing to pay "the members of the proposed NCWHA Reimbursement Subclass" as required "for all work performed for the Defendants because of Defendants' failure to reimburse those employees during their first week of work for the transportation, visa, lodging, subsistence and border crossing costs." Similarly, Issue G of Plaintiffs' Motion for Partial Summary Judgment asks that the Court enter summary judgment finding that the "Employer Defendants" violated the NCWHA by failing to pay "the proposed NCWHA Piece-Rate Subclass at the promised wage rate for all hours worked in the workweeks in which they worked on a piece-rate basis." Neither Issue F nor Issue G includes any stated limitation of time and both broadly sweep all Defendants, with the exception of Clint Lee, into the issues

on which they seek summary judgment, even though the definitions of the proposed NCWHA class and subclasses include time limitations and specify the NCWHA class only applies to Lee and Sons Farms.

Specifically, in Plaintiff's Motion for Certification of NCWHA and Contract Classes and Subclasses and to Approve Class Notice, and in the supporting memorandum and proposed Class Notice (DE 52 and 53), Plaintiffs define the NCWHA Class as "all individuals who were employed or jointly employed[3] by Defendant Lee and Sons Farms on an H-2A visa at any time between December 2, 2020 and December 31, 2022 and who were not paid the promised wage for one or more workweeks."

Turning next to the two specific NCWHA putative subclasses for whom Plaintiffs seek summary judgment in Issues F and G, because Plaintiffs define the NCWHA class as only applying to the Lee Defendants, the subclasses can also only apply to the Lee Defendants. Not only is the putative Reimbursement Subclass limited to the Lee Defendants but it is also limited to the year 2021 ("All NCWHA Class Members who worked in 2021 ...."), which again Plaintiffs fail to state in Issue F. The proposed Piece-Rate Subclass is also limited to workers employed by Lee and Sons Farms" because it is defined by Plaintiffs as "All NCWHA Class members who were paid by the piece which resulted in pay below the promised wage for one or more workweeks.," and the NCWHA Class is limited to Lee and Sons Farms.

For these reasons, Defendants respectfully submit that the Court should deny Plaintiffs' motion for summary judgment that the "Employer Defendants," a grouping that by Plaintiffs' definition encompasses more persons and farms than Lee and Sons Farms,

---

[3] To the extent that Plaintiffs contend that by inserting "jointly employed" in their definition it encompasses all the Defendants, see arguments against joint employment throughout this memorandum and DE 60 pp. 16-18 for why Plaintiffs' joint employment argument fails.

which is not even a defendant, violated the NCWHA by failing to pay "the members of the proposed NCWHA Reimbursement Subclass" as required "for all work performed for the Defendants because of Defendants' failure to reimburse those employees during their first week of work for the transportation, visa, lodging, subsistence and border crossing costs."

## VIII. THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT FINDING THAT THE EMPLOYER DEFENDANTS VIOLATED THE NCWHA BY FAILING TO PAY PLAINTIFFS AND THE PROPOSED NCWHA PIECE-RATE SUBCLASS AT THE PROMISED WAGE RATE WHEN THEY WERE PERFORMING PIECE-RATE WORK.

Plaintiffs seek summary judgment in their favor for their claim that the Defendants violated the NCWHA, specifically N.C. Gen. Stat. § 95-25.6, for failing to pay all wages when due when workers were paid on a piece rate basis rather than by the hour. This request is flawed in several respects as set forth below.

### A. PLAINTIFFS' CLAIM IS NOT SUPPORTED BY THE LAW OR THE FACTS.

Plaintiffs seem to seek damages for violation of the NCWHA for 2020. Any such claims are time-barred. This action was filed on December 2, 2022. (DE 1). The statute of limitations for claims under the NCWHA is two years. N.C. Gen. Stat. § 95-25.22(f). No evidence suggests that either Plaintiff or any H-2A worker performed any labor in 2020 and on or after December 2. To the extent that Plaintiffs seek recovery under the NCWHA for damages allegedly incurred in 2020, summary judgment should be entered against them, not for them.

