IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL CASE NO: 5:22-cv-491-BO-RN

| | | |
|---|---|---|
| CRISTOBAL LOPEZ LOPEZ and GILBERTO FLORES LOZANO, *on behalf of themselves and all other similarly situated persons*<br><br>Plaintiffs<br><br>v.<br><br>BOYKIN FARMS, INC., RHODES FARMING, LLC, WILLIE C. BOYKIN, III, MATTHEW Z. RHODES, TONY D. LEE, d/b/a LEE AND SONS FARMS, TONY CAMERON LEE, d/b/a LEE AND SONS FARMS, and CLINT LEE, d/b/a LEE AND SONS FARMS,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS BOYKIN FARMS, INC., WILLIE C. BOYKIN, III, MATTHEW Z. RHODES, AND RHODES FARMING, LLC'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DECERTIFY CONDITIONALLY-CERTIFIED FLSA COLLECTIVE** |

## INTRODUCTION

Plaintiffs Cristobal Lopez Lopez and Gilberto Flores Lozano submit this Brief in Opposition to Boykin Farms, Inc./Rhodes Farming LLC's Motion for Summary Judgment and Motion to Decertify Conditionally Certified FLSA Collective Action, DE 59, pursuant to LR 7.1(f), 7.2, and 56.1. In the Boykin/Rhodes Defendants' 31-page brief, DE 60, they do not assert that they did not engage in labor law violations alleged in the Complaint that require them to (1) keep accurate records of all hours worked, (2) properly reimburse migrant workers for in-bound travel, or (3) pay at least the Adverse Effect Wage Rate (AEWR). Instead, the Boykin/Rhodes Defendants ask this Court to give them a pass for their violations because, they assert, they were not "joint employers" of the Plaintiffs. Defendants fail to explain, however, why their own certifications on each year's H-2A Applications as "Joint Employers" of all the workers – including Plaintiffs – does not, at a minimum, create at least a question of fact as to whether or

1

not Defendants were joint employers of Plaintiffs and the other migrant workers. In essence, Defendants ask this Court to disregard their own statements made under penalty of perjury and conclusively find the opposite. As might be expected, the case law involving such certifications does not support Defendants' position and, in fact, calls for the opposite result. As explained below, not only have courts in similar circumstances refused to ignore the employers' own certification as to joint employment but have instead found such certifications establish a joint employment relationship. As a consequence, the Court should deny the Boykin/ Rhodes Defendants' Motion for Summary Judgment and to Decertify.

## STATEMENT OF FACTS

In 2019, 2020, and 2021, Boykin Farms, Inc. ("Boykin Farms"), Rhodes Farming, LLC ("Rhodes Farming"), and Lee and Sons Farms applied as joint employers for H-2A workers by submitting clearance orders, also known as job orders (Form ETA-790/790A), to the U.S Department of Labor for certification. Plaintiffs' Statement of Material Undisputed Facts in Support of Motion for Partial Summary Judgment ("Pls' SMF"), DE 71, ¶¶10-12, 15. In 2022, Boykin Farms and Rhodes Farming again applied for H-2A workers as joint employers, and Lee and Sons Farms applied separately.[2]  Pls' SMF ¶11. The farms applied together as joint employers for H- 2A workers so that they could share workers across the three farms, which they did. *Id.* ¶18. Boykin Farms and Rhodes Farming shared a single crew of workers each season, who were housed together, worked together, and supervised together. *Id.* ¶¶58-59, 111. Boykin and Rhodes shared payroll responsibilities – alternating week by week which farm would pay all the workers – and decided together where the workers were to perform work each day. *Id.* ¶¶60-61. They farmed their crops together and split the payments. *Id*. ¶60.

By regulation, the H-2A clearance orders must contain all material terms and conditions

of employment. Pls' SMF ¶3. Each clearance order required employers to keep accurate records of their employees' earnings, provide pay statements that include the hours worked, pay at least the Adverse Effect Wage Rate (AEWR), and provide a copy of the work contract or clearance order to each H-2A worker. *Id*. ¶4-6, 8, 26(b), (d), (f). Each clearance order also included a promise to reimburse employees' transportation and subsistence expenses in accordance with 20 C.F.R. § 655.122(h), with inbound transportation reimbursed at the end of the first workweek. *Id*. ¶27(c).

