IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL CASE NO: 5:22-cv-491-BO-RN

| | |
|---|---|
| CRISTOBAL LOPEZ LOPEZ and GILBERTO FLORES LOZANO, *on behalf of themselves and all other similarly situated persons*<br><br>Plaintiffs<br><br>v.<br><br>BOYKIN FARMS, INC., RHODES FARMING, LLC, WILLIE C. BOYKIN, III, MATTHEW Z. RHODES, TONY D. LEE, d/b/a LEE AND SONS FARMS, TONY CAMERON LEE, d/b/a LEE AND SONS FARMS, and CLINT LEE, d/b/a LEE AND SONS FARMS,<br><br>Defendants. | **PLAINTIFFS' BRIEF IN OPPOSITION TO LEE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiffs Cristobal Lopez Lopez and Gilberto Flores Lozano submit this Brief in Opposition to Lee Defendants' Motion for Partial Summary Judgment, DE 62, pursuant to LR 7.1(f), 7.2, and 56.1. Defendants Tony D. Lee, Tony Cameron Lee, and Clint Lee, collectively doing business as Lee and Sons Farms ("Defendants" or "Lee Defendants") argue that they are entitled to summary judgment on many of Plaintiffs' claims because their claims are allegedly untimely, the Lee Defendants did not directly charge Plaintiffs or their co-workers for meals, because Plaintiffs are allegedly not entitled to payment for driving time, and because Clint Lee asserts he was not an employer under the Fair Labor Standards Act ("FLSA") or the NC Wage and Hour Act ("NCWHA").

Defendants' motion for summary judgment must fail. Because the Lee Defendants acted willfully when they violated the FLSA, Plaintiffs are entitled to a three-year statute of

1

limitations. Their claims are timely. Material facts in dispute regarding the meals make summary judgment as to Plaintiffs' meal claim inappropriate. Defendants misstate Plaintiffs' driving time claims and their argument fails as a matter of law. And finally, Clint Lee as a general partner of Lee and Sons, Clint Lee is jointly and severally liable for the violations of the other Lee Defendants.

## STATEMENT OF FACTS

In 2019, 2020, and 2021, Lee and Sons Farms, Boykin Farms, and Rhodes Farming applied as joint employers for H-2A workers by submitting clearance orders, also known as job orders (Form ETA-790/790A), to the U.S Department of Labor for certification. Plaintiffs' Statement of Material Undisputed Facts in Support of Motion for Partial Summary Judgment ("Pls' SMF"), DE 71, ¶¶10-12, 15. In 2022, Boykin Farms and Rhodes Farming again applied for H-2A workers as joint employers, and Lee and Sons Farms applied separately.[2] Pls' SMF ¶11.

Lee and Sons Farms is a general partnership. Defendants Tony D. Lee, Cameron Lee, and Clint Lee are each general partners. SMF ¶¶37-29.

By regulation, the H-2A clearance orders must contain all material terms and conditions of employment. Pls' SMF ¶3. Each clearance order required employers to keep accurate records of their employees' earnings, provide pay statements that include the hours worked, pay at least the Adverse Effect Wage Rate (AEWR), and provide a copy of the work contract or clearance order to each H-2A worker. *Id*. ¶4-6, 8, 26(b), (d), (f). Each clearance order also included a promise to reimburse employees' transportation and subsistence expenses in accordance with 20 C.F.R. § 655.122(h), with inbound transportation reimbursed at the end of the first workweek. *Id*. ¶27(c).

Plaintiffs Cristobal Lopez Lopez ("Lopez Lopez"), Gilberto Flores Lozano ("Flores Lozano"), and their co-workers traveled to North Carolina from Mexico to work for Defendants as agricultural workers through the H-2A program. Pls' SMF ¶¶13-14, 16-17 29-30. Lopez Lopez and Flores Lozano were placed on the Lee and Sons crew pursuant to two different clearance orders: one from April 25 to November 2020 ("April 2020 Contract"), DE 53-1, and one from April 26 to November 27, 2021 ("April 2021 Contract"), DE 53-2. Pls' SMF ¶¶13-14, 6-17, 31. In order to come to North Carolina and work for Defendants, the named Plaintiffs and their coworkers incurred travel expenses from their homes to the Consulate in Monterey, Mexico; lodging near the Consulate while they waited for their appointments; a $190 visa fee; a $6 border crossing fee; the cost of bus transportation from Monterey to North Carolina; and their meals throughout this journey. Id. ¶71. Defendants knew that they were obligated to reimburse their H-2A employees for these expenses in their first workweek. Id. ¶¶72-73. Defendants admit, however, that they did not fully reimburse the named Plaintiffs, opt-in Plaintiffs, or the members of the NCWHA Reimbursement Subclass for inbound transportation at the end of the first workweek. Id. ¶¶77-78. Because these workers were paid on an hourly basis at the AEWR rate during their first workweek, Defendants' failure to reimburse them fully during that workweek meant they did not earn the AEWR because of that de facto deduction from their wages. That same deduction was enough to lower those workers' wages for that first workweek below the minimum wage.

