IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL CASE NO: 5:22-cv-491-BO-RN

| | |
|---|---|
| CRISTOBAL LOPEZ LOPEZ and GILBERTO FLORES LOZANO, *on behalf of themselves and all other similarly situated persons* <br><br> Plaintiffs <br><br> v. <br><br> BOYKIN FARMS, INC., *et al.* <br><br> Defendants. | ) <br> ) <br> ) <br> ) PLAINTIFFS' REPLY TO <br> ) DEFENDANTS' RESPONSE IN <br> ) OPPOSITION TO PLAINTIFFS' <br> ) MOTION FOR PARTIAL <br> ) SUMMARY JUDGMENT <br> ) <br> ) |

Defendants' Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment, DE 84, makes it clear that Plaintiffs are entitled to summary judgment as requested. Defendants do not contest the claim that the "Employer Defendants" are covered employers under both the FLSA and NCWHA. Plaintiffs' Motion for Partial Summary Judgment ("Pls' MSJ"), DE 69, Item A. They do not contest Plaintiffs' contention that Defendants failed to reimburse their workers in the first workweek, *id.*, Items C, F, and M, or Plaintiffs' calculation of damages for the FLSA reimbursement claims. *Id.*, Item E. They do not appear to challenge Plaintiffs' expert's conclusions with respect to calculations of hours worked by Lee and Sons workers when they were paid on a piecerate. *Id.,* Item L. They do not raise any valid legal or factual arguments as to the breach of contract claims. *Id.*, Items L and M. The Lee Defendants do not respond to Plaintiffs' claim that they cannot meet the requirements of a good faith defense. *Id.*, Item J.

Defendants do state objections to most of Plaintiffs' undisputed material facts, but for the most part those objections were not actually a dispute as to the truth of the fact but rather were attempts to distinguish Boykin and Rhodes from facts pertaining to the Lee Defendants or nitpicking at the underlying evidence. *See, e.g.,* DE 83, ¶¶50-52. Defendants' opposition to

1

Plaintiffs' summary judgment motion is nothing more than conclusory denials without pointing to contradictory evidence. "[T]he existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom v. Hosp. Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (cleaned up). Plaintiffs have shown there are no issues of disputed material fact with respect to the claims for which they seek summary judgment.

## I. Plaintiffs are entitled to summary judgment on breach of contract.

Defendants' Response does not include any arguments that relate to Plaintiffs' claim that Boykin Farms, Rhodes Farming, and Lee and Sons Farms entered into contracts with the named Plaintiffs and the other H-2A workers who worked pursuant to the April 2020 and April 2021 contracts, or that Defendants breached those contracts by failing to reimburse them in the first workweek and failing to ensure that they were paid the AEWR when they did piece rate work. *See* Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment, DE 70, pp.29-31[1]. Defendants address the breach of contract claims briefly at the end of their Response, but their section labeled as a piece-rate argument is actually a misnamed repetition of their good faith argument, DE 84, pp.32-33, and their reimbursement argument focuses on whether Boykin and Rhodes were employers of the named Plaintiffs. *Id.*, p.33. Whether Boykin and Rhodes were their employers is unrelated to their contractual obligations. Defendants have raised no genuine issue of material fact as to whether they entered into a contract with Plaintiffs and class members and whether they breached that contract.

## II. Defendants Tony Lee and Cameron Lee acted willfully when they failed to reimburse in the first workweek.

---

[1] Page references other than for deposition testimony are to ECF page numbers.

Whether or not the named Plaintiffs and opt-ins[2] are entitled to a three-year statute of limitations for their FLSA claims depends on whether Defendant Tony Lee or Cameron Lee's failure to reimburse them for inbound expenses during their first workweek was willful. Defendants argued in their affirmative motions for summary judgment that a two-year statute of limitations is appropriate. *See* DE 63, pp.16-21; DE 60, pp.19-21. Plaintiffs have thoroughly briefed why they are entitled to summary judgment on willfulness, and why Defendants are incorrect in claiming that a two-year, rather than three-year, statute of limitations applies. *See* DE 70, pp.20-21; DE 85, pp.11-13; DE 87, pp.6-9. Defendants now assert that there are disputed facts precluding a finding that Tony and Cameron Lee acted willfully. DE 84, pp.16-17. They both selectively quote from Plaintiffs' Statement of Material Facts ("Pls SMF"), DE 71, and misstate the standard for willfulness, arguing that Plaintiffs must demonstrate they had knowledge of the legal requirement. DE 84, pp.16-17. However, knowledge is not required; acting in reckless disregard of the FLSA is sufficient. *See* DE 70, p.20.

