IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-491-BO-RN

CRISTOBAL LOPEZ LOPEZ and )
GILBERTO FLORES LOZANO, *on behalf* )
*of themselves and all other similarly* )
*situated persons*, )
                                           )
                        Plaintiffs, )
                                           )
v.                                    )           O R D E R
                                           )
BOYKIN FARMS, INC., RHODES )
FARMING, LLC, WILLIE C. BOYKIN, III,)
MATTHEW Z. RHODES, TONY D. LEE, )
d/b/a LEE AND SONS FARMS, )
CAMERON LEE, d/b/a LEE AND SONS )
FARMS, and CLINT LEE, d/b/a LEE AND )
SONS FARMS, )
                                           )
                        Defendants. )

This cause comes before the Court on a motion for summary judgment and to decertify the FLSA collective action filed by defendants Rhodes Farming, LLC, Boykin Farms, Inc., Willie C. Boykin, III, and Matthew Z. Rhodes. [DE 59]. Plaintiffs have responded, [DE 85], the moving defendants have replied [DE 95], and a hearing on the matter was held before the undersigned on June 11, 2025, at Raleigh, North Carolina.[1] In this posture, the motion is ripe for disposition. For the reasons that follow, the motion is granted.

---

[1] Several other motions are pending in this action which will be addressed by separate orders.

## BACKGROUND

Plaintiffs, two Mexican migrant farm workers, filed this suit on behalf of themselves and others similarly situated pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-26.6, and for breach of contract. Plaintiffs allege that they and others were employed by defendants through the United States Citizenship and Immigration Services' H-2A Temporary Agricultural Workers system. The H-2A system allows U.S. agricultural employers like defendants to bring in foreign workers to temporarily perform agricultural labor. The U.S. Department of Labor must first certify that (1) there are not sufficient workers within the U.S. to perform the work and (2) that employing foreign workers will not adversely impact the working conditions and wages of U.S. workers performing the same work. Foreign workers who are issued H-2A visas are generally referred to as H-2A workers. The H-2A system and its implementing regulations set certain minimums and benefits that each employer must offer H-2A workers so that similarly situated U.S. workers are not impacted. *See* [DE 1] at ¶¶ 42-43; 20 C.F.R. §§ 655.0(a)(2); 655.122; 655.135.

Plaintiffs, Cristobal Lopez Lopez and Gilberto Flores Lozano, instituted this action by filing a complaint on December 2, 2022. They allege putative class and collective action claims against defendants, for whom plaintiffs allege that they and others worked under H-2A visas. On October 23, 2023, the Court conditionally certified a collective action under the FLSA and notice was distributed. After proceeding through discovery, dispositive motions were filed and plaintiffs moved for class certification under Fed. R. Civ. P. 23. Defendants oppose class certification and have further moved to decertify the collective action. Plaintiffs moved for partial summary judgment, the Boykin and Rhodes defendants moved for summary judgment, and the Lee defendants moved for partial summary judgment. All pending motions are ripe for disposition,

though this order addresses only the motion for summary judgment and to decertify the collective action filed by the Boykin and Rhodes defendants.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

The following facts as to the moving defendants are undisputed unless otherwise indicated. *See* [DE 61]; [DE 86].

Rhodes Farming, LLC and Boykin Farms, Inc. conduct farming operations in northern Johnston County, North Carolina. Rhodes Farming and Boykin Farms farm together, meaning they

3

plant the same crops in the same fields and share both profits and expenses. During the years at issue, 2020, 2021, and 2022, Rhodes Farming and Boykin Farms planted sweet potatoes, cucumbers, and strawberries.

Defendant Matthew Rhodes (Rhodes) is the owner of Rhodes Farming and resides in southern Johnston County in Four Oaks. Defendant Willie Boykin (Boykin) and his wife Joyce Boykin own Boykin Farms and live in northern Johnston County in Middlesex. Rhodes is the Boykins' nephew. During the time relative to this case, Rhodes would travel from his home in southern Johnston County about forty minutes in order to work at the Boykin/Rhodes[2] farm in northern Johnston County.