Plaintiffs also seem to ignore the fact that neither of them worked for any of the Defendants in 2022 and so they cannot claim damages under any legal theory for that year. (DE 64, Lee Defendants' Statement of Material Facts ¶¶ 43, 66). Certainly, summary judgment in Plaintiffs' favor for damages under the NCWHA in 2022 must be denied.

That leaves 2021. In support of their piece rate argument, Plaintiffs rely heavily on their self-serving position that the hours worked by the "dumpers," who collect buckets of cucumbers or sweet potatoes, also accurately reflects the number of hours that field workers

who were harvesting the crops worked on any given day. This position has been undermined by the evidence from discovery. First, the Lee crew dumpers worked longer hours than field workers. Juan Perez testified how he and the dumpers met with each worker at the end of the day to receive and count their tickets. (Juan Perez Dep. pp. 78:2-79:1). Once their tickets are turned in, the field worker is finished for the day. The dumpers have to keep working until every field worker's tickets are turned in and counted, however. While a worker would be with the dumper while his or her tickets were counted, once that was done (if not before) the worker was "off the clock." The dumper must work until the reconciliation of tickets was complete for every worker.

Other workers were paid on an hourly basis at various times during the year. That does not mean that their hours can be used to extrapolate the hours worked by those who were performing piece rate work at the same time, however. For example, some workers pulled weeds, some drove or operated machinery, and others set seed potatoes during the same time period that many workers were harvesting sweet potatoes. (Juan Perez Dep. pp. 86:10-90:3).

In their Memorandum in support of their Motion for Partial Summary Judgment, Plaintiffs seem to argue that the Defendants' alleged failure to have complete payroll or time records subjects them to liability under the NCWHA. (Plaintiffs' Memorandum pp. 22-23). They cite to no NCWHA cases for this premise, however, and instead rely on several FLSA cases. Plaintiffs stated no claim for record keeping violations under any legal theory. If they had made such a claim, it must have been pursuant to the FLSA since NCWHA record keeping claims are preempted by it. *Luna-Reyes v. RFI Construction, LLC*, 109 F.Supp.3d 744, 752 (M.D.N.C. 2015). Plaintiffs' reliance on cases that do not mention the NCWHA shows the fallacy of their argument. Any attempt to win summary judgment on their NCWHA claims based on alleged record keeping issues fails.

## B. PLAINTIFFS' CLAIMS AGAINST THE BOYKIN/RHODES DEFENDANTS ARE NOT SUPPORTED.

As detailed throughout this memorandum, Plaintiffs have failed to establish that the Lee Defendants and Boykin/Rhodes are joint employers for purposes of the NCWHA. As such, any action or fact regarding piece rate payment alleged by Plaintiffs attributed to Lee and Sons cannot be imputed to Boykin/Rhodes.

Moreover, Plaintiffs' specific allegations that Boykin/Rhodes failed to pay all wages when due when workers were paid on a piece rate basis rather than by the hour is not supported by the record. In support of their argument, Plaintiffs allege that:

- "Joyce Boykin testified for Boykin Farms that they had no idea how many hours their employees worked when they were paid by the piece." (DE 70, at 24) (citing DE 61 ¶ 118.)

- "Matthew Rhodes, testifying for Rhodes Farming, also admitted that Rhodes Farming does not have any records to show workers' hours when they are paid by the piece, and could not know whether their employees were paid the AEWR." (DE 70, at 24) (citing DE 61 ¶ 118.)

- "Boykin Farms and Rhodes Farming relied on their crew leader, Sergio Valencia, to make sure the Boykin/Rhodes workers were paid the AEWR. They admit, however, that Sergio did not put the hours on the time records when the crew was doing piece-rate work and that they never spoke with Sergio about recording those hours." (DE 70, at 24) (citing SMF ¶ 113.)