Plaintiffs Cristobal Lopez Lopez ("Lopez Lopez"), Gilberto Flores Lozano ("Flores Lozano"), and their co-workers traveled to North Carolina from Mexico to work for Defendants as agricultural workers through the H-2A program. Pls' SMF ¶¶13-14, 16-17 29-30. Lopez Lopez and Flores Lozano were placed on the Lee and Sons crew pursuant to two different clearance orders: one from April 25 to November 2020 ("April 2020 Contract"), DE 53-1, and one from April 26 to November 27, 2021 ("April 2021 Contract"), DE 53-2. Pls' SMF ¶¶13-14, 6-17, 31. In order to come to North Carolina and work for Defendants, the named Plaintiffs and their coworkers incurred travel expenses from their homes to the Consulate in Monterey, Mexico; lodging near the Consulate while they waited for their appointments; a $190 visa fee; a $6 border crossing fee; the cost of bus transportation from Monterey to North Carolina; and their meals throughout this journey. *Id.* ¶71. Defendants knew that they were obligated to reimburse their H-2A employees for these expenses in their first workweek. *Id.* ¶¶72-74. Defendants admit, however, that they did not fully reimburse the named Plaintiffs, opt-in Plaintiffs, or the members of the NCWHA Reimbursement Subclass for inbound transportation at the end of the first workweek. *Id*. ¶¶77-78.  Because these workers were paid on an hourly basis at the AEWR rate during their first workweek, Defendants' failure to reimburse them fully during that workweek

3

meant they did not earn the AEWR because of that de facto deduction from their wages. That same deduction was enough to lower those workers' wages for that first workweek below the minimum wage.

H-2A employers, like the Defendants, are required to pay their H-2A employees at least the AEWR – a rate set each year by regulation-- for all of their hours worked in any workweek, even when the H-2A employees perform piece-rate work. Pls' SMF ¶¶5-6. H-2A employers are required to track all actual hours worked and piece-rate compensation earned in order to ensure that the employees earn at least the AEWR. If the piece-rate compensation is less than the workers would be paid under the AEWR, the employers must provide additional pay to bring their employees up to the AEWR. *Id.* ¶6, 26(b)-(d), 113. With certain crops, including cucumbers and sweet potatoes, Defendants at times paid Plaintiffs and their co-workers on a piece-rate basis. *Id.* ¶106. Defendants failed to maintain records of hours worked, however, and did not ensure that their employees earned at least the AEWR. *Id.* ¶¶107, 109, 111, 113. For multiple weeks, many of the workers being paid on a piece-rate basis did not earn at the AEWR level, and thus were underpaid. *Id.* ¶¶125-127.

In addition to working in the fields, Lopez Lopez performed work driving his co-workers to the bank and grocery store. Pls' SMF ¶128. Both named Plaintiffs drove their co-workers from the labor camps to the fields and from the fields to the labor camps. Pls' SMF ¶ 135. Defendants did not track this time, and did not pay them for this time. *Id.* ¶¶130-132, 136-37. During some weeks in which he performed this driving work, Lopez Lopez worked more than 40 hours, *id.* ¶135, but Defendants did not pay him overtime for those hours. *Id.* ¶¶ 134-8.

**ARGUMENT**

When a party moves for summary judgment, they must carry "the initial burden of showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Estate of Kimmel ex rel. Kimmell v. Seven Up Bottling Co.,* 993 F.2d 410, 412 (4th Cir. 1993)*.* "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (*internal quotation and citations omitted*). "Once the moving party has met its burden, the non-moving party must then set forth specific facts showing that there is a genuine issue for trial." *Nguyen v. Austin Quality Foods, Inc.*, 974 F. Supp. 2d 879, 882 (E.D.N.C. 2013) (*internal quotations and citations omitted*). "In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the party opposing the motion, granting that party the benefit of all reasonable inferences." *Id.*

As Plaintiffs set forth below, the evidence demonstrates that there are multiple areas of disputed material facts. Defendants Boykin Farms, Willie C. Boykin, III, Matthew Z. Rhodes, and Rhodes Farming, LLC (collectively, "Defendants") have failed to carry their burden, as required by Rule 56(a), and therefore their motion for summary judgment should be denied. Where the facts are undisputed, Defendants cannot prevail as a matter of law on their legal arguments.

**I.    Boykin and Rhodes were employers of the Plaintiffs and the putative members of the NCWHA class.**

As Plaintiffs explained in their Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment ("Pls' MSJ"), the joint employer factors set forth in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017) show that Boykin, Rhodes, and Lee and Sons

were joint employers of the H-2A workers. DE 70, pp. 13-16[1]. Defendants jointly applied to the federal government for permission to hire Plaintiffs, Opt-In Plaintiffs, and the putative members of the NCWHA class. Pls' SMF, ¶¶11-12, 15. In those applications, they set the wage rate, listed the housing where employees would live, set out policies related to the work and housing, and specified that the workers would perform work at all three farms. *Id.*, ¶¶26-27. Willie Boykin signed the application on behalf of all of the farms. *Id.*, ¶¶12, 15.