H-2A employers, like the Defendants, are required to pay their H-2A employees at least the AEWR – a rate set each year by regulation-- for all of their hours worked in any workweek, even when the H-2A employees perform piece-rate work. Pls' SMF ¶¶5-6. H-2A employers are required to track all actual hours worked and piece-rate compensation earned in order to ensure

3

that the employees earn at least the AEWR. If the piece-rate compensation is less than the workers would be paid under the AEWR, the employers must provide additional pay to bring their employees up to the AEWR. *Id.* ¶6, 26(b)-(d), 113. With certain crops, including cucumbers and sweet potatoes, Defendants at times paid Plaintiffs and their co-workers on a piece-rate basis. *Id.* ¶106. Defendants failed to maintain records of hours worked, however, and did not ensure that their employees earned at least the AEWR. *Id.* ¶¶107, 109, 111, 113. For multiple weeks, many of the workers being paid on a piece-rate basis did not earn at the AEWR level, and thus were underpaid. *Id.* ¶¶125-127.

In addition to working in the fields, Lopez Lopez performed work driving his co-workers to the bank and grocery store. Pls' SMF ¶128. Both named Plaintiffs drove their co-workers from the labor camps to the fields and from the fields to the labor camps. Pls' SMF ¶ 135. Defendants did not track this time, and did not pay them for this time. *Id.* ¶¶130-132, 136-37. During some weeks in which he performed this driving work, Lopez Lopez worked more than 40 hours, *id.* ¶135, but Defendants did not pay him overtime for those hours. *Id.* ¶¶134-8.

## ARGUMENT

When a party moves for summary judgment, they must carry "the burden of showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Estate of Kimmel ex rel. Kimmell v. Seven Up Bottling Co.,* 993 F.2d 410, 412 (4th Cir. 1993). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (*internal quotation and citations omitted*). "Once the moving party has met its burden, the non-moving party must then set forth specific facts showing that there is a genuine issue for trial."

4

*Nguyen v. Austin Quality Foods, Inc.*, 974 F. Supp. 2d 878, 882 (E.D.N.C. 2013) (*internal quotations and citations omitted*). "In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the party opposing the motion, granting that party the benefit of all reasonable inferences." *Id*.

As Plaintiffs set forth below, the evidence demonstrates that there are multiple areas of disputed material facts. The Lee and Sons Defendants ("Defendants") have failed to carry their burden, as required by Rule 56(a), and therefore their motion for summary judgment should be denied. Where the facts are undisputed, Lee and Sons cannot prevail as a matter of law on their legal arguments.

**I.    If the NCWHA class is certified, Plaintiffs have standing to pursue claims for 2022.**

Defendants claim that Plaintiffs do not have standing to assert claims with respect to 2022 violations of the NCWHA. Lee Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment ("Defs' MSJ"), DE 63, p. 15[1]. Plaintiffs' claims for that year are not individual claims, but class claims, and it is common for class definitions to cover a time period that is more expansive than the time when a class representative worked for the employer. In *Moodie v. Kiawah Island Inn Co., LLC*, the plaintiffs sought certification of a class of H-2B workers who worked for the defendant in 2012, 2013, and 2014. None of the named plaintiffs was employed by the defendant in 2012, but the District of South Carolina found them to be adequate class representatives because "there is no evidence in the record that the claims of workers employed in 2012 would differ from those of workers employed in 2013 or 2014." 309 F.R.D. 370 at 279 (D.S.C. 2015); *see also, Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F.Supp.2d 117, 130-31 (finding the named plaintiff showed commonality and typicality where

---

[1]    Page number references to documents other than depositions refer to the ECF pages numbers.

she only worked for defendants for four weeks but sought certification for a class covering a five-year period). It is also routine for classes to be certified as through the date of certification, notwithstanding that the named plaintiffs usually no longer work there. *See, e.g., Wade v. JMJ Enterprises, LLC,* 2023 WL 391683, at *3 (M.D.N.C. Sept. 30, 2023); *Romero v. Mountaire Farms,* 796 F.Supp.2d 700, 708 (E.D.N.C. 2011); *McLaurin v. Prestage Foods, Inc.,* 271 F.R.D. 465, 469 and 479 (E.D.N.C. 2010).