Regardless, Defendants Tony and Cameron Lee had actual knowledge of the legal requirement to reimburse in the first workweek at the time they made the decision not to reimburse, and they acted in reckless disregard of that requirement. Defendants ignore the additional deposition citations in Pls' SMF ¶73, in which Cameron Lee explains that he knew how much he was to reimburse the workers because the recruiting company Lee and Sons worked with, Del Al, gave him "a sheet with all of my paperwork on them, and it would tell what to pay." Cameron Lee Dep., DE 72-2, 141:18-19. These sheets state, "Each employee should be reimbursed by the end of their first pay period." *Id.* at Exs. 9-12, pp.264, 267, 269, 275 and 278;

---

[2] Defendants asked the Court to deny Plaintiffs' motion for summary judgment with respect to opt-in Jose Juan Espinoza Salazar's FLSA claim, DE 84, pp.3-4. However, Plaintiffs did not include such a claim in their motion for summary judgment so there is nothing to deny.

3

144:12-17. Cameron Lee then acknowledged that the reimbursements were not on time. *Id.* at 150:18.

Cameron Lee went on to testify that he reimbursed workers because "you're required to" and explained how he knew of the requirement:

> Q. How did you know about that requirement? . . .
> A. Just through the H-2 system.
> Q. When you say "through the H-2 system, what do you mean?
> A. Well, it's just years of doing it and seeing the paperwork. I mean, it's – it's a law you got to pay them back for their travel.

*Id.* at 143:5-17. Cameron Lee further testified:

> Q. But your *very first year* working for the H-2A system, how did you know [about the reimbursements]?
> A. I guess, you know, there's instructions in all the documents.
> Q. Uh-huh. And which documents are you talking about?
> A. Well, what we've looked at the whole morning.
> Q. Okay. So if there was something written in one of those documents about what you're supposed to do, that's what you understood you were supposed to do?
> A. Yes.

*Id.* at 166:7-20 (emphasis added); Pls SMF ¶73. The documents referred to by Cameron Lee are the H-2A applications, which means that at least as early as 2019 when the Lees first applied for H-2A workers, *see* DE 64, ¶¶21-22, he knew they were legally required to reimburse in the first workweek.

Tony Lee's deposition testimony also demonstrates his knowledge; he deliberately chose to reimburse the H-2A workers late because he perceived timely reimbursement gave workers an incentive to leave their jobs:

> Q. Did you have any part in that decision making ---
> A. Yes. … When they get here – our guys, most of the time, when they got here, they went to work right then, no delay, and you give them that first week's pay. Then you add 500 to it [for the reimbursement]. The most money he's ever seen, and ten to 15 percent will run every time. Every time they're going to run and leave you hanging. You paid to get him here, not a coyote, but you paid.

4

Tony Lee Dep., DE 72-6, 89:9-11; 15-22.

The testimony of both Cameron and Tony Lee, as well as the forms provided to them by the recruitment company, demonstrate that they knew of the requirement to reimburse at the time the reimbursements were due, and that they purposefully chose not to comply with it. Plaintiffs are entitled to summary judgment on their claim that Cameron and Tony Lee acted willfully.

III. **Plaintiffs are entitled to payment for their driving time between the labor camps and the fields and to the bank and grocery store as a matter of law.**

As an initial matter, Plaintiffs did not move for summary judgment on any claim that Defendants violated the FLSA or the NCWHA by not paying them for travel time *between fields*. Plaintiffs did move for summary judgment on claims related to nonpayment for driving time between the labor camps and the fields, and to the bank and grocery store. Pls' MSJ, Item H.