During 2020 to 2022, the Boykin/Rhodes farm was planted primarily with sweet potatoes and cucumbers; strawberries were planted in October 2021 and harvested in 2022. The sweet potato growing season for this area is typically from March to November. Sweet potatoes are started in beds and then transplanted to the fields, where they are watered and weeded during the growing season. Sweet potatoes are typically harvested from September to November. Boykin/Rhodes used some H-2A workers to transplant and tend the sweet potatoes, but H-2A workers were used primarily for harvest.

The growing season for cucumbers is typically April to August. Boykin/Rhodes planted cucumber seeds in April, anticipating that some could be harvested in June and another crop planted thereafter. Cucumbers are primarily harvested from June to August, and Boykin/Rhodes typically used H-2A workers for the harvest.

---

[2] The Court will refer to the Boykin Farms and Rhodes Farming joint farming operation as Boykin/Rhodes.

4

In 2020, 2021, and 2022, Boykin Farms and Rhodes Farming identified potential H-2A workers through people they knew and provided those names to a third-party in Mexico, Del Al, which would assist in bringing the workers from Mexico to the United States. Individual workers who were successfully recruited by Del Al to work for Boykin Farms and Rhodes Farming travelled to North Carolina and stayed in a labor camp owned by Boykin Farms on Crocker's Nub Road in Middlesex. This labor camp, which could hold a maximum of thirty-two people, had been inspected and approved by the State of North Carolina prior to its use each year in accordance with 20 C.F.R. § 655.122.

In order to access H-2A workers, Boykin/Rhodes submitted ETA-Form 790 Agricultural Clearance Orders and Form ETA-790A Job Offer Information to the North Carolina Division of Employment Security. On February 18, 2020, Boykin/Rhodes requested ninety-three farm workers and laborers for work beginning April 25, 2020, and ending November 20, 2020. On May 20, 2020, Boykin/Rhodes sought another five farmworkers and laborers. On February 16, 2021, Boykin/Rhodes requested eighty-eight farmworkers to work from April 26 to November 27, 2021. On February 15, 2022, Boykin/Rhodes sought twenty-seven farmworkers and laborers for work from April 26 to November 26, 2022. These forms requesting temporary workers were submitted along with the Lee and Sons Farms codefendants, a nearby farming operation, so that the two farms could share workers if necessary. Because the Boykin/Rhodes farm is smaller than Lee and Sons Farms (Lee and Sons), Boykin/Rhodes utilized a smaller share of the H-2A workers. In 2020 and 2021, the Boykin/Rhodes H-2A crew was thirty workers, and in 2022 it was twenty-seven. Plaintiffs contend that, though the crew size identified is accurate, Boykin/Rhodes also relied on H-2A workers from Lee and Sons Farms during 2020 and 2021. *See* [DE 86] ¶¶ 33, 34, 35.

The joint application for and sharing of H-2A workers is part of the primary issue addressed by the instant motion, namely whether the Boykin/Rhodes and Lee and Sons operations were joint employers of the H-2A workers utilized during 2020, 2021, and 2022. Additional relevant facts on this issue are as follows. The Boykin/Rhodes and Lee and Sons farming operations are separate businesses and farming operations. None of the Lees have any ownership interest in either Boykin Farms or Rhodes Farming, nor do any of the Boykin or Rhodes families have any interest in Lee and Sons. Lee and Sons maintained its own labor camps, which were separate from the Boykin/Rhodes labor camp, and the Boykin//Rhodes fields were separate from the Lee and Sons fields. Boykin/Rhodes were not responsible for the Lee and Sons labor camps and Boykin/Rhodes provided their H-2A workers with the tools and transportation necessary for them to work at the Boykin/Rhodes farm. Boykin/Rhodes did not provide tools or transportation to Lee and Sons H-2A workers.

Members of the Boykin/Rhodes H-2A crew were supervised by Matthew Rhodes and Sergio Valencia (Valencia). When Boykin/Rhodes H-2A workers worked at Lee and Sons, they were supervised by Lee and Sons employee Juan Perez (Perez) and Valencia. Boykin/Rhodes provided kitchen facilities at its labor camp which were available for use by the H-2A workers without restriction, though plaintiffs cite evidence that Boykin/Rhodes did not take steps to ensure that the workers could actually access the kitchen facilities. *See* [DE 86] ¶¶ 58-61. Neither Rhodes Farming nor Boykin Farms ever sold meals to their H-2A workers or housed their crew at any Lee and Sons labor camp.