However, Mr. Boykin was aware that the member of the Boykin/Rhodes crew, when they were paid on a piece rate basis, needed to earn the required wage, as indicated on the clearance orders he signed on behalf of Boykin Farms, Inc. (DE 61-9, p. 12, 38, 64, 90); (DE 61-10, p. 12, 36, 59). Also, Mr. Rhodes instructed Mr. Valencia, who was in charge of recording the Boykin / Rhodes crew's hours, that if the piece rate payment for the workers did not meet the AEWR requirements, the workers needed to be paid accordingly so that Boykin / Rhodes did not owe any additional pay to the workers. (Rhodes Dep. 72:17-73:11, 74:7-75:3 (at DE 72-4, pp. 73-74, 75-76)). Boykin / Rhodes do not currently have records of how many hours their employees worked when they were paid on piece rate; it was Mr.

Valencia's responsibility to ensure that the members of the Boykin / Rhodes crew were paid at least the AEWR, which was communicated by Boykin / Rhodes to Mr. Valencia at the beginning of the season and through the posted clearance order, and Mr. Valencia tracked the workers' hours. (Rhodes Dep. 74:7 – 75:3 at DE 72-4, pp. 74 -75; Boykin Dep. 77:19-25 at DE 72-3).

Plaintiffs also contend that "[t]he employees harvesting sweet potatoes worked the same hours as people who worked as dumpers (persons who dumped the buckets of sweet potatoes into the trailer). *Id.* ¶123. In addition, the evidence shows that most of the piece-rate workers worked the same hours as one another." Plaintiffs' assertion is not supported by the record evidence. Plaintiffs rely on the testimony of Juan Perez. As discussed above, that testimony does not provide the unequivocal support that Plaintiffs would claim. Further, Mr. Perez did not work with the Boykin / Rhodes crew and so he could not provide testimony as to whether Boykin / Rhodes crew harvesting sweet potatoes worked the same hours as dumpers.

Finally, there is no support for the proposition that the piece-rate workers across the two crews at the two different farms worked the same hours. Mr. Rhodes indicated that some of the workers "would start at the same time, but not necessarily stop." (Rhodes Dep. 84:15-16 (at DE 72-4 p. 85). While Ms. Boykin testified that "most all" of the "members of the crews generally start and stop working at the same time as each other" (Boykin Dep. 85:1-3 (at DE 72-3 p. 86)), she was speaking in generalities. The conclusions drawn by Mr. Steinkamp are, thus, wholly unreliable, especially as to Boykin/Rhodes Defendants.

As such, it is clear there is no evidence that Boykin/Rhodes violated the NCWHA by failing to pay Plaintiffs and the proposed NCWHA Piece-Rate Subclass at the promised wage rate for all hours worked in workweeks in which they worked on a piece-rate basis. Accordingly, Plaintiff's Motion should be denied.

### C. NEIL STEINKAMP'S TESTIMONY AND CALCULATIONS ARE WHOLLY INSUFFICIENT TO SUPPORT PLAINTIFFS' CLAIMS.

In addition to the allegations discussed above, Plaintiffs further rely heavily on calculations by Neil Steinkamp, who has not yet been qualified as an expert, in an effort to demonstrate that Defendants violated the NCWHA by failing to pay Plaintiffs and the proposed NCWHA Piece-Rate Subclass at the promised wage rate for all hours worked in workweeks in which they worked on a piece-rate basis. (DE 70, at 25.) However, Mr. Steinkamp's testimony and calculations are wholly insufficient to support Plaintiffs' claims.