The named Plaintiffs were granted visas to work for Boykin Farms. DE 53-7, 53-8. Their passports had stickers listing Matthew Rhodes as a contact person. Cameron Lee Dep. Exhibit 3, DE 72-2, pp. 246-47. They were primarily assigned to work at Lee and Sons, but at times they were paid by Rhodes Farming and worked in Boykin/Rhodes fields. Pls' SMF, ¶31; Rhodes Transaction List by Vendor, DE 71-26, pp. 2, 8 (listing payments by Rhodes Farming to Plaintiff Lopez Lopez), 3, 8 (listing payments by Rhodes Farming to Plaintiff Flores Lozano). At times they were paid by Lee and Sons and worked in Lee and Sons fields. Lee Expenses by Vendor Detail, DE 71-25, pp. 9-10 (listing payments by Lee and Sons to Plaintiff Lopez Lopez), 15 (listing payments by Lee and Sons to Plaintiff Flores Lozano); Pls' SMF, ¶31.

Boykin and Rhodes were individual employers of all of the putative class members. In *Ruiz v. Fernandez,* the Eastern District of Washington determined that Western Range, which was not a farm, was a joint employer of the H-2A workers that it provided to farms when it listed itself as a joint employer on the H-2A application. 949 F. Supp. 2d 1055, 1066 (E.D. Wash. 2013), *order clarified,* No. CV-11-3088-RMP, 2013 WL 12167930 (E.D. Wash. June 24, 2013). The Court stated:

> Western Range's assertion that it does not "hire" the H–2A workers carries little weight, given that Western Range holds itself out as the Plaintiffs' employer to the

---

[1] Page number references to documents other than depositions refer to the ECF pages numbers.

Department of Homeland Security when applying for the H–A visas. The H–A workers' employment with Western Range's member ranches would not be legally possible were it not for Western Range's involvement in the process of initiating the employment process. In addition, Western Range sets all key terms of the Plaintiffs' employment through the Pre–Employment Notice that workers are required to sign before being transported to the member ranch in the United States.

*Id.* at 1067.

The Court specifically found that it was immaterial that the Western Range didn't supervise the employees' daily activities; their control over the terms and conditions of the work performed at the member ranches, coupled with the Pre-Employment agreement that specified those conditions, was sufficient to impose liability. *Id.* at 1068. The Court considered both Western Range's listed status as a joint employer on the H-2A application as well as the H-2A assurances it provided and requirements of the H-2A program, in finding Western Range was an employer under the FLSA and state wage and hour law. *Id.* at 1071.

Here Defendants hired the workers using a common recruiting organization, Del-Al Associates, and going through the H-2A application process together in order to hire all of them. Pls' SMF, ¶¶10-15, 19. On the H-2A application, Boykin and Rhodes set the rate and method of payment for all of the work performed by all of the workers. *Id.,* ¶26(d). Boykin and Rhodes maintained employment records for all workers who performed work on their farms, supervised their work, and controlled the schedules and conditions of employment for those workers during those times. Pls' SMF, ¶¶60-62, 66, 67, 112. All the H-2A workers received a copy of the contract listing the required terms and conditions of employment and listing Boykin/Rhodes as a joint employer. Pls' SMF ¶¶ 8-10, 12, 15, 26-27; Defs' SMF ¶74. The fact that Boykin/Rhodes signed the H-2A applications as a joint employer over all the workers, set out assurances as to their compliance with the requirements related to the terms and conditions of employment of all

the workers, and provided the workers with a copy of that agreement is sufficient to hold them responsible as employers of all the workers under the FLSA and NCWHA.