Because Plaintiffs suffered the same harms from the same policies as the members of the proposed classes did, regardless of the year in which they worked, Plaintiffs have standing to raise these claims as part of their role as putative class representatives.

## II. A three-year statute of limitations is appropriate for Plaintiffs' FLSA claims.

"[T]he length of the [Fair Labor Standards Act's] statute of limitations depends upon whether the violation at issue was willful. If it is not willful, the limitations period is two years, but the period is three years for willful violations." *Calderon v. Geico General Ins. Co*., 809 F.3d 111, 130 (4th Cir. 2015) cleaned up; *see* 29 U.S.C. § 255(a). Though Lee and Sons argues that Plaintiffs are only entitled to a two-year statute of limitations, they fail to make any showing that Lee and Sons did not act willfully when they failed to reimburse their employees for travel-related expenses in the first workweek, despite their admission that they knew they were legally obligated to do so. Defs' MSJ, p.17. An employer acts willfully if they know that their actions are prohibited by the Fair Labor Standards Act ("FLSA"), or at the very least, acts with reckless disregard for the law. *See McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). An employer's conduct is considered to be in reckless disregard of the FLSA if the employer should have inquired further into whether its conduct was in compliance with the FLSA and failed to make adequate inquiry. 29 C.F.R. § 578.3(c)(3).

6

Plaintiffs moved for summary judgment on their claim that the Lee Defendants violated the FLSA by failing to reimburse them in the first workweek and that this violation was willful, entitling them and the opt-ins to damages going back three years before each of them joined this action. Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' MSJ"), DE 70, pp. 18-21. Cameron Lee and Tony Lee testified that they knowingly did not comply with the FLSA because they perceived that reimbursing their employees in the first workweek incentivized them to leave their employment. Plaintiffs' Statement of Material Facts ("Pls' PLS' SMF"), DE 71, ¶¶72-73. Cameron Lee opined that the rules regarding reimbursements should be changed for that reason:

> They need to change that law to where they get their inbound and outbound pay when they complete 75 percent of the contract. A man come and make $600 or more – on his – well, 700 on his first week, and then he's got 600 more from travel, he's got $1,300 where he can go anywhere he wants to, to a construction job or whatever.

Cameron Lee Dep., DE 72-2, 154:15-23.

Del Al, the company Defendants hired to help recruit H-2A workers in Mexico and facilitate them coming to North Carolina, provided Lee and Sons with a document for each employee that listed the amounts Lee and Sons needed to reimburse in the first workweek. Cameron Lee Dep. 141:16-143:17; 144:6-20 (referring to Exhibit 11, found at pp. 267-274); *see also* Lee and Sons 2020 and 2021 Reimbursement Records, DE 71-10, and 71-11. Lee and Sons' conclusory statement that they did not act willfully cannot entitle them to summary judgment; even more so when the undisputed facts with respect to Plaintiffs' reimbursement claim, including Defendants' own admissions, demonstrate that they were aware of their legal obligation and chose not to comply.

7

There is also undisputed evidence that Defendants willfully disregarded the FLSA by failing to ensure that Juan Perez accurately tracked the hours worked by the named Plaintiffs and Opt-in Plaintiffs so that they were paid in compliance with the FLSA when they did piece-rate work. PLS' SMF ¶¶110-11. The Lee Defendants testified that they were aware of the legal requirement to pay at least the Adverse Effect Wage Rate during weeks when the H-2A workers were working by the piece, yet did not take steps to comply with that requirements. Pls' MSJ, pp. 28-29; PLS' SMF ¶115.