    A. **The named Plaintiffs' time driving co-workers between the migrant housing and the fields and to the bank and grocery store is compensable under the NCWHA.**

Defendants rely on the Portal-to-Portal Act for their argument that driving co-workers between the labor camp and the fields is not compensable time. DE 84, pp. 25-26. As explained in detail in Plaintiffs' Brief in Opposition to Lee Defendants' Motion for Partial Summary Judgment, the Portal-to-Portal Act is not applicable to claims under the NCWHA.[3] DE 87, pp.15-16. The North Carolina cases cited by Defendants assume without deciding that the Portal-to-Portal Act applies and focus their analysis on whether people who received rides from their employer to and from day labor sites were entitled to compensation for the time spent *riding*, not *driving*. *See Whitehead v. Sparrow Enter., Inc.,* 167 N.C. App.178, 191-93, 605 S.E.2d 234, 242-43 (2004); *Hyman v. Efficiency Inc.,* 167 N.C. App.134, 147-49, 605 S.E.2d 254, 263-64 (2004);

---

[3] Plaintiffs only moved for summary judgment on their claim for straight time back wages for driving time under the NCWHA, not the FLSA. *See* Pls' MSJ, Item H; DE 70, pp.23-24.

5

*Leverette v. Labor Works Int'l, LLC,* 180 N.C. App.102, 109-11, 636 S.E.2d 258, 263-64 (2006). Whether the *drivers* of those day laborers were performing compensable work was not at issue in those cases.

The facts in this case are quite distinct from those in the day laborer cases cited by Defendants. First, Plaintiffs are not asking for compensation for travel time as riders in a vehicle, but for time spent driving the Defendants' vehicle at the Defendants' request to provide transportation for Defendants' employees. Second, temporary foreign H-2A workers necessarily lived in employer-provided housing which Defendants were required to provide under their contracts and under the H-2A regulations and therefore require transportation to the jobsite. 20 C.F.R. § 655.122(d); April 2020 Contract, DE 53-1, p. 6; April 2021 Contract, DE 53-2, p.6. Third, the employer was contractually required to provide transportation for their employees to and from the fields, and to the grocery store. *See* April 2020 Contract, p.4 ("Once a week, the employer will provide (on a voluntary basis) transportation to assure workers access to stores where they can purchase groceries") and p.7 ("Employer agrees to provide transportation between housing provided or secured by the employer and the employer's worksite(s) at no cost to the worker"); April 2021 Contract, pp.4 and 6 (same); 20 C.F.R. § 655.122(h)(3) (requiring transportation to jobsite). Finally, the employer designated and required the named Plaintiffs to perform the work of providing this transportation. *See* DE 87, pp.16-17. In order to perform this work, the named Plaintiffs used the employer's vehicles, Cameron Lee Dep., 129:18-131:5, which were kept at the labor camp. *Id.*, 130:16-18.

Driving the H-2A workers between the labor camp and the field was work performed by the named Plaintiffs, which triggered the start of their workday, and for which they are entitled to compensation. This driving was for Defendants' benefit, and indeed, their whole operation

6

depended on getting the workers to the fields. Likewise, driving the H-2A workers to and from the grocery store and the bank was also work performed for the Defendants' benefit, and suffered and permitted by Defendants, for which Plaintiffs are entitled to compensation under the NCWHA. *See* DE 87, pp.11-13; *Segovia v. Fuelco Energy, LLC,* No. SA-17-CV-1246-JKP, 2022 WL 4545756, at *17 (W.D.Tex. Sept. 28, 2022) (driving co-workers from the housing to the jobsite is compensable work).

> B. **The named Plaintiffs were not paid for their time driving co-workers to and from the fields, or to and from the grocery store and the bank.**

Defendants also argue that Plaintiffs were in fact paid for their driving time. They selectively cite a quote from Juan Perez's deposition where he states that Plaintiff Flores Lozano's time records show he was paid for driving time. *See* DE 84, p.27; Juan Perez Dep., DE 72-7, 79:17-25. Immediately after, however, Perez explains that he was specifically referring to paying for driving while moving the bus with bins on it during the workday:

> Q. When did they get paid for their driving?
> A. What do you mean, "when"?
> Q. Well, you told me before that you didn't keep track of their driving time. So why was it – why would you have recorded it here?
> A. He – he – if we were doing the sweet potatoes, he probably moved the bus that day, and that's why he got an hour and a quarter.
> Q. Okay. Because he was moving the bus with the bins on it –
> A. Yes.
> Q. -- instead of picking –
> A. Yes.