Boykin Farms and Rhodes Farming maintained their own workers compensation insurance coverage. Boykin Farms and Rhodes Farming did their own payroll for work performed by the Boykin/Rhodes H-2A workers on their farm. Joyce Boykin, Rhodes, and Valencia would prepare

6

and review time records for their H-2A workers. Time sheets prepared by Boykin/Rhodes for the H-2A workers were signed by either Rhodes or Joyce Boykin and returned to the H-2A workers. If Lee and Sons H-2A workers performed work on the Boykin/Rhodes farm, they would be paid by Boykin Farms and Rhodes Farming after Perez turned in their timesheets. Similarly, if any Boykin/Rhodes H-2A workers performed work for Lee and Sons Farms, Lee and Sons would pay those workers. In a given year, H-2A workers from the Lee and Sons crew performed about two weeks total of work for Boykins/Rhodes. Boykin/Rhodes reimbursed their H-2A crew for the costs of travelling to and from North Carolina to work and for their subsistence.

Plaintiff Lopez Lopez stayed at a Lee and Sons labor camp and was part of the Lee and Sons H-2A crew. He was paid by Boykin/Rhodes for a total of three weeks of work on the Boykin/Rhodes farm in 2020 and 2021. Plaintiff Flores Lozano also stayed at a Lee and Sons labor camp, was part of the Lee and Sons crew, and was paid by Boykin/Rhodes for a total of three weeks in 2020 and 2021 for work on the Boykin/Rhodes farm. The three opt-in plaintiffs also stayed at a Lee and Sons labor camp and were paid by Boykin/Rhodes for work on the Boykin/Rhodes farm over a period of four weeks throughout 2020 and 2021.

In their complaint, plaintiffs allege that none of the defendants properly reimbursed their H-2A workers for travel expenses, which resulted in payment of less than minimum wage, and further that defendants failed to pay an adequate piece rate, for time travelling between fields, and that defendants required illegal kickbacks for meal charges, all of which resulted in payment of less than minimum wage. As the Boykin/Rhodes defendants argue, the complaint assumes that all of the defendants were the employers of all of the plaintiffs and the putative similarly situated workers.

The initial issue before the Court is whether Boykin/Rhodes and Lee and Sons were joint employers of plaintiffs and the opt-in plaintiffs. The "FLSA conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016); *see also Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x 445, 451 (4th Cir. 2021) (courts may look to FLSA to interpret NCWHA as the relevant terms are identical). In FLSA cases, courts apply a two-step framework to determine whether a defendant can be held liable under a joint employment theory. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 767 (4th Cir. 2017). First, an entity must have, along with another entity or entities, "shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work." *Id.* If it is determined that the entities are not joint employers, the court must determine whether the plaintiff is an employee with respect to each entity, separately. *Id.* Whether an entity is a joint employer is a legal question capable of resolution at the summary judgment stage. *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 145 (4th Cir. 2017).

Courts in this circuit consider six, non-exhaustive factors in order to determine whether separate entities are joint employers:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

8

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Salinas*, 848 F.3d at 141–42. No factor is determinative, nor must plaintiffs be able to establish that the majority of factors weigh in their favor in order to establish joint employment. *Hall*, 846 F.3d at 771.

Here, while there are factors which cut both ways, the undisputed facts show that Boykin/Rhodes and Lee and Sons were not joint employers.[3]

*Supervision and control.* In their response to the instant motion for summary judgment, plaintiffs do not appear to contest Boykin's and Rhodes' argument that the supervision and control over the H-2A workers was separate as between the Boykin/Rhodes crew and the Lee and Sons crew. Each H-2A crew was supervised and controlled separately in performing their work for the subject farms. They lived separately and were directed in their work by the specific farm at which they were working. Valencia, the supervisor for the Boykin/Rhodes farm, travelled with any H-2A workers who were sent to perform work at the Lee and Sons farm.

*Power to hire and fire.* As plaintiffs point out, the H-2A clearance orders, also known as job orders, submitted by the Boykin/Rhodes and Lee and Sons farming operations to the Department of Labor list the farms as "non-association joint employer[s]." *See* [DE 53-1] at 11; [DE 53-2] at 11. But, as the case on which plaintiffs rely explains, "mere status as a joint employer under the H–2A program is not determinative of an entity's joint employment relationship under the FLSA's economic reality test." *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1071 (E.D. Wash.