Plaintiffs' purported expert's methodology is fatally flawed. Mr. Steinkamp applied a uniform minimum number of working hours to all the H-2A Workers in a given week, and did not consider that there were in fact two groups of workers, the Lees' workers and the Boykin/Rhodes workers, who were working at different farming operation more than a half-hour apart. (DE 61, Exhibit 6 at 36:12-37-16). Furthermore, his opinion is based on assumptions about hours worked, not evidence. *Id.*

As such, it is clear there is no evidence that Boykin/Rhodes violated the NCWHA by failing to pay Plaintiffs and the proposed NCWHA Piece-Rate Subclass at the promised wage rate for all hours worked in workweeks in which they worked on a piece-rate basis. Accordingly, Plaintiff's Motion should be denied.

### IX. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON ANY CLAIM RELATED TO TIME SPENT DRIVING.

In Issues H and I, Plaintiffs seek summary judgment on claims arising from any driving done by Plaintiffs. Issue H seeks summary judgment that "Employer Defendants violated the NCWHA when they failed to pay the named Plaintiffs all of their wages when those wages were due because of Defendants' failure to pay the named Plaintiffs at the promised wage rate for time worked driving their co-workers between the labor camps and the fields, and to the grocery store and/or bank." Issue I then seeks summary judgment

24

finding that "Employer Defendants violated the overtime wage provisions of the FLSA by failing to pay Plaintiff Cristobal Lopez Lopez overtime wages for all hours worked over forty in workweeks in which he performed non-agricultural work as a driver." As set forth herein, summary judgment should be denied on both issues.

## A. NEITHER THE LAW NOR THE UNDISPUTED FACTS SUPPORT PLAINTIFFS' CLAIMS ARISING FROM TIME SPENT DRIVING.

Plaintiff Lopez claims that he is entitled to summary judgment for the failure to pay him overtime for all hours worked over 40 in any workweeks where he did non-agricultural work as a driver. In fact, there is at least a factual issue about whether he is entitled to such compensation and for what periods of time he must be compensated. As discussed in the Lee Defendants' brief in support of their motion for summary judgment, the Portal to Portal Act does not require compensation for employees while they are: "(1) walking, riding, or traveling to, and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to set up principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 USC § 254(a).

Section (1) bars Plaintiffs' claims for travel between the housing and the fields at the start and end of each day. The Plaintiffs' "principal activity" was not driving. They were in the United States on H-2A visas that allowed (and required) them to perform agricultural work. While they may have performed other tasks, their principal activity is undisputed.

North Carolina courts have evaluated this issue on several occasions, both under the NCWHA and the FLSA. *See Whitehead v. Sparrow Enterprise, Inc.*, 167 N.C. App. 178, 605 S.E.2d 234 (2004); *Hyman v. Efficiency Inc.*, 167 N. C. App. 134, 605 S.E. 2d 254 (2004); *Leverette v. Labor Works International, LLC*, 180 N.C. App. 102, 636 S.E.2d 258 (2006). Each

of these cases included claims by employees of temporary agencies, seeking wages for waiting and travel time. In each case, summary judgment was allowed for the defendant and affirmed by the appellate court.

Those courts generally considered three issues when determining whether the plaintiffs were entitled to compensation for their travel time. First was whether the workers were required to meet at the defendant's office before traveling to a job site. Second was whether the workers performed labor before going to the job site. Third was whether the workers got tools at the defendants' office that they then carried with them to the job site. The case is also examined whether the tools picked up were specialized or common, personal protective equipment, for example.

Applying the analysis from these cases, Plaintiff Lopez is not entitled to compensation for the time spent traveling to and from job sites at the beginning and the end of the workday. He was not required to meet at the Lee Defendants' office before traveling to work. Plaintiffs may argue that he was required to be at the workers' housing location, but this ignores the fact that he lived in this housing as well. The Lee Defendants did not require that he come to the housing from some other location; it is where he started his day. Plaintiffs also did not perform labor at the housing before leaving to go to the fields. Finally, there is no evidence that they collected tools or other equipment at the Lee Defendants' housing or any other location before traveling to the fields to start work for the day.