Even if the Court should find that the Plaintiffs and Opt-In Plaintiffs were only employed by Boykin/Rhodes during the weeks when they performed work in Boykin/Rhodes fields, there are disputed issues of material fact as to whether they were underpaid by Boykin/Rhodes during those weeks. Without moving to exclude Plaintiffs' expert report, Defendants argue that underpayments documented by Plaintiffs' expert witness were flawed because they disagree with his methodology. *See* Defendants Boykin Farms, Inc., Willie C. Boykin, III, Matthew Z. Rhodes, and Rhodes Farming, LLC's Memorandum of Law in Support of Motion for Summary Judgment and Motion to Decertify Conditionally-Certified FLSA Collective ("Defs' MSJ"), DE 60, p. 15, fn 5. That the expert used "assumptions about hours worked, not evidence," *id.*, is precisely because Defendants did not maintain records of hours worked when paying by the piece, as they were required to do by the H-2A regulations, the FLSA, and the NCWHA. Pls' SMF ¶¶ 26 b. and c., 107, 109-114, 118-120. While "a court may refuse to allow an expert to testify if his factual assumptions are not supported by the evidence," *Hall v. Norton*, 166 F.3d 1209 (4th Cir. 1209 (Table), in this case Plaintiffs' expert's assumptions of hours worked is based on testimony of both Plaintiffs and Defendants. Pls' SMF ¶122-24; Expert Report, DE 71-27, pp. 5-6 (expert relied on testimony of Defendants that the workers generally started and stopped at the same time), 7-8 (expert used the hours of the persons who worked as dumpers and were paid by the hour to estimate the hours worked by the piecerate workers whose hours were not recorded). Their disagreement with the expert's calculations is a disputed issue of material fact, and summary judgment cannot be awarded in their favor on the underpayment issue.

Drawing all inferences from these undisputed material facts in favor of the Plaintiffs, the Court should find that Boykin and Rhodes were employers of the Plaintiffs and Opt-In Plaintiffs pursuant to the FLSA and were employers of the Plaintiffs and the putative members of the NCWHA Class pursuant to the NCWHA during all times they were employed pursuant to the joint H-2A contract, and deny Defendants' Motion for Summary Judgment. Alternatively, if the Court were to find that Plaintiffs, Opt-In Plaintiffs, and putative members of the NCWHA Class were only employed by Boykin/ Rhodes during the weeks they actually performed work at Boykin/Rhodes farms, then the issue of whether there were FLSA or NCWHA violations during those weeks should be resolved at trial, as issues of fact remain.

## II. Boykin and Rhodes had an enforceable contract with each H-2A worker employed pursuant to those contracts.

Astonishingly, although Boykin and Rhodes entered into a contract with Plaintiffs and the other H-2A orders, they argue that they are not responsible for breaches of that contract. *See* Defs' MSJ, pp. 18-19. Willie Boykin signed those contracts under penalty of perjury. April 2020 Contract, April 2021 Contract. The contracts made specific offers to the Plaintiffs and members of the putative classes for the wages they would be paid, dates of employment, work schedule, type of work, and housing provided. Pls' SMF, ¶¶26-27. Defendants do not argue that there was no contract – they cannot, since the H-2A regulations unmistakably say that the "H-2A forms," as Defendants term them, create a contract between the parties. 20 C.F.R. § 655.122(q); *see also,* Pls' MSJ, p. 28.

*Martinez-Bautista v. D & S Produce,* 447 F. Supp. 2d 954 (E.D. Ark. 2006), is instructive. There, two agricultural operations submitted a joint H-2A application, with each employer utilizing about half of the workers. Despite arguments similar to those made by Defendants here, the court found both to be employers "with respect to the H-2A application,

2002 Clearance Order, and the resulting work contract." *Id*. at 962. The court places great weight on the employer certifications contained in the Clearance Orders. *Id*. at 960-61.

"To be an 'employer' of H-2A workers pursuant to the H-2A contract, [the grower] need only have the ability to 'hire, pay, fire, supervise or otherwise control the work of any such employee.'" *Perez-Benites v. Candy Brand, LLC*, No. 1:07-CV-1048, 2011 WL 1978414, at *8 (W.D. Ark. May 20, 2011). Boykin and Rhodes hired the H-2A workers. They set the wage rate. They paid them. They supervised them. They were employers of all the H-2A workers under the contract. Whatever the agreements may have been between the three farming operations, the Clearance Orders and contracts make no such distinctions.

Boykin and Rhodes have admitted to breaches of the H-2A contract: they did not fully reimburse in the first workweek, and they did not track hours worked when paying by the piece. Boykin Farms, Inc.'s Responses to Plaintiffs' First Requests for Admission, DE 72-8, No. 2 ("Boykin Farms did not reimburse some H-2A workers on or before the first pay date after those workers' arrival in North Carolina for those full costs in 2020") and No. 3 (same admission for 2021),; Rhodes Farming, LLC's Responses to Plaintiffs' First Requests for Admission , DE 71-8, Nos 2 and 3; *see also* SMF ¶77-78. They should be held liable for these violations. It is of no consequence that the named Plaintiffs did not work in Boykin or Rhodes fields in the first workweek. None of the three farms who were parties to the contract reimbursed them or the putative members of the NCWHA Class. Pls' SMF, ¶¶77-78. It is nonsensical to argue that only Lee and Sons is liable for a breach of contract claim where Boykin and Rhodes are parties to it and obligors on it. The contract could have, but does not, specify that each farm is only responsible for proper payment of its own crew.