Defendants cannot prevail on summary judgment on their argument that they did not willfully violate the FLSA; therefore, the three-year statute of limitations applies to the Opt-in Plaintiffs' claims, and Defendants' argument that the Opt-in Plaintiffs' FLSA claims accruing more than two years before they joined this action by filing their consent are barred is unavailing. Defs' MSJ, pp. 19-21. Opt-In Plaintiffs Orlando Eliseo Rebolloza Gutierrez and Juan Antonio Torres Rebolloza worked for Defendants after the three-year cut-off of April 8, 2021. *See* DE 44-1 (Orlando Eliseo Rebolloza Gutierrez opt-in form, filed April 8, 2024); DE 65-10, p. 8 (dates of work April 2021 to November 2021); DE 45-1 (Juan Antonio Torres Rebolloza opt-in form, filed April 8, 2024); DE 65-11, p. 7 (dates of work April 23, 2021 to December 7, 2021)[2]; Defs' MSJ, p. 20 (acknowledging dates of employment). Opt-In Plaintiff Jorge Alberto Rebolloza Garcia worked after his three-year cut-off date of March 12, 2021. DE 40-1 (opt-in form, filed March 12, 2024); DE 65-9, p. 7 (dates of work April 23, 2021 to November 27, 2021 and May 20, 2022 to November 26, 2022); Defs' MSJ, p. 20 (acknowledging dates of employment).

---

[2] There is a typographical error in the interrogatory response, where December 7, 2021 is incorrectly written as December 7, 2020.

Defendants' motion that the claims of Plaintiffs and Opt-in Plaintiffs are subject to a two-year statute of limitations should be denied. As Plaintiffs discuss more fully in their Response to Lee Defendants' Motion to Decertify Collective Action, the collective actions should not be decertified either, but should the Court decertify Plaintiffs' action, Plaintiffs request that the opt-in Plaintiffs be provided an opportunity to join as named Plaintiffs to assert their FLSA claims.

### III. There are material facts in dispute regarding meal plans.

There are material facts in dispute regarding Plaintiffs' claims related to meal plans and kitchen access. Defendants claim that they were not involved in providing or selling meals to the H-2A workers, were not aware of any arrangements between workers and anyone who sold them meals, never discussed food or meals with Juan Perez, did not give permission to anyone other than the H-2A workers living in the camp to use the kitchens, and the Lee Defendants were completely hands off the food. Defs' PLS' SMF ¶¶30-32. All of these facts are disputed. Text messages between Cameron Lee and Juan Perez demonstrate that Cameron Lee was well aware of the arrangement between the cooks (Maria and Laura) and the H-2A workers to provide and sell meals and that Cameron Lee discussed the food and meals with Juan Perez. DE 80-1, p. 2 ("Do you want a plate Maria and her mom cooked"), p. 3 ("Laura is back cooking and she called said the kitchen smells like gas but she doesn't know which stove, I told her I'd tell you"), p. 4 ("Maria took dinner to the guys"), p. 5 ("Does Laura have drinks also?"), p. 6 ("Thank y'all for the lunch, I'm going to pay Maria"). *See also* Cameron Lee Dep. 79:15-18 ("I think they were maybe getting plates from Juan's wife"); Juan Perez Dep. 101:14-102:4 (both the Lees saw Maria bring food to the field, and "pretty sure" they knew the workers paid for it). Tony Lee knew that his live-in friend (Tony Lee Dep. 78:12-79:2) or girlfriend (Flores Lozano Dep., DE 72-5, 73:24-74:1) was also selling meals to the H-2A workers that she prepared in the migrant

9

housing kitchen. Tony Lee Dep. 77:15-22, 78:12-24, 82:3-83:8. Plaintiffs assert that the kitchens were locked and workers were unable to access them. Flores Lozano Dep., 16:2-17:22; 19:3-20:2. Lee and Sons denies this. Juan Perez Dep. 110:2-4, 113:13. Plaintiffs argue that Lee and Sons gave permission to Laura Tobias and Maria to cook for the workers in the camp kitchens. Tony Lee Dep. 84:23-85:1; Juan Perez Dep. 111:14-20. Lee and Sons denies this. Defs' MSJ, p. 23. Plaintiffs state that they were not allowed to opt out of the meal plan. Lopez Lopez Dep. 47:21-23 ("So the way it worked, it was whether you eat or ate or not, they would charge the same. It was that same amount of money"); Flores Lozano Dep. 74:2-6 ("we were given to understand that we were obligated to eat there"). Lee and Sons denies this. Defs' MSJ, p. 23.