*Id.,* 80:1-13; *see also id*. at 82:12-25 (again explaining that when the named Plaintiffs drove a vehicle with bins during the workday, they were paid for that driving time).

In contrast, when Perez was asked about driving from the housing to the fields, he acknowledged that he did not record that driving time:

7

> Q. So would it – would it be fair to say whoever drove that morning from the housing to the fields would also be the one who drove midday, and then drove them back whenever they were done?
> A. Yes.
> Q. Okay. Because that's how they shared it?
> A. Mm-hm.
> Q. Like, someone was a designated driver for a bit?
> A. That's right.
> Q. Did you ever record the time that people spent driving anywhere?
> A. No.

Juan Perez Dep., 38:15-39:2. Similarly, when Perez was asked specifically if he recorded the time drivers spent driving co-workers to the bank, he said he did not:

> Q. And were the drivers – did you record the time that it took the drivers to drive everyone to the bank, wait an hour and a half, and drive everyone back to the housing as work time?
> A. No.

*Id.,* 128:16-20. An examination of the complete deposition testimony on the topic of recording and paying for driving hours makes it evident that Defendants did not pay the named Plaintiffs for their work driving their co-workers to and from their fields, the grocery store, or the bank.

Because the undisputed facts show that Plaintiffs were not paid for their time driving between the housing and the fields and to/from the grocery store and bank, and because that driving was work under the NCWHA, Plaintiffs are entitled to summary judgment on their claim that their employers violated the NCWHA by failing to pay them for that time.

**IV.     The Court should credit Plaintiffs' expert's testimony related to piece-rate violations.**

Defendants contend that the calculations and testimony of Plaintiffs' expert, Neil Steinkamp, do not support their claims related to back wages for workweeks when Plaintiffs and class members were paid wholly or partly on a piece-rate basis. DE 84, p.24. (Plaintiffs have relied on Steinkamp to demonstrate there are workweeks when they were paid less than the AEWR, but they have not asked for summary judgment as to damages award based on his

8

report.) If Defendants think that Plaintiffs' expert is not qualified, the proper response is to move to strike his report or exclude the evidence of Steinkamp as an expert. They have not done this; nor do they argue that his report is not admissible nor appear to be mounting a *Daubert* challenge. Defendants are relying on assertions that Steinkamp's methodology is flawed, without themselves producing a rebuttal witness to explain the asserted flaws. To the extent they don't believe Steinkamp's calculations support his conclusion, that is most appropriately a challenge to the weight the Court should give to his report, not whether it is admissible. *See TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003). Defendants appear to object to the factual underpinnings of Steinkamp's analysis, but again this goes to weight rather than its admissibility. *Price v. Mos Shipping Co.,* 740 Fed. Appx. 781, 785 (4th Cir. 2018).

      Furthermore, Defendants' argument that Steinkamp's "opinion is based on assumptions about hours worked, not evidence," DE 84, p.24, completely ignores Defendants' admission that they did not comply with the legal requirement to collect and maintain records about the actual hours worked by Plaintiffs and their co-workers. *See* DE 70, pp.22; Pls' SMF ¶¶26(b)-(c), 109, 111, 113-14, 118-19. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-3 (1986). Where, as here, the evidence demonstrates that Defendants did not maintain any record showing proper payment, courts have long recognized that plaintiffs may provide their own evidence of hours worked instead and these will by necessity be estimates. In *Beliz v. W.H. McLeod & Sons Packing Co.*, the Fifth Circuit credited employee testimony that was not precise as to the number of hours worked by each individual, noting that "[i]f an employee makes a credible showing that he has performed work not properly compensated, 'the employer cannot be heard to complain that the damages lack the exactness and precision of

9

measurement that would be possible had he kept records in accordance with the requirements of" the Act." 765 F.2d 1317, 1330 (1985). Furthermore, "'each employee need not testify in order to make out a prima facie case of the number of hours worked.'" *Id.* at 1331.