---

[3] The Court would note that, Boykin Farms and Rhodes Farming hold themselves out, through the filing of their motion for summary judgment, as joint employers. Thus, the only question is whether the Boykin/Rhodes farming operation was a joint employer with Lee and Sons.

9

2013), *order clarified,* No. CV-11-3088-RMP, 2013 WL 12167930 (E.D. Wash. June 24, 2013). Boykin/Rhodes and Lee and Sons also both used Del Al as a recruiting agency, but the farms submitted separate lists of workers' names. *See* [DE 61] at ¶ 23; [DE 86] ¶ 23. There is no evidence that Boykin/Rhodes had the power to fire an H-2A worker on the Lee and Sons crew, and vice versa, or that either farm could punish workers on the others' crew.

*Shared management or ownership.* It is undisputed that the Boykin/Rhodes farming operation and the Lee and Sons farming operation did not share any management or ownership.

*Premises where work is performed.* The evidence demonstrates that the Boykin/Rhodes farm was separate from the Lee and Sons farm, that the Boykin/Rhodes H-2A crew lived in the Boykin/Rhodes labor camp and, in general, worked on the Boykin/Rhodes farm. The Boykin/Rhodes crew leader travelled with Boykin/Rhodes workers to Lee and Sons when work was performed there. It is also undisputed that the farms applied jointly for H-2A workers so that they could share workers when necessary, and that at times they did, in fact, share workers.

*Employer responsibilities.* It is undisputed that the farms had separate payroll and separate workers compensation insurance. Boykin/Rhodes H-2A workers were paid by Boykin/Rhodes for work performed at their farm. Boykin/Rhodes and Lee and Sons did not share timesheets. If Boykin/Rhodes H-2A workers performed work for Lee and Sons, they would typically be paid by Lee and Sons. If Lee and Sons H-2A workers performed work for Boykin/Rhodes, Boykin/Rhodes would typically pay them for that work. Boykin/Rhodes provided its H-2A crew with the tools and transportation necessary to work at Boykin/Rhodes farm, and it did not provide Lee and Sons H-2A workers with tools and transportation.

In sum, while at the outset of the H-2A process the relationship between Boykin/Rhodes and Lee and Sons has the appearance of joint employment, the economic realities demonstrate that

the two entities were separate and they did not act as joint employers. Sharing H-2A workers for approximately two weeks in a given season does not tip the balance in favor of a finding of joint employment, especially where the H-2A workers were paid by the farm at which the work was performed. In other words, if Boykin/Rhodes and Lee and Sons were joint employers, there would be no need to pay the other's farm crew, as each crew would be working under the same structure and scheme. Rather, the farming operations were separate, they kept separate H-2A crews in separate locations, they paid them separately and did not share time sheets, and otherwise operated as separate entities in relation to the H-2A workers. There is no disputed issue of material fact as to whether Boykins/Rhodes and Lee and Sons were joint employers, and the Court concludes that they were not.

The next step of the analysis requires an examination as to whether the H-2A workers were independent contractors or employees for purposes of the FLSA. As neither party has argued this issue, the Court assumes that the Boykin/Rhodes H-2A workers were employees of Boykin/Rhodes. Accordingly, the Court must next determine whether disputed issues of fact prevent entry of summary judgment on the named plaintiffs' claims against Boykin/Rhodes as an individual employer.

As discussed above, the FLSA and the NCWHA each impose duties on employers. *See, e.g.,* 29 U.S.C. § 206(a); N.C. Gen. Stat. § 95-25.22.

> To determine whether the employer-employee relationship exists, courts apply the "economic reality" test. The economic reality test focuses on whether the worker is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself. Relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

11

*Kerr*, 824 F.3d at 83 (cleaned up, citations omitted). Here, the undisputed evidence supports a finding that the named plaintiffs were not employees of Boykin/Rhodes. As discussed above, while Boykin/Rhodes and Lee and Sons set out together to hire H-2A workers for the relevant seasons, Boykin/Rhodes submitted its own lists of names to the recruiting agency Del Al, and Boykin/Rhodes had no authority to fire any worker on the Lee and Sons crew. The H-2A crews worked separately, used different equipment to work different fields, lived separately, and for all but a few weeks of their time in Johnston County were paid separately.