The FLSA further provides an exemption from overtime for: "any employee engaged … (B) in transportation, whether or not performed by the farmer, between the farm and any point within the same State of persons employed or to be employed in the harvesting of fruits or vegetables." 29 U.S.C.A. § 213(b)(16). For this exemption to apply, three conditions must be met:

(a)  The employee must be engaged "in transportation" of harvest workers; and

(b) The harvest workers transported must be "persons employed or to be employed in the harvesting of fruits or vegetables"; and

(c) The employee's transportation of such harvest workers must be "between the farm and any point within the same State."

29 C.F.R. § 780.918.

Each requirement is met in this case. Plaintiffs contend that they should have been paid for transporting H-2A Workers and were not. (DE 1, ¶¶ 92-98). The H-2A Workers they claim to have transported were in the United States to perform agricultural work, specifically harvesting the vegetables grown by some or all of the Defendants. The farmer defendants in this action grow vegetables, including cucumbers, banana peppers, and sweet potatoes. (DE 1, ¶ 57(c), 59(c), 61(c)). No evidence suggests that Plaintiffs transported H-2A Workers to any place outside the State of North Carolina. Plaintiffs also allege that the transportation for which they should have been paid was from one or more of the Defendants' housing locations to and from their farms and other related locations. (DE 1, ¶¶ 92-98).

To the extent that Plaintiff Lopez (or Plaintiff Flores) transported other workers who were employed or to be employed in harvesting fruit or vegetables and they worked more than 40 hours in any workweek, this exemption bars his overtime claim. Neither Plaintiff is entitled to recover overtime compensation from any of the Defendants and is certainly not entitled to summary judgment in his favor on the driving time claims.

In their quest for summary judgment, Plaintiffs also ignore the testimony of Juan Perez. Mr. Perez testified that that the Plaintiffs <u>were</u> paid for driving time, including when driving a bus. (Perez Dep. pp. 79:20-81:17; 82:8-83:4; 127:20-128:1). Specifically, Mr. Perez testified:

Q:     But as far as you know, if somebody was a driver and that was their job, did they get paid for all the hours that they drove?

A:     Yes.

27

(Perez Dep. pp. 127:22-128:1).

Mr. Perez also explained that the bank where workers cashed their checks was in Four Oaks, NC and was no more than 20 minutes from any of the Lee Defendants' housing locations. (Perez Dep. p. 127:4-19). He did not track all of the time spent at the bank waiting for everyone to cash their checks plus the driving time, however. (Perez Dep. p. 128:11-20). Plaintiffs ignore Mr. Perez's testimony, baldly claiming that: "It is undisputed that both the named Plaintiffs drove their co-workers … and that they were not paid for this time." (Plaintiffs' Memorandum p. 23). At a minimum, there is a dispute of fact about whether and when Plaintiffs were paid for driving time and – more importantly – there is a legal issue about whether this was compensable time in the first place.

Plaintiffs' summary judgment motion related to driving time for both Plaintiffs should be denied. This is true whether they were the driver or the passenger in the vehicle used for their commute to the fields where work was performed. Indeed, summary judgment should be entered <u>against</u> them on these issues.

Plaintiffs rely on *Ramirez v. Statewide Harvesting & Hauling, LLC* to support Plaintiff Lopez's claim that he is entitled to be paid overtime. 997 F.3d 1356 (11th Cir. 2021). This reliance is misplaced. First, the case recognized the United States Supreme Court's holding in *Encino Motorcars, LLC v. Navarro*, which held that exemptions to the FLSA are not narrowly construed but instead must receive "a fair reading." 584 U.S. 79, 88-89 (2018). *Ramirez* focused on the agriculture exemption from overtime set out at 29 U.S.C. § 213(b)(12). The defendant in *Ramirez* was a company that provided labor to various farmers but admitted that it was not itself a farmer. 997 F.3d at 1359. That defendant also admitted that the named plaintiffs' work on the driving trips in question was neither minor nor incidental to their main job responsibilities. *Id.* at 1360. The trips taken by the Ramirez plaintiffs were

"not connected to a single farming operation." *Id.* at 1362. Finally, the farms where the workers in *Ramirez* lived were "up to two hours away from their accommodations." *Id.* at 1361.

In this case, the Defendants are indisputably farmers. The trips in question were connected to a farm, specifically the Lee Defendants' farm. The distances traveled by the Plaintiffs here were much shorter than the *Ramirez* plaintiffs and so more connected to the work done at the Lees' farm. Work done for a farmer by his or her employees is also considered work done "by a farmer" under the FLSA. *See* 29 CFR § 780.132. The Defendants do not concede that the time spent driving on errands was anything other than minor and incidental. Plaintiff Lopez admitted that, even in weeks where he was "doing a lot of driving" he still "did everything," including picking or planting crops. (Lopez Dep. p. 86:3-7). While the length of his drives is a contested issue of fact, Plaintiff Lopez claims that a trip to the bank might take an hour and a half of driving time. (Lopez Dep. p. 84:21-85:9). In a week where he otherwise worked more than 40 hours, this 90 minute trip would involve less than four percent (4%) of his working time.

The Plaintiffs allege that their driving trips were "primarily for the Defendants' benefit," but in depositions admitted that they also cashed their own checks at the bank and bought groceries at the store. (DE 1, ¶¶ 94, 99; Flores Dep. pp. 11:11-12:19, 56:12-14; Lopez Dep. pp. 48:15-49:18). It is telling that the Plaintiffs do not seek recovery of wages for any other worker. If these trips were in fact mandatory, why is there not a claim for class or collective action treatment for all workers? There is at least a question of fact as to whether these trips were more for the Plaintiffs' own benefit than the Defendants'.

Finally, summary judgment on FLSA exemption issues should rarely be granted unless the facts are truly undisputed. "Whether employees are within an exemption from the provisions of the [FLSA] is primarily a question of fact." *Brennan v. Southern Productions,*

*Inc.*, 513 F.2d 740, 744 (6th Cir. 1975).

While plaintiffs claim some undefined damages for time allegedly spent driving workers, including themselves, between farm fields during the course of their workdays, no evidence supports the claim that this time was unpaid. To the extent they seek summary judgment on this issue, their request must be denied.

As detailed throughout this memorandum, Plaintiffs have failed to establish that the Lee Defendants and Boykin/Rhodes are joint employers for purposes of the NCWHA. As such, any action or fact alleged by Plaintiffs regarding driving time attributed to Lee and Sons cannot be imputed to Boykin/Rhodes.

## B. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO ANY DRIVING CLAIM SHOULD BE DENIED AS TO THE BOYKIN/RHODES DEFENDANTS.

Plaintiffs contend that the Employer Defendants violated the NCWHA when they failed to pay the named Plaintiffs all of their wages when those wages were due because of Defendants' failure to pay the named Plaintiffs at the promised wage rate for time worked driving their co-workers between the labor camps and the fields, and to the grocery store and/or bank. In support of this assertion, Plaintiffs allege that Plaintiffs drove their co-workers to and from the fields, and that Plaintiff Lopez drove to the grocery store, or to the bank, and that they were not paid for this time. (DE 70, at 25-26) However, none of the evidence cited to by Plaintiffs establishes that Plaintiff Lopez or Plaintiff Flores drove workers who were working for the Boykin/Rhodes Defendants; he did not drive members of the Boykin/Rhodes crew. As such, because there is no evidence that Plaintiffs drove for Boykin/Rhodes, or drove members of the Boykin/Rhodes crew, Boykin/Rhodes cannot be held liable for any failure to compensate a driver. As such, Plaintiff's Motion should be denied.

**X. PLAINTIFFS ARE NOT ENTITLED TO PROSPECTIVE SUMMARY JUDGMENT ON DEFENDANTS' GOOD FAITH DEFENSE TO PLAINTIFFS' REIMBURSEMENT AND PIECE-RATE CLAIMS.**

As detailed in throughout this memorandum, Plaintiffs have failed to establish that the Lee Defendants and Boykin/Rhodes are joint employers for purposes of the FLSA or NCWHA. As such, any action or fact alleged by Plaintiffs relevant to a good faith defense and attributed to Lee and Sons cannot be imputed to Boykin/Rhodes.

Plaintiffs cannot establish that they are entitled to liquidated damages because Plaintiffs have failed to establish liability on the part of the Boykin/Rhodes Defendants. Boykin/Rhodes Defendants were not responsible for reimbursement of the named Plaintiffs for their inbound travel expenses, as the named Plaintiffs were part of the Lee crew, and not part of the Boykin/Rhodes crew, and thus the Boykin/Rhodes Defendants were not the named Plaintiffs' employer when they arrived in North Carolina in either 2020 or 2021. (DE 61 ¶¶ 75-78). Moreover, as established in Boykin/Rhodes' Motion for Summary Judgment and support memorandum of law (DE 59,60), the evidence shows that none of the Plaintiffs or Opt-Ins worked for Boykin/Rhodes during their first workweek, meaning that Boykin/Rhodes were not employers of Plaintiffs or Opt-in claimants at that time. (DE 61, ¶76, 78, 80-81). In fact, two of the Opt-ins never worked for Boykin/Rhodes at all. (DE 61, ¶81). Additionally, in their Interrogatory responses, all three Opt-ins specifically state that "**Lee & Sons** did not reimburse Opt-In Plaintiff in the first workweek for his travel expenses." (DE 61-1, Exhibits 10, 11, 12, Responses to Interrogatory No. 7.) (emphasis added.) There is no mention of Boykin/Rhodes failing to reimburse Opt-Ins for travel expenses. As such, because there can be no liability, and there can be no liquidated damages.

## XI. PLAINTIFFS ARE NOT ENTITLED TO PROSPECTIVE SUMMARY JUDGMENT ON DEFENDANTS' GOOD FAITH DEFENSE TO PLAINTIFFS' DRIVE TIME CLAIMS.

As detailed throughout this memorandum, Plaintiffs have failed to establish that the Lee Defendants and Boykin/Rhodes are joint employers for purposes of the NCWHA. As such, any action or fact alleged by Plaintiffs relevant to a good faith defense and attributed to Lee and Sons cannot be imputed to Boykin/Rhodes.

Plaintiffs cannot establish that Plaintiffs are entitled to liquidated damages because Plaintiffs have failed to establish liability on the part of the Boykin/Rhodes Defendants. None of the evidence cited to by Plaintiffs establishes that Plaintiff Lopez or Plaintiff Flores drove workers who were working for the Boykin / Rhodes Defendants; he did not drive members of the Boykin/Rhodes crew. Furthermore, the evidence indicates that at all times the Boykin/Rhodes Defendants properly paid the workers they assigned driving duties for their driving time. (Rhodes Dep. 52:21-53:5 (at DE 72-4, pp.53-54); Boykin Dep. 65:10-15 (at DE 72-3, p.66)). As such, because there can be no liability, and there can be no liquidated damages.

## XII. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR PIECE-RATE BREACH OF CONTRACT CLAIM.

As detailed throughout this memorandum, Plaintiff has failed to establish that the Lee Defendants and Boykin/Rhodes are joint employers for purposes of the NCWHA. As such, any action or fact alleged by Plaintiff relevant to a good faith defense and attributed to Lee and Sons cannot be imputed to Boykin/Rhodes.

Plaintiff cannot establish that Plaintiffs are entitled to liquidated damages because Plaintiffs have failed to establish liability on the part of the Boykin/Rhodes Defendants. None of the evidence cited to by Plaintiffs establishes that Plaintiff Lopez or Plaintiff Flores drove workers who were working for the Boykin/Rhodes Defendants; he did not drive members of

the Boykin/Rhodes crew. Furthermore, the evidence indicates that at all times the Boykin/Rhodes Defendants properly paid the workers they assigned driving duties for their driving time. (Rhodes Dep. 52:21-53:5 (at DE 72-4, pp. 53-54); Boykin Dep. 65:10-15 (at DE 72-3, p. 66)). As such, because there can be no liability, and there can be no liquidated damages.

### XIII.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR TRAVEL REIMBURSEMENT BREACH OF CONTRACT CLAIM.

As discussed above, Boykin/Rhodes Defendants were not responsible for reimbursement of the named Plaintiffs for their inbound travel expenses, as the named Plaintiffs were part of the Lee crew, and not part of the Boykin/Rhodes crew, and thus the Boykin/Rhodes Defendants were not the named Plaintiffs' employer when they arrived in North Carolina in either 2020 or 2021. (DE 61 ¶¶ 75-78). Moreover, as established in Boykin/Rhodes' Motion for Summary Judgment (DE 61), the evidence shows that none of the Plaintiffs or Opt-Ins worked for Boykin/Rhodes during their first workweek, meaning that Boykin/Rhodes were not employers of Plaintiffs or Opt-in claimants at that time. (DE 61, ¶76, 78, 80-81). In fact, two of the Opt-in claimants never worked for Boykin/Rhodes at all. (DE 61, ¶81). Accordingly, Plaintiff's Motion should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment as set forth herein.

Respectfully submitted, this, the 7th day of April, 2025.

CRANFILL SUMNER LLP

/s/ Elizabeth C. King
F. Marshall Wall
N. C. Bar No. 26804
MWall@cshlaw.com
Elizabeth C. King
N. C. Bar No. 30376
eking@cshlaw.com
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Fax: (919) 828-2277
*Attorneys for Defendants*

Kieran J. Shanahan
N. C. Bar No. 13329
SHANAHAN LAW GROUP, PLLC
128 E. Hargett Street, Suite 300
Raleigh, NC 27601
kieran@shanahanlawgroup.com
*Attorney for Boykin Farms, Inc. and Willie
C. Boykin, III*

Luther D. Starling, Jr.
N.C. Bar No. 17063
DAUGHTRY, WOODARD, LAWRENCE
& STARLING
405 East Market Street
Smithfield, NC 27577
lewstarling@dwlslaw.com
*Attorney for Defendants Rhodes Farming
LLC and Matthew Z. Rhodes*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-491-BO-RN

| | |
|---|---|
| CRISTOBAL LOPEZ LOPEZ and GILBERTO FLORES LOZANO, on behalf of themselves and all similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> BOYKIN FARMS, INC., RHODES FARMING, LLC, WILLIE C. BOYKIN, III, MATTHEW Z. RHODES, TONY D. LEE, d/b/a LEE AND SONS FARMS, TONY CAMERON LEE, d/b/a LEE AND SONS FARMS, and CLINT LEE, d/b/a LEE AND SONS FARMS, <br><br> Defendants. <br> _____ | **CERTIFICATE OF SERVICE** |

The undersigned hereby certifies that on April 7th, 2025, the foregoing *Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment* was electronically filed with the Clerk of the United States District Court for the Eastern District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of same to all counsel of record as follows:

Clermont F. Ripley
clermont@ncjustice.org
Carol L. Brooke
carol@ncjustice.org
Jonathan Wall
jwall@greensborolaw.com
*Attorneys for Plaintiffs*

35

CRANFILL SUMNER LLP

/s/ Elizabeth C. King
F. Marshall Wall
N. C. Bar No. 26804
MWall@cshlaw.com
Elizabeth C. King
N. C. Bar No. 30376
eking@cshlaw.com
Post Office Box 27808
Raleigh, NC 27611-7808
Telephone: (919) 828-5100
Fax: (919) 828-2277
*Attorneys for Defendants*