10

Following Defendants' argument to its logical conclusion, if the Boykin/Rhodes workers were sent to Lee and Sons for work and then Lee and Sons failed to pay them for that work, those workers would only have a claim for breach against Lee and Sons.   This might work if the workers had two separate contracts, one with Boykin/Rhodes and one with Lee, but they did not. There is only one contract, and Boykin and Rhodes are obligors to all the workers under it.

The named Plaintiffs performed work for both Lee and Sons and Boykin/Rhodes pursuant to the April 2020 and April 2021 Contracts. Their hours were not recorded while they did piece-rate work at either farm, Pls' SMF, ¶¶111, 118-19, resulting in payment of less than the required AEWR wage rate for work performed at both locations. Pls' SMF, ¶125. Defendants all promised in the contract that they would properly track and pay for all hours worked at the AEWR wage rate. Pls' SMF, ¶¶26(b)-(d).

The named Plaintiffs also were not properly reimbursed in the first week of work. Pls' SMF, ¶¶77, 81-86, 88-93. While it is true that they were working for Lee and Sons during their first workweeks in each year, by entering into a contract with those workers, Boykin/Rhodes assumed responsibility for the violations of that contract. There was nothing in the contract to indicate that certain farms were only responsible for some of the promises made.

### III.    A three year statute of limitations is appropriate for Plaintiffs' FLSA claims.

Though Defendants argue that Plaintiffs are only entitled to a two year statute of limitations, Defs' MSJ, pp. 19-21, they fail to put forth undisputed facts that Boykin/Rhodes did not act willfully when they and Lee and Sons failed to reimburse their employees for travel-related expenses in the first workweek, despite their admission that they knew they were legally obligated to do so. Pls' SMF, ¶¶74-75, 79-80 (Del-Al provided Defendants with forms showing

the amount of the reimbursements owed). As such, they are not entitled to summary judgment on this issue.

Defendants base their argument on three mistaken premises. First, they argue that they are not liable for the named Plaintiffs' FLSA damages because they worked for Lee and Sons. Second, they say any violations by Lee and Sons are not attributable to Boykin/Rhodes. And third, they say that to the extent Lee and Sons engaged in violations, they were mistakes and not intentional violations. Defs' MSJ, fn 6.

The named Plaintiffs and Opt-In Plaintiffs performed work for both Boykin/Rhodes and Lee and Sons. As discussed in Section I above, Boykin/Rhodes were both joint employers and individual employers of these workers. Therefore, they are liable for any FLSA violations suffered by the named Plaintiffs and opt-ins, even if one or more of those persons only performed work at Lee and Sons Farms.

A three-year statute of limitations applies for willful violations of the FLSA. 29 U.S.C. § 255(a). Defendants cannot show that the undisputed facts support an argument that Lee and Sons simply made a mistake when they failed to reimburse in the first workweek. All of the Defendants were provided with a form for each H-2A worker that stated how much that worker was to be reimbursed in the first workweek. Pls' SMF, ¶¶79-80, 87. All testified that they knew of the requirement. Pls' SMF, ¶¶72-75. And Lee and Sons testified to the deliberate nature of the reimbursement violations. *Id.*, ¶¶72-73. "In general, issues of fact bearing on the application of a statute of limitations are submitted, as are other issues of fact, for determination by the jury." *Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 162 (4th Cir. 1992) (error for court to refuse to allow willfulness to be determined by jury in Equal Pay Act case).

Defendants' conclusory statement that Lee and Sons did not intentionally violate the FLSA cannot entitle them to summary judgment; even more so when the undisputed facts with respect to Plaintiffs' reimbursement claim demonstrate that Lee and Sons was aware of their legal obligation and chose not to comply.

**IV.     There are material facts in dispute regarding meal plans, and Boykin/Rhodes is responsible for any Lee and Sons violations regarding meals.**

The Boykin/Rhodes Defendants do not have knowledge regarding whether their workers could or could not access the kitchens at their labor camp, or whether they were required to purchase meals. Joyce Boykin testified for Boykin Farms that "Sergio's [Boykin/Rhodes supervisor] wife cooks the food for them, takes them to the field. But I don't have anything to do with the food. We don't." Boykin Dep., DE 72-3, 67:14-18; *see also* Rhodes Dep., DE 72-4, 44:2-24 (doesn't know anything about the meals arrangement, but saw Sergio's wife bringing cooked food to the field), 45:12-46:11 (understood Sergio's wife brought drinks to the field and provided dinners to the workers), 103:5-11 (doesn't know whether Sergio's wife cooked the food at the labor camp). There are still facts in dispute as to whether the Boykin/Rhodes crew had access to the labor camp kitchen to cook their own meals, or whether they were required to purchase meals, so summary judgment is not appropriate on this claim.

As they do with several of Plaintiffs' other claims, the Boykin/Rhodes Defendants also attempt to evade responsibility by disavowing their relationship with the H-2A workers who primarily worked at Lee and Sons. Defs' MSJ, pp. 21-22. Should the Court find that summary judgment is not appropriate regarding the Lee and Sons Defendants' liability with respect to meal plans, as Plaintiffs argue in their Brief in Opposition to Lee Defendants' Motion for Partial Summary Judgment (filed contemporaneously with this brief), then it is similarly not appropriate with respect to the Boykin and Rhodes Defendants. That is because, as argued in Section I above,

13

Boykin/Rhodes were joint employers of all of the H-2A workers and were also jointly responsible for the breach of the contractual promise to provide kitchen access and not to deduct for meals. SMF ¶27(a) and (b).

**V.     The collective action should not be decertified.**

Defendants' request that the FLSA collective actions be decertified should be denied. In order for employees to proceed using the FLSA's statutory collective action mechanism, the only requirements are that they be "similarly situated" and that they file written consent with the court to become a party plaintiff. 29 U.S.C. § 216(b). The Fourth Circuit has not established a test for what satisfies the similarly situated requirements, but courts in this district interpret it as "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *Mondragon v. Scott Farms, Inc.,* 329 F.R.D. 533, 543 (E.D.N.C. 2019). This Court already went through the first "notice" step of the FLSA collective action certification process and concluded that "the named plaintiffs and putative members of the collective action are similarly situated." Order for Conditional Certification ("Cond. Cert. Order") DE 32, p. 4.

The second step of the process occurs when the defendant files a motion for decertification. This step usually occurs "after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Hipp v. Liberty Nat'l Life Ins. Co.*, 225 F.3d 1208, 1218 (11th Cir. 2001) *quoting Mooney v. Aramco Servs. Co.*, 54 F. 3d 1207, 1213-14 (5th Cir. 1995) (internal footnote omitted). When a defendant asks for decertification of a collective action, "it requires the court to engage in a fact-intensive inquiry to determine whether the putative class is similarly situated and whether certification is

14

appropriate." *Pontones v. San Jose Restaurant Inc.*, No. 5:18-cv-219-D, 2020 WL 643895 *13 (E.D.N.C. Nov. 2, 2020).

The Fourth Circuit has also not had occasion to specify what the appropriate legal standard is for a motion to decertify a FLSA collective action, nor do Defendants discuss what the appropriate standard is in their motion. In *Campbell v. City of Los Angeles*, the Ninth Circuit Court of Appeals addressed this and concluded that "the summary judgment standard is the appropriate one." 903 F.3d 1090, 1117 (9th Cir. 2018). The *Campbell* court rejected the reasoning of the Third Circuit in *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012), which held that preponderance of the evidence should apply:

> However, at least as applied to the present context, where the decertification question and the merits overlap, Zavala is unpersuasive…Accordingly, to the extent decertification and summary judgment on the merits present the same question, it should be the ordinary summary judgment standard, rather than a preponderance-of-the-evidence standard, that applies.

*Campbell*, 903 F.3d 1119. Here, at the stage where this Court is considering cross motions for summary judgment, and Defendants' decertification arguments all have to do with the merits of Plaintiffs' and Opt-In Plaintiffs' FLSA claims, this Court should apply the summary judgment standard.

### A.    Defendants jointly employed the Plaintiffs and Opt-Ins

Defendants' first argument is that they were not the employer or joint employer of Plaintiffs and Opt-In Plaintiffs during their first workweek and therefore the Reimbursement collective should be decertified as to Boykin/Rhodes. Defs' MSJ, pp. 23-24. However, Plaintiffs have argued that Defendants Boykin and Rhodes were a joint employer of the named Plaintiffs and Opt-In Plaintiffs, along with Lee and Sons. *See* Section I. *supra*; *see also* Pls' MSJ, pp. 14-18. Plaintiffs allege that all three farms were joint employers throughout their employment as H-

2A workers in North Carolina, not just for specific workweeks, by virtue of the relationship between the three farms. In evaluating the existence of joint employment, the relevant relationship to focus on is the relationship *between the various putative employers*, as opposed to the relationship between the employers and the Plaintiffs. *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 142 (4th Cir. 2017)*; see also Schultz v. Capital Intern. Sec. Inc.,* 466 F.3d 298, 305 (4th. Cir. 2006) ("The district court therefore erred by weighing the degree of control exercised by [one putative joint employer] against that exercised by [the other]. The court should have instead weighed the [plaintiffs'] control against the total control exercised by [both joint employers]."). If this Court finds that Boykin and Rhodes were joint employers with Lee and Sons as a matter of law, then it should not decertify the Reimbursement Collective or the Underpayment Collective as to Boykin and Rhodes because they are jointly liable. Additionally, if this Court finds that there are disputed issues of fact relevant to the joint employment determination, decertification is inappropriate. In *Pontones*, the Defendant moved for decertification of a collective action and the court denied it because "genuine issues of material fact exist concerning joint employment," and the court could not "resolve the collective action analysis and Rule 23 analysis until that dispute [was] resolved." 2020 WL 6438395, at *13.

Defendants also claim that decertification is warranted because whether Boykin and Rhodes were the joint employer of Plaintiffs and Opt-in Plaintiffs is an individualized defense. Id., pp. 25-27. However, because joint employment focuses on the relationship between the purported employers and not the relationship with the employees, this is not an individualized defense and does not support decertification. To the contrary, resolution of this question will resolve the question of liability for the FLSA violations experienced by Plaintiffs and Opt-In Plaintiffs' FLSA together, which is precisely the point of a collective action.

16

**B.     There are no material differences in the Opt-Ins' factual and employment settings which preclude collective resolution of their claims.**

Defendants argue that decertification is appropriate because of disparate factual and employment settings experienced by Plaintiffs and Opt-In Plaintiffs. Defs' MSJ, pp. 24-25. "Essentially, collective action members are similarly situated when there are issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without facts unique or particularized as to each class member." *PowerComm Const.,* 309 F.R.D. at 368, *citing LeFleur v. Dollar Tree Stores, Inc.,* 30 F.Supp.3d 463, 468 (E.D.Va.2014) (cleaned up). When considering whether disparate factual and employment settings of the individual plaintiffs warrant decertification, the "analysis involves an assessment of whether Plaintiffs have provided evidence of a company-wide policy which may violate the FLSA, as well as an assessment of Plaintiffs' job duties, geographic location, supervision, and salary." *Sellers v. Keller Unlimited LLC*, 386 F. Supp. 3d 631, 633–34 (D.S.C. 2019).

Plaintiffs have presented evidence of a common policy with respect to not reimbursing them on time for inbound H-2A expenses, Pls' MSJ, pp. 16-18 and a common policy of not tracking their hours worked in order to ensure they were paid the required minimum wage when doing piece rate work. *Id*., p. 22.  In addition, the Plaintiffs and Opt-in Plaintiffs all worked as temporary agricultural workers through the H-2A program, so there is no difference with respect to workplace policies or the wage rate.

Defendants' primary argument seems to be that the named Plaintiffs and Opt-In Plaintiffs did not work for Boykin and Rhodes at the same time, and that two of them (Jorge Alberto Rebolloza Garcia and Juan Antonio Torres Rebolloza) did not work for Boykin and Rhodes at all, Defs' MSJ, pp. 9-10, but the evidence actually shows that all of them performed work for

17

Boykin and Rhodes during the same weeks in late August early September of 2020 and 2021. *See* Plaintiffs' response to Defs' SMF, ¶¶76, 78, 80, 81. This work was during the early sweet potato harvest. *See* Rhodes Dep. 92:9-15. Therefore, they were similarly situated and decertification is not appropriate.

Defendants' next argument is that individualized evidence will be needed to prove they all suffered minimum wage violations. Defs' MSJ, p. 27. For weeks where Defendants paid the H-2A workers for hourly work only, proof is not difficult. Plaintiffs have already calculated the minimum wage damages resulting from failure to timely reimburse them. Pls' MSJ, pp.16-18. Plaintiffs acknowledge that for the weeks in which Defendants compensated the H-2A workers only by the piece or by a combination of hourly and piece rate pay, proving the damages is difficult precisely because of Defendants' failure to keep accurate records in violations the FLSA. 29 U.S.C.A. § 211(c). However, where, as here, the employer's records are "inadequate," the Plaintiffs should be allowed to provide an "approximation of expense" and their hours worked "that would lead to a reasonable inference they were undercompensated for labor." *Lofton v. EYM Pizza of Illinois, LLC,* 725 F.Supp.3d 857 (N.D.Ill., 2024) (holding that plaintiffs' failure to provide specific evidence of underpayment did not amount to failure to satisfy their burden of proof at summary judgment stage of FLSA collective action); *see also Anderson v. Mt. Clemons Pottery Co*., 328 U.S. 689 (1946).

Defendants' remaining argument is that there will be differences in the damages for each Opt-In, but this does not warrant decertification either. "While actual hours worked and wages due may vary within the collective, districts courts in the Fourth Circuit have clarified that differences as to time actually worked, wages actually due and hours involved do not preclude a finding of a similarly situated class." *LaFleur v. Dollar Tree Stores, Inc*., 30 F. Supp. 3d 463,

18

470 (E.D. Va. 2014), *quoting Romero v. Mountaire Farms, Inc.*, 796 F. Supp.2d 700, 705 (E.D.N.C. 2011) (cleaned up).

      **C.**      **The small number of opt-ins does not support decertification.**

      Defendants' argument that the collective should be decertified because there are only three Opt-In Plaintiffs, Defs' MSJ, p.28, has no legal support. To the contrary, the small number of opt-ins supports allowing them to move forward as a collective. One of the factors courts consider when deciding whether to decertify after discovery is "fairness and procedural considerations." *PowerComm Const.*, 309 F.R.D. at 368.

      In cases where courts have decertified FLSA collectives, it is often due to concerns about the procedural difficulty of adjudicating several mini-trials because of the number of opt-ins. *See, e.g., Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) (affirming decertification of a nationwide FLSA collective of 2,341 individuals because it would be too difficult to determine individual damages for that many people). On the contrary, in *Butler v. DirectSAT USA, LLC*, where there were only 26 opt-ins, the court was unconcerned by problems of proof for individual damages because "it is possible to go through each Plaintiffs' damages individually if need be." 47 F. Supp.3d 300, 313 (D.Md. 2014). With only three opt-ins with damages within the statute of limitations, it is certainly possible to go through each opt-in Plaintiffs' damages individually in this case.

      With respect to fairness, it is relevant to consider "the primary objectives of a collective action under § 216(b), namely '(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity.'" *PowerComm Const.*, 309 F.R.D. at 369, *quoting Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D.Pa. 2000). Here, the

FLSA damages are minimal, see Pls' MSJ, pp. 17-18. Additionally, the Opt-Ins are migrant farmworkers from Mexico with limited knowledge of and access to the U.S. judicial system. Complaint, ¶112; Plaintiff Cristobal Lopez Lopez's Declaration Under Penalty of Perjury, DE 26-1, ¶23; Plaintiff Gilberto Flores Lozano's Declaration Under Penalty of Perjury, DE 26-2, ¶23. It would be unfair to require them to file new individual actions when their claims can be easily adjudicated alongside those of the named Plaintiffs.

## CONCLUSION

As outlined above, there are multiple issues of disputed fact that necessitate the denial of the Defendants' Motion. When the facts as outlined here are taken in the light most favorable to the Plaintiffs, Plaintiffs should prevail as a matter of law. Plaintiffs respectfully request the Court deny the Boykin and Rhodes Defendants' Motion for Summary Judgment.


Respectfully submitted, this, the 7th day of April, 2025.


NORTH CAROLINA JUSTICE CENTER
P.O. Box 28068
Raleigh, NC 27611
(919)856-2144

BY:   /s/ Clermont F. Ripley
      Clermont F. Ripley
      N.C. State Bar # 36761
      Email: clermont@ncjustice.org
      Carol L. Brooke
      NC State Bar #29126
      Email: carol@ncjustice.org


HIGGINS BENJAMIN, PLLC
301 N. Elm St., Suite 800
Greensboro, NC  27401

20

(336) 273-1600

BY: /s/ *Jonathan Wall*
Jonathan Wall
N.C. State Bar No. 22839
Email: jwall@greensborolaw.com

*Co-counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has this date served the original of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing electronically to counsel for Defendants by email to the following e-mail addresses:

Elizabeth King, eking@cshlaw.com
Marshall Wall, mwall@cshlaw.com
Kieran Shanhan, kieran@shanahanlawgroup.com
Luther D. Starling, Jr., lewstarling@dwlslaw.com

This, the 7th day of April, 2025.

/s/ *Clermont F. Ripley*
Attorney for Plaintiffs

22