There are also numerous undisputed facts that undercut Defendants' argument that they are entitled to summary judgment on Plaintiffs' claims related to the meal plans. It is undisputed that Tony Lee and camp cook Laura Tobias had a relationship. Tony Lee Dep. 79:12-80:3, 81:21--25. It is undisputed that Maria met the workers at the camp after they cashed their paychecks to collect payment for the meals. Juan Perez Dep. 98:2-15. It is undisputed that the April 2020 and April 2021 Contracts promised that the H-2A workers would have access to the camp kitchens to cook their meals, and that meals would not be deducted. PLS' SMF ¶27(a) and (b). It is undisputed that some H-2A workers purchased their own refrigerators to store food, and that some purchased grills to cook their food outside. Flores Lozano Dep. 75:10-21; Juan Perez Dep. 111:22-112:14. These undisputed facts, and the disputed facts when taken in the light most favorable to Plaintiffs, demonstrate why summary judgment on this claim is inappropriate.

**IV.    Driving time to and from the fields is compensable under the FLSA and the NCWHA.**

Lee and Sons is not entitled to summary judgment on Plaintiffs' individual claims for compensation under the FLSA and the NCWHA for their unpaid time driving their co-workers

10

from the migrant labor camps to the fields and back. It is undisputed that the named Plaintiffs did this driving and that they were not paid for it. Pls' PLS' SMF ¶¶129, 132, 135, 137. The Portal to Portal Act, 29 U.S.C. § 251, *et seq*., and Employee Commuting Flexibility Act, 29 U.S.C. § 254(a), do not bar Plaintiffs' recovery, because Plaintiffs' transportation of their H-2A co-workers was either a principal activity or integral and indispensable to their activities as farmworkers, and payment of driving time was required by the H-2A contract. Plaintiffs' driving time is also compensable under the NCWHA, since it was time Plaintiffs spent working for Lee and Sons.

### A. Plaintiffs' transporting of their co-workers to and from the fields was a principal activity.

Lee and Sons argues that as a matter of law, Lee and Sons' failure to pay the named Plaintiffs for time they spent driving their co-workers from the migrant housing to the fields and back is not compensable time, based on the Portal to Portal Act. 29 U.S.C. § 254(a)(1). The FLSA regulations specify that, while travel from home to work is typically not compensable time, "travel from the place of performance of one principal activity to the place of performance of another" as well as "travel during the employee's regular working hours" and "travel outside … regular working hours at the direction and on the business of … [the] employer" is compensable. 29 C.F.R. § 790.7(c).

It is also clear from the regulations that the person who is driving employees as part of their job is engaged in a compensable activity, even if the passengers' travel time is not compensable. 29 C.F.R. § 785.41. In *Segovia v. Fuelco Energy LLC,* drivers drove passenger vans or trucks to transport crews between the hotels where they were temporarily housed to the job site. No. SA-17-CV-1246-JKP, 2022 WL 4545756, at *1 (Sept. 28, 2022). The court found that driving was a principal activity, and denied the employer's motion for summary judgment:

11

> It is difficult to challenge the logic of plaintiffs' argument that chauffeuring is work. It plainly differs from merely riding as a passenger or even driving oneself. The responsibility for driving comes with numerous attendant obligations, not the least of which is staying awake and steering the van from place to place. The burden of that obligation is commensurately greater when one is responsible for the safety of others. The driver also has to fuel the vehicle and has to make certain it is in good repair. If the driver were sick or chose to take a day off, presumably he would be obligated to ensure that another suitable driver replaced him.

*Id.*, 2022 WL 4545756, at *17.

As in *Segovia,* Plaintiffs' driving of their co-workers was different from carpooling, because one of the H-2A workers either had to drive, or Defendant had to hire another driver, making driving "an activity for which the employer employed an individual." *Id.,* 2022 WL 4545756, at *20.

Principal activities are not limited to the main work activities performed by an employee. For example, the sharpening of knives by a meatpacker and the changing of clothes potentially contaminated with toxic chemicals at a battery plant have been held to be principal activities. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513, 518 (2014) (listing cases).

"[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under [section 254(a) of the [Portal to Portal Act]. *IBP v. Alvarez,* 546 U.S. 21 at 37 (2005). The Supreme Court defined such activities as those "that an employee is employed to perform if it is an intrinsic element of those [principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing,* 574 U.S. 27 at 33.

Even if an employer could eliminate certain activities without that preventing performance of the principal activities, that does not mean the activities are not integral and indispensable: "The fact that [employer] conceivably could have devised a way to eliminate the necessity of these morning tasks and may do so in the future does not change their nature or their

relationship to the principal activity in this case." *Brantley v. Ferrell Electric, Inc.*, No. CV 114-022, 2015 WL 3541552, at *19 (S.D. Ga. May 29, 2015); *Brennan v. E.R. Field, Inc.,* No. 73-1402, 1974 WL 11099, at *2 (1st Cir. 1974) (upholding the district's court's determination that the Portal to Portal Act did not preclude driving to be worktime because the electrician's use of the company truck to drive his co-workers to jobsites was part of the employer's business).

Here Plaintiffs and their co-workers were H-2A workers from Mexico, who worked seasonally in North Carolina for Lee and Sons. Pls' PLS' SMF, ¶¶13-14, 29-30. They travelled to North Carolina from Mexico by bus, and therefore did not have their own means of transportation to and from the fields. *Id.* ¶71, Lopez Lopez Decl, DE 26-1, ¶11; Flores Lozano Decl., DE 26-2, ¶11. Plaintiffs were directed by Lee and Sons' supervisor Juan Perez to drive because they had Mexican drivers' licenses. Juan Perez Dep., 40:17-22; Cameron Lee Dep., 131:15-132:8. Unlike the situation in *Tanaka v. Richard K.W. Tom, Inc.,* 299 F.Supp. 732, 735 (D. Hawaii 1969), the H-2A workers did not have the option to drive themselves to and from the fields. Despite the H-2A clearance order statement that the use of the employer-provided transportation was voluntary, as a practical matter no H-2A worker would have been able to get to the fields without it.

### B. The H-2A contract requires Lee and Sons to pay for the Plaintiffs' transportation of their co-workers.

Even where certain activities covered by the Portal to Portal Act would typically not be compensable, the Act provides an exception where a written or unwritten contract is in place promising such compensation. 29 U.S.C. § 254(b). Defendant mentions offhandedly that this section does not apply because, while the H-2A contract requires the employer to provide free transportation to employees, it does not say that driving time is compensable. Defs' MSJ, pp. 25-26.

Transportation of migrant farmworkers is highly regulated. 29 C.F.R. Subpart D. While it is true that the H-2A contract does not explicitly refer to payment for drivers, it makes the following statements:

> Compliance with Transportation Standards.
> Employer assures that all employer-provided transportation will comply with all applicable Federal, State, or local laws and regulations. Employer agrees to provide, at a minimum, the same transportation safety standards, driver licensure, and vehicle insurance as required under 29 U.S.C. 1841 and 29 CFR 500.105 and 29 CFR 500.120 to 500.128. If workers' compensation is used to cover transportation, in lieu of vehicle insurance, the employer will ensure that such workers' compensation covers all travel or that vehicle insurance exists to provide coverage for travel not covered by workers' compensation. Employer agrees to have property damage insurance. 20 CFR 655.122(h)(4).

April 2020 Contract, DE 53-1, p. 7; April 2021 Contract, DE 53-2, p. 7.

> Though not a hiring requirement, if a worker drives a company vehicle during the period of employment then at the time of operating the vehicle the drive must possess a valid drivers license issued by a U.S. state or foreign equivalent and operate the company vehicle in accordance with the license restrictions and vehicle classifications applicable to that license.

April 2020 Contract, DE 53-1, p. 13; April 2021 Contract, DE 53-2, p. 13.

20 C.F.R. § 655.122(h)(4) requires that the job offer to the H-2A workers describe the mode of transportation that will be used for daily transportation. The same regulation at (h)(3) requires the employer to "provide transportation between housing provided or secured by the employer and the employer's place of employment at no cost to the worker." 29 C.F.R. § 500.105 includes multiple physical, minimum wage, driving skill, English knowledge, and licensing requirements for each driver. It also limits the number of hours a driver can be required to drive. If Lee and Sons were not going to require an H-2A worker to drive its employees, it seems clear that they would have to pay someone else to do it so they could ensure that all the regulations are followed. The contract requires the employer to sign under penalty of perjury an assurance that "all working conditions comply with applicable Federal and state minimum wage

14

… laws." April 2020 Contract, p. 9; April 2021 Contract, p. 9. These requirements, taken together, indicate that the intent of the contractual requirement to provide free transportation to H-2A workers includes a requirement to pay H-2A workers who work for the employer to provide such transportation. This creates an exception to the Portal to Portal Act and renders the driving time compensable.

**C.      Plaintiffs' driving time is compensable work under the NCWHA.**

Even if the Portal to Portal Act were to bar employees from claiming travel time as compensable under the FLSA, there is no such bar under the NCWHA. The NCWHA was never amended to add a Portal to Portal Act and the broad definitions of "hours worked" and "employ" were not adopted until 1959, well after the passage of the Portal to Portal Act in 1947. N.C. Gen. Stat. §§ 95-25.2(3) and (8). Despite numerous amendments to the NCWHA, Portal to Portal Act language restricting the compensability of certain work activities has never been added. The regulations under the NCWHA specifically state that "where there are intentional differences in the language of the North Carolina statutes … the federal decisions will not be binding on the Department [of Labor]." 13 NCAC § 12.0103.  Therefore, whenever an employer suffers or permits an employee to perform work, that is compensable work time under the NCWHA even if it is not compensable under the FLSA.

This is the situation that the District of the District of Columbia considered in *Dinkel v. MedStar Health Inc.,* No. CV 11-998(CKK), 2015 WL 5168006, at *6 (Sept. 1, 2015). Like the NCWHA, the DC minimum wage law does not include the Portal to Portal Act restrictions, but does look to the FLSA for interpretation of what is considered to be compensable work time. *Id*. at *3. The court thus relied on FLSA caselaw that predated the Portal to Portal Act to determine what is compensable work time under the DC Minimum Wage Act. *Id*., at * 6. *See also Miranda*

*v. Coach, Inc.,* No. 14-CV-02031-JD, 2015 WL 1788955, at *2 (N.D. Cal. Apr. 17, 2015) (declining to apply the reasoning of *Integrity Staffing* to a case under California law, since California does not have a Portal to Portal Act).

Since the Portal to Portal Act does not apply, the remaining question is whether the driving time was work time under the NCWHA. Defendants were involved in designating drivers and ensuring they were licensed. Juan Perez Dep., 40:17-22; Cameron Lee Dep. 131:15-23. Lee and Sons' supervisor Juan Perez collected Plaintiffs' drivers' licenses and provided them to the Lees. Juan Perez Dep., 39:15-18. Cameron Lee and Juan Perez decided who would drive the vehicles. Tony Lee Dep., 94:9-14. Lee and Sons directed the named Plaintiffs to drive. Flores Lozano Dep. 26:6-7 ("Q. Did you drive the transporter every day in 2020? A. No, just when Juan told me to"); Lopez Lopez Dep. Exhibit 47, p. 174 ("Juan Perez told us we had to eat the food they provided and told me that I had to drive the bus"); Juan Perez Dep., 39:13-22; Cameron Lee Dep., 131:15-132:8. After Plaintiff Lopez Lopez declined to continue to drive, he was not asked to return to work for Lee and Sons. Lopez Lopez Dep. 16:17-17:21. All of these facts demonstrate that driving was part of the named Plaintiffs' work for Lee and Sons.

There is no requirement under the NCWHA that Plaintiffs show Lee and Sons had agreed to pay them for their driving time. In *Martinez-Hernandez v. Butterball, LLC*, this court stated, "Were the court to interpret § 95-25.6 as requiring plaintiffs to prove that their employer expressly agreed to pay them for particular services performed … an employer would be able to avoid payment of *any* wages to his employees by simply claiming that the services rendered, although for the benefit of the employer, were something other than 'work.' [The employer's] argument here flies in the face of the protections afforded employees by the North Carolina Wage and Hour Act and cannot be sustained." 578 F.Supp.2d 816, 822 (E.D.N.C. 2008).

Regardless, Lee and Sons did consider the driving time to be work time. Cameron Lee Dep. 91:21-93:2.

> Q. Okay. And how are the drivers paid for that work?
> A. Well, we told him to be sure to pay them for their time driving the bus.
> Q. Okay. So you told Juan to make sure they were –
> A. Yes.
> Q. – paid for their time?
> A. We told him to make sure they were compensated for their time driving.
> Q. And he was supposed to put that in his timekeeping –
> A. Yes.
> Q. –book? Okay. Was she supposed to pay them at the same H-2A wage rate or at some other wage rate?
> A. I'm assuming it to be the same. I'm not sure.
> Q. All right. And was your understanding that they would be paid for driving workers from the camp to the field?
> A. Yes.
> Q. And that they would be paid for driving workers from one field to another field?
> A. And coming home.

Cameron Lee Dep. 132:9-133:9.

Because Lee and Sons suffered or permitted Plaintiffs to drive, the time they spent driving was work time. N.C. Gen. Stat. § 95-25.2(3).

V. **Plaintiff Lopez Lopez is entitled to overtime pay for weeks in which he drove co-workers on errands.**

Defendants do not appear to be asking for summary judgment on Plaintiff Lopez Lopez's claim for overtime pay during workweeks in which he drove his co-workers to and from the bank and/or the grocery store, which is the only claim for overtime Plaintiff has made. Complaint, ¶¶100, 151; Defs' MSJ, pp. 24-26. If there were weeks in which Plaintiff Lopez Lopez did not perform non-agricultural work by driving his co-workers to and from the bank and/or grocery store, Plaintiffs agree that he would not be entitled to overtime during those weeks. However, for those workweeks in which he did perform such non-agricultural work, the overtime pay owed

17

would be based on *all* of Plaintiff's time worked during such weeks, including any driving at the start or end of the day, not simply the time spent driving co-workers to perform errands. 29 C.F.R. § 780.11 ("Where an employee in the same workweek performs work which is exempt under one section of the Act and also engaged in work to which the Act applies but is not exempt under some other section of the Act, he is not exempt that week, and the wage and hour requirements of the Act are applicable"). Furthermore, Lee and Sons has the burden of showing Plaintiff was subject to an exemption for the driving to and from the bank and/or the grocery store, which they have not done. *See Rios-Gutierrez v. Briggs Traditional Turf Farm, Inc.,* 747 F.Supp.3d 1211*,* 1228 and 1231 (W.D. Mo. 2024). Lee and Sons is therefore not entitled to summary judgment on the issue of whether they violated the FLSA when they failed to pay Plaintiff Lopez Lopez overtime.

### VI. Clint Lee is jointly and severally liable for the violations of Lee and Sons and the other Defendants.

Defendants argue that Clint Lee is not liable as an employer under the FLSA and NCWHA, Defs' MSJ, pp. 26-27, but they ignore his joint and several liability with the other Defendants.[3] Lee and Sons admitted to employing the named Plaintiffs and to employing other workers under the H-2A programs. Answer, DE 18, ¶¶34, 38-39. As a general partner in Lee and Sons Farms, Clint Lee is liable for any violations by Lee and Sons, regardless of whether he was an employer under the FLSA or NCWHA. N.C. Gen. Stat. § 59-45; Pls' MSJ, pp. 11-12.

## CONCLUSION

As outlined above, there are multiple issues of disputed fact that necessitate the denial of the Lee Defendants' Motion for Summary Judgement. When the facts as outlined here are taken

---

[3] Defendants do not argue that Clint Lee is not liable for Plaintiffs' breach of contract claims.

in the light most favorable to the Plaintiffs, Plaintiffs should prevail as a matter of law. Plaintiffs respectfully request the Court deny the Lee Defendants' Motion for Summary Judgment.

This, the 7th day of April, 2025.

        NORTH CAROLINA JUSTICE CENTER
        P.O. Box 28068
        Raleigh, NC 27611
        (919)856-2144

  BY: /s/ *Carol L. Brooke*
        Carol L. Brooke
        NC State Bar #29126
        Email: carol@ncjustice.org
        Clermont F. Ripley
        N.C. State Bar # 36761
        Email: clermont@ncjustice.org

        HIGGINS BENJAMIN, PLLC
        301 N. Elm St., Suite 800
        Greensboro, NC 27401
        (336) 273-1600

  BY: /s/ *Jonathan Wall*
        Jonathan Wall
        N.C. State Bar No. 22839
        Email: jwall@greensborolaw.com

        *Co-counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

       This is to certify that the undersigned has this date served the original of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing electronically to counsel for Defendants by email to the following e-mail addresses:

       Elizabeth King, eking@cshlaw.com
       Marshall Wall, mwall@cshlaw.com
       Kieran Shanhan, kieran@shanahanlawgroup.com
       Luther D. Starling, Jr., lewstarling@dwlslaw.com

This, the 7th day of April, 2025.

                                    /s/ *Carol L. Brooke*
                                    Attorney for Plaintiffs