An expert's calculation of wages owed can be credited on summary judgment where the employer's records are lacking and the calculations are a reasonable approximation. *See National Electro-Coatings, Inc. v. Brock*, No. C86-2188, 1988 WL 125784, at *9 (N.D. Ohio, July 13, 1988) (allowing expert's calculations where employer paid a piece rate and did not record hours worked and expert examined contracts setting the wage rate and relied on employee interviews and available records of the employer). In *Mencia v. Allred*, the Tenth Circuit awarded summary judgment to an H-2A worker who proved "as a matter of just and reasonable inference" the number of hours he worked, based on his own testimony and the testimony of his employers, and remanded for a determination of damages. 808 F.3d 464, 473-74 (2015).

It is also abundantly clear that while Steinkamp necessarily relied on assumptions, due to Defendants' failure to keep proper records, he also relied on evidence produced by the Defendants, including weekly employee timecards and payment records, and Defendants' deposition testimony. *See* Expert Report, DE 71-27, pp.5-6.

Defendants attempt to undermine the testimony of Boykin Farms's 30(b)(6) representative with respect to the hours worked by the H-2A workers, stating that she was testifying "in generalities." DE 84, p.23. However, her testimony is supported by that of Rhodes Farming and Cameron Lee, who also testified regarding the workers' schedules, upon which Steinkamp also relied. DE 71-27, pp.6-7. In the absence of actual records from Defendants as to start and stop times, it was reasonable for Steinkamp to rely on this testimony. Furthermore, Steinkamp explained that when there were indications that some workers may have worked

longer hours and others shorter hours for a particular time period, he used the shorter hours estimate for his calculations. *Id.*, pp.7-8.

Defendants also assert that Steinkamp did not consider that there were two groups of workers.[4] This is false. Steinkamp testified that he calculated underpayment on a weekly basis, but that there were often two pay periods within each week. Steinkamp Dep., DE 72-9, 42:3-23. Where this was the case, this was assumed to represent separate payments by Boykin/Rhodes and Lee and Sons to their respective crews, *Id.* at 68:21-69:3, and he made separate assumptions and calculations for any backwages due. *Id.* at 42:23-43:16. When Steinkamp made assumptions about hours worked by the Boykin/Rhodes workers, his assumption was based on hours worked by other Boykin/Rhodes workers during that same pay period, and when he made assumptions about the hours worked by Lee workers, his assumption was based on hours worked by other Lee workers during that same pay period. Although he did not total the underpayment damages separately for each defendant group, his analysis clearly differentiated between Defendants. *Id.* at 36:15-37:3.

Because Defendants have put forward no evidence at all as to the hours worked by their employees, there is no genuine issue of material fact with respect to those hours. The Court should credit Steinkamp's conclusion that the calculations he made show that there were multiple weeks in which members of both the Boykin/Rhodes and Lee crews were not paid at least the AEWR because they were instead paid on a piecerate. *Wai Man Tom v. Hosp. Ventures LLC,* 980 F.3d 1027, 1037 (4th Cir. 2020) ("the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue").

---

[4] Defendants do not appear to challenge Steinkamp's conclusions with respect to the hours calculated for the Lee and Sons workers. *See* DE 84, pp.23-24.

V. **Lee and Sons Farms is a general partnership; the partners are jointly and severally liable.**

Defendants contend that it is inappropriate to enter liability against Lee and Sons Farms, a non-party. DE 84, pp.12-13. Plaintiffs have referred to Cameron Lee, Tony Lee and Clint Lee collectively as Lee and Sons throughout their briefing because those three defendants do business as Lee and Sons Farms. However, Plaintiffs concede that they should have made it more clear in their Motion for Summary Judgment that they were using "Lee and Sons Farms" to refer to Defendants Tony Lee, Cameron Lee and Clint Lee, and that Plaintiffs are requesting that the court enter a judgment against the three individual defendants not against the general partnership.

Defendants are not disputing that Lee and Sons Farms is a general partnership nor that Tony, Cameron and Clint are its general partners and therefore each jointly and severally liable for the legal violations of the partnership, a contention Plaintiffs included in their summary judgment brief. *See* DE 70, p.12. They do object to Plaintiffs' Fact: "Tony Lee, Clint Lee and Cameron Lee split the proceeds of Lee and Sons Farms equally, except that income related to their cows is not shared with Tony Lee," Pls' SMF ¶39, stating that the cited testimony is that they split the profits, not the proceeds. DE 83, ¶39. While Defendants are correct that Plaintiffs mistakenly used the word proceeds, this does not change the conclusion that the three Lee defendants are general partners. N.C. Gen. Stat. § 59-37(4).

VI. **Each of the Defendants is liable for the FLSA and NCWHA violations.**

Plaintiffs requested summary judgment on their claim that Tony Lee, Cameron Lee, Matthew Rhodes, Rhodes Farming, Willie Boykin, and Boykin Farms, collectively the "Employer Defendants," are covered by the FLSA and NCWHA as employers. Pls' MSJ, Item A. In response, Defendants argue that Matthew Rhodes, Rhodes Farming, Willie Boykin and Boykin Farms did not employ the members of the Lee crew. DE 84, pp.6-9. Notably, they do not

12

argue or assert that they are not employers covered by the NCWHA or FLSA. They also admit that members of the Lee crew did work for them a couple weeks in 2020 and 2021. DE 83, ¶31.

Defendants argue that, although they admit they each employed members of their own crews, they were not joint employers of all the H-2A workers who worked pursuant to a common contract that set out the same terms and conditions of employment for all of them, and who performed work at times for each of the farms. DE 84, pp.6-9. Plaintiffs have already explained why the undisputed facts show Boykin Farms, Rhodes Farming and Lee and Sons Farms are joint employers under the FLSA and NCWHA as a matter of law and, as such, jointly and severally liable. *See* DE 70, pp.15-18. It is appropriate and routine (not premature, as Defendants argue) to make a determination on the issue of joint employment at the summary judgment stage. *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 129-30 (4th Cir. 2017); *Surey v. Liferestore MD USA LLC NC1 LLC, et al.,* No. 7:22-cv-00036-M, 2024 WL 4919537, at **18-20 (E.D.N.C. June 24, 2024).

Defendants' argument with respect to their affirmative good faith defense is that Boykin/Rhodes aren't liable as joint employers. DE 84, pp. 31-32. If this Court finds that they are joint employers, then Plaintiffs' request for summary judgment should be granted. Furthermore, Defendants do not put forth any arguments as to the good faith of the Lee Defendants.

## VII.  Conclusion

As explained here, the undisputed facts support Plaintiffs' MSJ, and they are entitled to summary judgment as a matter of law.

13

This, the 5th day of May, 2025.

        NORTH CAROLINA JUSTICE CENTER
        P.O. Box 28068
        Raleigh, NC 27611
        (919)856-2144

        BY:   /s/ *Carol L. Brooke*
               Carol L. Brooke
               NC State Bar #29126
               Email: carol@ncjustice.org
               Clermont F. Ripley
               N.C. State Bar # 36761
               Email: clermont@ncjustice.org

        HIGGINS BENJAMIN, PLLC
        301 N. Elm St., Suite 800
        Greensboro, NC 27401
        (336) 273-1600

        BY:   /s/ *Jonathan Wall*
               Jonathan Wall
               N.C. State Bar No. 22839
               Email: jwall@greensborolaw.com

               *Co-counsel for Plaintiffs*

CERTIFICATE OF SERVICE

  This is to certify that the undersigned has this date served the original of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing electronically to counsel for Defendants by email to the following e-mail addresses:

 Elizabeth King, eking@cshlaw.com
 Marshall Wall, mwall@cshlaw.com
 Kieran Shanhan, kieran@shanahanlawgroup.com
 Luther D. Starling, Jr., lewstarling@dwlslaw.com

This, the 5th day of May, 2025.

        /s/ *Carol L. Brooke*
        Attorney for Plaintiffs