Named plaintiffs Lopez Lopez and Flores Lozano were part of the Lee and Sons crew and lived at the Lee and Sons camp, as did the FLSA opt-in plaintiffs. *See* [DE 61] ¶ 75-79; [DE 86] ¶¶ 75-79. The records support that Flores Lozano worked for Boykin/Rhodes for two weeks in 2020 (August 17 and August 24) and two weeks in 2021 (August 23 and August 30). Lopez Lopez worked for Boykin/Rhodes for three weeks in 2020 (August 17, August 24, and August 30) and one week in 2021 (August 30). None of these were the first work weeks, during which plaintiffs were to be reimbursed for any travel expenses, and the plaintiffs did not testify that they were underpaid during these specific weeks. *See* [DE 72-1]; [DE 72-5]. The undisputed evidence demonstrates that Lopez Lopez and Flores Lozano were not employees of Boykin/Rhodes.

Plaintiffs have proffered evidence in the form of an expert analysis that the named plaintiffs and opt-in plaintiffs were underpaid, [DE 71-27], but that evidence does not specifically associate any improper payments with Boykin/Rhodes. Plaintiffs have simply failed to create a genuine issue of material fact as to whether there were FLSA or NCWHA violations during the few weeks that the named plaintiffs worked for Boykin/Rhodes, even if the Court were to assume that they were employees of Boykin/Rhodes for these periods.

The Court further finds that the H-2A clearance orders did not create a contract between Boykin/Rhodes and the H2-A workers on the Lee and Sons crew. As discussed above, the undisputed evidence shows that the two farming operations were separate enterprises, despite listing Boykin/Rhodes and Lee and Sons as joint employers. Moreover, the provisions in the clearance orders regarding the terms and conditions of employment refer to an "employer," not "employers." *See* [DE 53-1] at 3, 11, 13, 16, 17, 19; [DE 53-2] at 3, 9, 13, 16, 17, 19. As plaintiffs argue, "To be an 'employer' of H–2A workers pursuant to the H–2A contract, [the grower] need only have the ability to 'hire, pay, fire, supervise or otherwise control the work of any such employee.'" *Perez-Benites v. Candy Brand, LLC*, No. 1:07-CV-1048, 2011 WL 1978414, at *8 (W.D. Ark. May 20, 2011). As the Court has found, Boykin/Rhodes did not have the ability to fire, supervise, or control the work of any of the Lee and Sons H-2A crew. Accordingly, the clearance orders do not create contracts between Boykin/Rhodes and the Lee and Sons H-2A crew.

Finally, plaintiffs concede that any liability for Lee and Sons' meal plan violations may not be imposed on Boykin/Rhodes without a determination that the two farming enterprises were joint employers. There is further no evidence that Boykin/Rhodes charged H-2A workers for meals or required any H-2A worker to kick back money from their wages to pay for meals or food. Boykin/Rhodes are entitled to entry of summary judgment in their favor in the meal plan claims.

In sum, there is no genuine issue of material fact as to whether Boykin/Rhodes and Lee and Sons were joint employers and as to whether Boykin/Rhodes is responsible for any contract, wage, or meal plan violations for the named plaintiffs. As Boykin/Rhodes has established that summary judgment in its favor is appropriate as to the two named plaintiffs, decertification of the collection action as to Boykin/Rhodes only is appropriate. *In re Fam. Dollar FLSA Litig.*, 637 F.3d

13

508, 519 (4th Cir. 2011) ("Without a viable claim, [a named plaintiff] cannot represent others whom she alleged were similarly situated.").

## CONCLUSION

Accordingly, for the foregoing reasons, the motion for summary judgment and to decertify collective action by the Boykin and Rhodes defendants [DE 59] is GRANTED. Defendants Boykin Farms, Inc., Rhodes Farming, LLC, Willie C. Boykin, III, and Matthew Z. Rhodes are entitled to judgment in their favor as to all of plaintiffs' claims at the entry of final judgment in this matter. As to these defendants only, the FLSA collective action is decertified, and the claims of the opt-in plaintiffs are DISMISSED without prejudice.

SO ORDERED, this 18 day of September 2025.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE